Andre Verdun (SBN 265436)
**Law Office of Andre L. Verdun**
1777 N Ventura Ave
Ventura, CA 93001
Tel. 6198800110
Fax. 8668040051
andre@verdunlaw.com

Attorney for Plaintiff,
Gabriela Stephanie Barrios

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

GABRIELA STEPHANIE BARRIOS,

      Plaintiff(s),

  vs.

**ANTELOPE CHEVROLET, LOS ANGELES SHERIFF'S DEPARTMENT, and OFFICERS 1-10, in their official capacities, inclusive,**

      Defendants.

Case #: **2:23-cv-10476**

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Date: April 12, 2024
Time: 10:00 AM
Crtrm: 7B

Action Filed: December 14, 2023
Pretrial Conference: TBD
Trial Date: TBD
Assigned to:
Hon. Andre Birotte Jr
Courtroom 7B

-1-

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

## I.    <u>INTRODUCTION</u>

Plaintiff Gabriela Stephanie Barrios respectfully submits this Opposition to Defendant Antelope Valley Chevrolet, Inc.'s Motion to Dismiss the First Amended Complaint. Contrary to Defendant's assertions, Plaintiff has sufficiently pled her claims, which are supported by well-established law. The Motion should be denied in its entirety, or alternatively, Plaintiff should be granted leave to amend to address any deficiencies the Court may find.

## II.    <u>BACKGROUND</u>

Without a court order more than six (6) police cars of the Lancaster Police Department pulled over Gabriela Barrios, with her 3 month old and 11-year old daughters' in her car, and with firearms drawn, demanded she get out of the car. A plain clothes detective then took the car back to the dealership that had sold it to Barrios, and which had requested police assistance, in a joint action, lacking any due process, to resolve an ongoing civil dispute. (FAC ¶ 1)

Barrios was detained for more than 7 hours, including being pulled over, arrested, hand-cuffed, finger-printed, interrogated, and jailed (for more than 5 hours), despite the fact the police had no warrant or court order. To add insult to injury the police took away her special lactation bra, even after Barrios explained the necessity for the bra. The police told her to go ahead and stain her shirt and that they could give her a different shirt later. After more than 5 hours at the police station, surrounded by strangers, with no privacy, and with no way to pump or alleviate the pressure in her lactating breasts, Barrios leaked through her shirt. (FAC ¶ 2)

## III.    <u>STATEMENT OF FACTS</u>

On or about September 8, 2022, Plaintiff Gabriela Stephanie Barrios entered into a Retail Installment Sale Contract (the "Agreement") with Antelope Valley Chevrolet to purchase a 2022 Chevrolet Malibu. (FAC ¶ 31). The Agreement contained a provision granting the Seller the right to cancel the

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

contract within 10 days if unable to assign it to a financial institution. (FAC ¶ 32).

After entering into the Agreement, the Dealer apparently experienced difficulty assigning the Agreement to a lender. (FAC ¶ 34). However, the Dealer did not cancel the contract within the 10-day period. (FAC ¶ 36). On October 27, 2022, well beyond the 10-day cancellation period, Antelope Valley Chevrolet demanded Plaintiff return the vehicle, informing her that it terminated her purchase and her right to use the vehicle. (FAC ¶ 39). Defendant demanded that she surrender the vehicle by no later than November 4, 2022. (FAC ¶ 39).

On or before November 3, 2022, Defendant reported to the police, falsely, that Plaintiff stole the vehicle from Defendant. (FAC ¶ 42). As a result, on November 3, 2022, Plaintiff was arrested for grand theft auto and embezzlement. (FAC ¶ 43). The police arrested Plaintiff without a warrant, without probable cause, without conducting an investigation, and by solely relying on the statements of Antelope Valley Chevrolet. (FAC ¶ 43). Moreover, Plaintiff was arrested at 7:30 am, well before the 3 pm deadline for Plaintiff to return the vehicle in accordance with the Dealer's demand. (FAC ¶ 43).

Antelope Valley Chevrolet, in concert with the Los Angeles Sheriff's Department, engaged in a series of actions that led to the unlawful arrest and incarceration of Gabriela Barrios. (FAC ¶ 7). By falsely representing to law enforcement that Plaintiff committed grand theft auto and embezzlement, and by failing to properly rescind the contract within the 10-day period, Antelope Valley Chevrolet violated Cal. Civil Code 1788 et seq. (FAC ¶ 108).

## IV.    LEGAL STANDARD

A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When ruling on a motion to dismiss, the court

-3-

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678.

**V.  ARGUMENT**

**A. Plaintiff Has Sufficiently Pled Her § 1983 Claims (1st and 2nd COAs)**

Defendant erroneously contends that Plaintiff has failed to allege state action sufficient to support her § 1983 claims, relying on inapposite cases. However, well-established law makes clear that even a single request for police assistance leading to a violation of rights can constitute joint action giving rise to § 1983 liability.

Consistent with the Ninth Circuit authority that a single decision can lead to liability under § 1983 (*Delia v. City of Rialto,* 621 F.3d 1069, 1081-82 (9th Cir. 2010) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), a court within the Ninth Circuit, held a single request for police assistance is enough to constitute joint action, holding a private citizen liable.  *Hollandsworth v. City and County of Honolulu (D. Hawaii 2020)* 440 F.Supp.3d 1163, 1174. A review of *Hollandsworth* shows the facts in *Barrios* are for more *egregious*. In *Hollandsworth,* the private-party defendant reached out to the police and told them of the need to retrieve the property (a horse), the police agreed to offer "standby assistance," the police arrived at the scene, intervened, displayed their authority, and over plaintiff's objections, caused the buyer to capitulate, allowing the previous owner to take the property (a horse) thereby "effecting the deprivation of the property."

As the court said, "Unlike in *Howerton*, the events at issue here involved only a single request for police assistance. Still, Plaintiff has alleged that Defendant Lum took considerably more action than passively standing by, here personally participating in the alleged seizure of the horse. Pursuant to Defendant Lum's authority, Defendant Wolfram took the horse and drove away, effecting the deprivation. Taken in the light most favorable to Plaintiff these facts

-4-

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

THE LAW OFFICES OF: ANDRE L. VERDUN

create a plausible claim of joint action." *Hollandsworth v. City & Cty. of Honolulu*, 440 F. Supp. 3d 1163, 1177 (D. Haw. 2020).

The facts alleged here are even more egregious than in *Hollandsworth*. Plaintiff alleges that the dealership communicated with police, falsely accused Plaintiff of a crime to convince the police to effectuate a warrantless arrest, and in a joint action, the police seized the vehicle, drove it away, gave it to the card dealership, and incarcerated Plaintiff, all without a court order. (FAC ¶¶ 7, 42-43). This is precisely the type of "willful participant in joint action with the State or its agents" that creates liability under § 1983. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008).

Most recently, in *Atkinson v. Credit Acceptance Corp.*, 2023 U.S. Dist. LEXIS 39319, at *8-11; 2023 WL 2429527, at *3 (M.D.N.C. Mar. 9, 2023), the court found potential § 1983 liability where a police officer ordered the plaintiff to exit her vehicle so that a private towing company could repossess it. The court emphasized that while officers may act to diffuse a volatile situation, they "may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance." *Id.* at *10. Here, as in *Atkinson*, Plaintiff alleges the police ordered her out of the vehicle so the dealership could take it, an act that unquestionably aided the repossession in a way that would not have occurred without police intervention. Defendant and the officer were willful participants in joint action.

Defendant's reliance *on Collins v. Womancare*, 878 F.2d 1145 (9th Cir. 1989), is misplaced. In Collins, private citizens, acting entirely on their own, arrested anti-abortion protesters for violating an injunction after a police officer refused to do so. *Id.* at 1155. The court found no state action because the private citizens performed a citizen's arrest "without probable cause" <u>and the officer had refused to participate</u>. *Id.* Here, in stark contrast, the police actively participated in the seizure and arrest based on the dealership's false report.

-5-

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

Defendant's citation to *Rivera v. Green*, 775 F.2d 1381 (9th Cir. 1985), is equally unavailing, as that case did not even involve a private party. Rather, it held that public defenders are not state actors under § 1983 due to their unique adversarial role. *Id.* at 1384. This has no bearing on the dealership's joint action with police here.

The other cases cited by Defendant are also readily distinguishable. In *Benavidez v. Gunnell*, 722 F.2d 615 (10th Cir. 1983), the private party merely told police it had child custody, without more. *Id.* at 618. In *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268 (2d Cir. 1999), the private party summoned police "only to prevent a disturbance," not to effectuate an arrest or seizure. *Id.* at 272. And in *Hughes v. Meyer*, 880 F.2d 967 (7th Cir. 1989), the private party called police but "never requested an arrest." *Id.* at 972. None of these cases involved the kind of extensive joint action and false reporting alleged here.

In sum, the facts alleged here paint a clear picture of joint action between the dealership and police to deprive Plaintiff of her vehicle and liberty without due process, readily distinguishable from the cases cited by Defendant and sufficient to state a claim under § 1983.

## B. Plaintiff Has Sufficiently Pled Her Bane Act Claim (4th COA)

Defendant incorrectly asserts that Plaintiff's Bane Act claim fails for lack of allegations of threats, intimidation, or coercion by the dealership. However, the Ninth Circuit has made clear, consistent with the weight of California authority, that the "threat, intimidation, or coercion" element of a Bane Act claim need not be transactionally independent from the alleged constitutional violation.

In *Reese v. County of Sacramento*, the Ninth Circuit held "that the use of excessive force can be enough to satisfy the 'threat, intimidation, or coercion' element of Section 52.1." 888 F.3d 1030, 1043 (9th Cir. 2018). The court found, based on the weight of California authority, that the Bane Act does not require

-6-

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

THE LAW OFFICES OF: ANDRE L. VERDUN

the "threat, intimidation or coercion" element to be separate from the underlying constitutional violation. *Id.* Rather, the Bane Act requires only "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." Id. (quoting *Cornell v. City and Cnty. of San Francisco*, 17 Cal. App. 5th 766, 799-800 (2017)).

Here, Plaintiff alleges that the dealership, acting in concert with the police, intentionally violated her Fourth Amendment right to be free from unreasonable seizure by effectuating a warrantless arrest and seizure of her vehicle based on false reports. (FAC ¶¶ 7, 42-43). Under *Reese*, these allegations of excessive force and unlawful seizure, coupled with the specific intent to deprive Plaintiff of her rights, are sufficient to state a Bane Act claim. Defendant's argument that separate allegations of threats or coercion are required fails in light of this controlling Ninth Circuit authority.

Moreover, as discussed above, even if the dealership's conduct could be characterized as reckless rather than intentional, reckless disregard of rights has been found sufficient to state a Bane Act claim. See *Mora v. City of Garden Grove*, 2020 U.S. Dist. LEXIS 150562 , at *30, 2020 WL 4760184, at *10 (C.D. Cal. May 1, 2020). Plaintiff's allegations demonstrate, at a minimum, reckless disregard by the dealership for her constitutional rights, by instigating a baseless arrest and seizure of her vehicle without due process. (FAC ¶¶ 7, 42-43).

In sum, under the Ninth Circuit's holding in *Reese*, Plaintiff has sufficiently pled a Bane Act violation based on the alleged excessive force and unlawful seizure, coupled with the specific intent to violate her rights. Defendant's motion to dismiss the Bane Act claim should therefore be denied.

### C. Plaintiff Has Sufficiently Pled Her False Arrest/Imprisonment Claim (5th COA)

Defendant relies in two California state cases in arguing that Plaintiff's false arrest/imprisonment claim fails because, like the defendants in *Gorlack v. Ferrari*,

-7-

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

184 Cal. App. 2d 702 (1960), and *Cole v. Johnson*, 197 Cal. App. 2d 788 (1961), "the FAC does not allege AVC participated in the arrest of Plaintiff[, n]or …acted with any malicious intent [and that t]he only relevant allegation is that AVC reported the Subject Vehicle stolen". Motion, P.11, L.13-16. However, a closer examination of the First Amended Complaint reveals allegations that extend far beyond a mere report of a stolen vehicle, and align more closely with the facts in *Kesmodel v. Rand*, 119 Cal. App. 4th 1128 (2004), where the court found potential liability for false imprisonment based on providing knowingly false information to police and insisting on an arrest.

The cases cited by Defendant, *Gorlack* and *Cole*, stand for the unremarkable proposition that a private party does not incur liability for providing information to authorities in good faith, even if that information later proves to be mistaken. *Gorlack*, 184 Cal. App. 2d at 709; *Cole*, 197 Cal. App. 2d at 792-93. In *Gorlack*, the court found no false imprisonment liability where the defendants in good faith gave information to the proper authorities that the plaintiff had stolen a ring, even though that information later proved mistaken. 184 Cal. App. 2d at 709. Similarly, in *Cole*, the court found no liability where the defendant merely identified the plaintiff as the perpetrator of a crime "to the best of his ability," absent evidence of malice or bad faith. 197 Cal. App. 2d at 792-93. *Gorlack* and *Cole* merely stand for the unremarkable proposition that a private party does not incur liability for giving information to authorities in good faith, even if mistaken. But that good faith reporting premise does not apply here based on the complaint's allegations.

In stark contrast, *Kesmodel* held that a defendant could be found liable for instigating and enabling a false arrest by not only making false statements to police, but by taking affirmative steps to summon authorities and make it clear she wanted an arrest, despite lacking any proper basis. 119 Cal.App.4th at 1141. Notably, the act of physically participating in the arrest is not required for liability

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

to attach. In *Kesmodel*, a neighbor who did not sign the citizen's arrest form was nevertheless held liable based on her active participation in seeking an arrest through knowingly false statements. *Id.*

Furthermore, the *Kesmodel* court drew a critical distinction when comparing the facts before it with those in *Gomez v. Garcia*, 112 Cal.App.3d 392 (1980). The court noted that in *Gomez*, the defendant "could not be liable for false imprisonment because '[t]here [was] no evidence in the record to suggest that Garcia gave false information to either the police or the prosecuting agency or that he misled them in any way.'" *Kesmodel*, 119 Cal.App.4th at 1140. In contrast, the *Kesmodel* court emphasized that "the evidence in the present case conclusively established the information the [defendants] provided the police was false and misleading," rendering *Gomez* "factually distinguishable." Id.

Here, Plaintiff's allegations are strikingly similar to the actionable conduct in *Kesmodel* and markedly different from the good faith reporting in *Gorlack*, *Cole*, and *Gomez*. The complaint asserts that the dealership made knowingly false reports accusing Plaintiff of theft and insisted that the police arrest her and seize her vehicle without a warrant or court order, all in an effort to obtain a vehicle they had no legal right to take. (FAC ¶¶ 7, 42-43). These allegations describe conduct that, as in *Kesmodel*, went beyond merely providing information to the police and instead "actively procured and participated in [Plaintiff's] unlawful arrest" based on false information. 119 Cal. App. 4th at 1139.

In sum, Defendant's attempt to characterize the complaint as alleging nothing more than a good faith report of a stolen vehicle is belied by the actual allegations, which paint a picture of knowingly false accusations and an insistence on an unlawful arrest - conduct that falls squarely within the realm of actionable false imprisonment under *Kesmodel*. At this stage, these allegations are more than sufficient to state a claim and overcome Defendant's motion to dismiss.

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

THE LAW OFFICES OF: ANDRE L. VERDUN

## D. **Plaintiff's Intrusion Upon Seclusion (11th COA)**

Defendant argues that Plaintiff's intrusion upon seclusion claim fails because the complaint makes only conclusory allegations and fails to specify Defendant's intrusive acts. However, the FAC alleges numerous specific allegations of highly offensive intrusions by the dealership into Plaintiff's private affairs, which are more than sufficient to state a claim at this stage.

To state a claim for intrusion upon seclusion, a plaintiff must allege (1) an intrusion into a private place, conversation, or matter (2) in a manner highly offensive to a reasonable person. *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 74 Cal. Rptr. 2d 843, 955 P.2d 469, 490 (Cal. 1998). In determining whether an intrusion is "highly offensive," courts consider factors such as "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Fausto v. Credigy Servs. Corp.*, 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009) (citation omitted). Importantly, even a single intrusive act, such as one phone call, can be sufficient to support an intrusion claim if done in a highly offensive manner. *Diaz v. D.L. Recovery Corp.*, 486 F. Supp. 2d 474 (E.D. Pa. 2007).

Here, the FAC is replete with allegations of intrusive and highly offensive conduct by the dealership, including:

- Wrongfully using the police in an attempt to repossess Plaintiff's vehicle, without a court order, despite having no legal right to the car (FAC ¶¶ 42-43);
- Repeatedly contacting Plaintiff and her family members in an attempt to coerce the surrender of the vehicle (FAC ¶¶ 6, 109);
- Having the police engage in an unreasonable intrusion by wrongfully arresting and incarcerating Plaintiff, over a civil dispute, without a court order and lacking any due process. (FAC ¶¶ 2, 4, 6-9, 42-49)

-10-

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

THE LAW OFFICES OF: **ANDRE L. VERDUN**

Courts have found similar and lesser conduct, such as contacting a plaintiff's relatives and the police in an attempt to repossess a vehicle, sufficient to state an intrusion claim even where no repossession actually occurred. *Bauer v. Ford Motor Credit Co.*, 149 F. Supp. 2d 1106 (D. Minn. 2001). The allegations here go even further, as the dealership's harassing conduct was not limited to wrongful repossession attempts, and wrongful arrest and incarertation, but also included highly offensive invasions into Plaintiff's personal life and private information by contacting third-parties (including Plaintiff's mother and the police), and threatening to contact the IRS.[1] (FAC ¶¶ 37-49, generally).

At this stage, these allegations, taken as true, are more than sufficient to plausibly allege that the dealership intruded into Plaintiff's private affairs in a manner highly offensive to a reasonable person. Defendant's motion to dismiss the intrusion upon seclusion claim should therefore be denied.

### E. Civil Extortion (12th COA)

Defendant incorrectly asserts that Plaintiff's civil extortion claim should be dismissed because the complaint "provides nothing more than a formulaic recitation of the elements of a cause of action'" and lacks any "factual allegations of any threats made by Defendant" or "that Defendant obtained possession of the Subject Vehicle by force or fear." (Motion, p. 14-15). However, contrary to these contentions, the First Amended Complaint expressly alleges multiple written communications from the dealership threatening repossession and criminal action if Plaintiff did not surrender the vehicle.

The California Supreme Court recognizes the tort of Civil Extortion. *Mendoza v. Hamzeh*, 215 Cal. App. 4th 799, 804-05 (2d Dist. 2013) (citing

---

[1] Plaintiff can also allege there was a written extortionist threat for attorney's fees and that Defendant would report her to the IRS, just as in *Flatley v. Mauro,* 39 Cal. 4th 299 (2006).

-11-

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

*Flatley v. Mauro*, 39 Cal. 4th 299, 326 (2006) and *Berman v. Modell*, No. 14-CV-00728, 2014 U.S. Dist. LEXIS 184677, at *22-23 (D. Md. Nov. 21, 2014) (same)).

In California, the tort of civil extortion has five elements: (1) a defendant sent or delivered a writing, (2) that contained an express or implied threat as specified in Penal Code section 519; (3) the defendant intended to extort money or property from the plaintiff; (4) the plaintiff suffered harm; and (5) the harm was caused by the defendant. *Flatley v. Mauro*, 39 Cal. 4th 299, 326 (2006); *Mendoza v. Hamzeh*, 215 Cal. App. 4th 799, 804-05 (2013). Numerous federal courts have held Penal Code section 523, which creates criminal liability for attempted extortion, gives rise to a cause of action for civil extortion even when the attempt was unsuccessful and no money or property changed hands. (*Monex Deposit Co. v. Gilliam* (C.D. Cal. 2009) 666 F.Supp.2d 1135, at p. 1137; see also *Baker v. FirstCom Music* (C.D. Cal. 2017) 2017 WL 951044, at *12.)

Specifically, the FAC alleges that on October 27, 2022, "Antelope Valley Chevrolet demanded Plaintiff return the 2022 Chevrolet Malibu," "informed Plaintiff that it terminated her purchase and her right to use the Vehicle," and "demanded that she surrender the Vehicle by no later than November 4, 2022", Antelope Valley also threatened it would seek attorney's fees and report her to the IRS, implying she faced criminal charges for lying on her tax returns.[2] These written demands, coupled with the baseless assertion that Plaintiff no longer had any right to the vehicle, carried an implicit threat of legal action, repossession, and criminal charges if Plaintiff did not comply.

The *Monex* court reasoned that, under the implied-action rule from *Katzberg v. Regents of University of California*, 29 Cal.4th 300 (2002), a cause of action for attempted extortion arises directly from Penal Code section 523.

---

[2] Plaintiff can allege there was a written extortionist threat for attorney's fees and that Defendant would report her to the IRS, just as in *Flatley v. Mauro,* 39 Cal. 4th 299 (2006).

-12-

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

(*Monex*, 666 F.Supp.2d at p. 1137.) By definition, the crime of attempted extortion does not require any actual transfer of money or property. Thus, the court concluded that a plaintiff may recover damages for attempted extortion even if the extortionate demand was not successful. (*Id.*)

## F. **Plaintiff Has Sufficiently Pled Her California Consumer Legal Remedies Act Claim (13th COA)**

Defendant argues that Plaintiff's California Consumer Legal Remedies Act (CLRA) claim should be dismissed because it relies on conclusory allegations not tied to the vehicle sale, cites CLRA sections without supporting facts, and fails to allege that the violations resulted in the sale as opposed to post-sale repossession efforts. However, a review of the complaint as a whole reveals ample facts to support the CLRA claim.

### 1. **CLRA CLAIM RELIES ON CONCLUSORY ALLEGATIONS NOT TIED TO THE VEHICLE SALE**

Defendant's argument that the CLRA claim fails because it does not allege violations specifically tied to the moment of sale ignores the expansive scope of the statute, which prohibits unfair or deceptive practices "undertaken by any person in a transaction **intended to result** or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a) (emphasis added). By its plain language, the CLRA encompasses not just completed sales, but also situations where a deceptive practice is committed in a transaction intended to result in a sale, even if that sale is never consummated.

Moreover, the CLRA itself mandates that its provisions be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. This express directive for liberal construction reinforces that the statute's protections are not meant to be narrowly confined to a single, discrete moment of

-13-

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

sale, but rather extend broadly to cover the entire lifecycle of a consumer transaction.

This is further evident from the wide range of practices prohibited by the CLRA, many of which can occur outside the confines of a single sale. For example, the statute prohibits disparaging the goods or services of another by false or misleading representation of fact (§ 1770(a)(8)), a deceptive practice that can occur in advertising or marketing before any sale is finalized. Similarly, misrepresentations about the characteristics, uses, or benefits of a good or service (prohibited by § 1770(a)(5)) may not come to light until the consumer has used the product for some time after the initial purchase.

The CLRA's broad language and the wide range of practices it covers demonstrate that its protections are not rigidly limited to the moment of sale, but extend to the entire lifecycle of a transaction, from pre-sale negotiations and advertising to post-sale performance and enforcement. Here, Plaintiff has alleged a course of deceptive and unconscionable conduct by the dealership that spanned multiple phases of the transaction, from the inclusion of an unlawful provision in the sale contract (FAC ¶¶ 32-33, 108) to post-sale misrepresentations about Plaintiff's rights and obligations (FAC ¶¶ 39, 108, 110) to improper attempts to coerce the vehicle's return through false criminal accusations (FAC ¶¶ 42-43, 108, 112). All of this conduct falls within the broad scope of the CLRA, regardless of whether it occurred at the precise moment of sale.

Defendant's attempt to escape CLRA liability by artificially segmenting the transaction finds no support in the expansive language and remedial purpose of the statute. The Court should reject such a narrow and technical interpretation of the CLRA that would undermine its vital consumer protections. Plaintiff's allegations, viewed in light of the statute's broad scope, are more than sufficient to state a plausible CLRA claim at this stage. Defendant's motion to dismiss this

THE LAW OFFICES OF:
ANDRE L. VERDUN

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

cause of action should therefore be denied.

## 2. <u>THE FAC ALLEGES FACTS SUPPORTING CLRA VIOLATIONS UNDER SECTIONS 1770(A)(5), (8), (9), AND (14)</u>

Contrary to Defendant's assertion, the FAC does not merely recite CLRA provisions in a conclusory fashion, but rather alleges specific facts throughout the complaint that directly support Plaintiff's claims under Cal. Civ. Code §§ 1770(a)(5), (8), (9), and (14).

First, the FAC alleges that the dealership falsely represented to Plaintiff that it had a legal right to demand return of the vehicle and terminate the sale contract unilaterally, even though it had failed to validly cancel the agreement within the 10-day period required by law. (FAC ¶¶ 39, 108). This states a claim under § 1770(a)(14), which prohibits "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

Second, the FAC alleges that the dealership knowingly and falsely accused Plaintiff of committing theft, going so far as to file a police report that led to her arrest, in an attempt to coerce her into surrendering the vehicle. (FAC ¶¶ 42-43, 108, 112). This conduct plausibly violates § 1770(a)(5), which prohibits "Representing that goods or services have . . . characteristics [or] benefits . . . that they do not have," in that the dealership could demand a return of the vehicle beyond 10-days as stated at the time of sale, as well as § 1770(a)(8), which forbids making "misleading representation of fact." By falsely reporting the vehicle as stolen and accusing Plaintiff of theft, the dealership misrepresented the characteristics of both the vehicle (as being stolen property) and the transaction (as being void and conferring no rights on Plaintiff), which also violates § 1770(a)(8), which forbids making "misleading representation of fact."

Finally, the FAC alleges facts suggesting that the dealership never intended to honor the terms of the sale contract as originally represented to

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

THE LAW OFFICES OF: ANDRE L. VERDUN

Plaintiff. The dealership's attempt to unilaterally back out of the agreement beyond the 10-day cancellation period (FAC ¶¶ 36, 39), coupled with its false representations about Plaintiff's rights and baseless criminal accusations (FAC ¶¶ 42-43, 108), support an inference that it "Advertis[ed] goods or services with intent not to sell them as advertised," in violation of § 1770(a)(9).

These specific factual allegations, expressly tied to enumerated CLRA provisions, belie Defendant's claim that the complaint relies only on generalities and legal conclusions. While Defendant may dispute the truth of these allegations, it cannot reasonably contest that, if proven, they would establish violations of at least four separate CLRA subsections. The statute requires no more to survive a pleading challenge. Defendant's motion to dismiss the CLRA claim should therefore be denied.

### 3. CLRA CLAIM FAILS TO ALLEGE THAT THE VIOLATIONS RESULTED IN THE SALE AS OPPOSED TO POST-SALE REPOSSESSION EFFORTS

Defendant fundamentally confuses the nature of Plaintiff's CLRA claim by suggesting that it improperly seeks redress for the repossession rather than unfair or deceptive acts in the course of the vehicle sale transaction. This is simply incorrect. The gravamen of Plaintiff's claim is not that the repossession itself violated the CLRA, but rather that Defendant engaged in a course of conduct, after the initial sale, that misrepresented Plaintiff's rights and obligations under the sales contract and used false accusations of theft to unfairly deprive her of the benefits of the transaction.

As alleged in the complaint, the sales contract contained an express provision limiting the dealership's right to unilaterally cancel the agreement to a 10-day period after the sale. (FAC ¶ 32). By attempting to terminate the contract and demand return of the vehicle well beyond this cancellation window, Defendant misrepresented to Plaintiff that it had rights and remedies that it did

-16-

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

not in fact possess, in plain violation of Cal. Civ. Code § 1770(a)(14). (FAC ¶¶ 39, 108). Defendant then doubled down on this deception by falsely accusing Plaintiff of theft and reporting her to the police when she did not accede to its unlawful demands, further misrepresenting the nature of the transaction and the parties' respective rights in violation of § 1770(a)(5) and (8). (FAC ¶¶ 42-43, 108, 112).

Taken together, these allegations paint a picture of a dealership that, having failed to properly rescind the sale contract, resorted to deceptive and unfair tactics to bully Plaintiff into surrendering the vehicle and void the transaction after the fact. The subsequent repossession was simply the means by which Defendant executed this scheme and unlawfully deprived Plaintiff of her contractual rights. But it is the underlying misrepresentations and false accusations - all of which flowed directly from the original vehicle sale and Defendant's attempts to unwind it - that constitute the actionable CLRA violations.

Plaintiff is not seeking redress for the repossession itself, but rather for the pattern of deceptive and unfair acts, in the course and in the context of the sale transaction, that Defendant employed in its efforts to unfairly deprive Plaintiff of that transaction's benefits. Such conduct lies at the very heart of the CLRA's consumer protections, and Plaintiff has more than sufficiently pled its existence to survive dismissal.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

-17-

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff Gabriela Stephanie Barrios respectfully requests that this Court deny Defendant Antelope Valley Chevrolet, Inc.'s Motion to Dismiss in its entirety. If, however, the Court is inclined to grant any part of Defendant's motion, Plaintiff respectfully requests leave to amend to cure any deficiencies.

Dated: March 19, 2024                    *Andre Verdun*

Andre Verdun,
Attorney for Plaintiff,
Gabriela Stephanie Barrios

-18-

**PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS**

# CERTIFICATE OF SERVICE

**Case Name: Barrios v Antelope Chevrolet**

**Case No.: 2:23-cv-10476**

I, the undersigned, affirm that at the time of serving the referenced documents, I was over the age of eighteen years and not a party to this action. Additionally, I am not a registered California process server. I am employed in Ventura County/San Diego County, California, and my primary business address is 1777 N Ventura Ave, Ventura, CA 93001, United States.

On March 22, 2024 I served the foregoing documents described as: **PLAINTIFF'S OPPOSITION TO DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION TO DISMISS** on the parties in this action addressed as follows: **ECF System**: I have caused service of the document(s) referenced above, on the parties identified above by electronically filing them with the Clerk of the District Court using its ECF System, which provides electronic notification to them.

**Thomas R. O'Connor  CTSC Law 2601 Main Street, Suite 800 Irvine, California 92614 Attorney for Antelope Valley Chevrolet  Molshree Gupta, Esq. Carina M. Jordan, Esq. KJAR, McKENNA & STOCKALPER, LLP 841 Apollo Street, Suite 100 El Segundo, California 90245 Attorney for Los Angeles Sheriff's Department  Email service list upon which service of these documents were served on: toconnor@ctsclaw.com, ronaldwilcox@gmail.com, service@verdunlaw.com, andre@verdunlaw.com, mnixon@kmslegal.com, pstockalper@kmslegal.com, mgupta@kmslegal.com, bezra@kmslegal.com, toconnor@ctsclaw.com, LUnis@ctsclaw.com, eschumann@ctsclaw.com, MShin@ctsclaw.com, allisonkrumhorn@gmail.com,**

**US Mail**: I hereby certify that I have caused the foregoing to be mailed, via the United States Postal Service, to the following non-ECF participants in this case: **NONE**.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed **March 22, 2024** at **Ventura, California**.

s/ David Adams
David Adams

THE LAW OFFICES OF: ANDRE L. VERDUN

-1-

**PROOF OF SERVICE**