Andre Verdun (SBN 265436)
**Law Office of Andre L. Verdun**
1777 N Ventura Ave
Ventura, CA 93001
Tel. 6198800110
Fax. 8668040051
andre@verdunlaw.com

Attorney for Plaintiff,
Gabriela Stephanie Barrios

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| **GABRIELA STEPHANIE BARRIOS,** | Case #: **2:23-cv-10476** |
| Plaintiff(s), | |
| vs. | **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| **ANTELOPE CHEVROLET, LOS ANGELES SHERIFF'S DEPARTMENT, and OFFICERS 1-10, in their official capacities, inclusive,** | Date: October 25, 2024 |
| Defendants. | Time: 10:00 AM |
| | Courtroom: Courtroom 7B |
| | Judge: Honorable André Birotte Jr. |

The Law Offices of:
**ANDRE L. VERDUN**

-i-

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................1

II.   STATEMENT OF FACTS.................................................................................1

III.    ARGUMENT ....................................................................................................2

   A.   Plaintiff Has Sufficiently Pled Her § 1983 Claims Against AVC ...................2

   B.   Plaintiff Has Sufficiently Pled Her Bane Act Claim ....................................12

   C.   Plaintiff Has Sufficiently Pled Her False Arrest/Imprisonment Claim .........15

   D.   Plaintiff Has Sufficiently Pled Her Conversion Claim.................................15

   E.   Plaintiff Has Sufficiently Pled Her Civil Extortion Claim ...........................16

IV.    CONCLUSION..............................................................................................17

THE LAW OFFICES OF:
ANDRE L. VERDUN

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998) ....................................................... 10

*Adickes v. S.H. Kress Co.*, 398 U.S. 144, 152 (1970) ........................................... 8

*Bailey v. Kenney*, 791 F. Supp. 1511, 1522-23 (D. Kan. 1992) ......................... 11

*Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989) ............................. 8

*Flatley v. Mauro*, 39 Cal. 4th 299 (2006) ............................................................. 17

*Fuhrman v. California Satellite Systems,* 179 Cal. App. 3d 408 ......................... 17

*Harris v. Roseburg*, 664 F.2d 1121 ................................................................... 3, 4

*Hollandsworth v. City & Cty. of Honolulu,* No. 19-00587, 2020 U.S. Dist. LEXIS 34133 ..................................................................................................................... 10

*Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983 .....................................passim

*Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003) ........................................ 5

L*usby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1430 (10th Cir. 1984) .............. 11

*Meyers v. Redwood City*, 400 F.3d 765 (9th Cir. 2005) ....................................... 4

*People v. Persolve, LLC*, 218 Cal.App.4th 1267 ............................................... 14

*Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) ............. 12

*Rubin v. Green*, 4 Cal.4th 1187, 1196 (1993) ................................................... 14

*Sanchez v. Oremor of Temecula, LLC,* 2021 WL 2631962 (Arbitration Award) (Superior Court of Los Angeles, February 24, 2021) ......................................... 18

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) ................... 3, 5

*United States v. Price,* 383 U.S. 787, 794 (1966) ................................................. 9

*Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 960 (9th Cir. 2008) ....... 3, 4

*Woynar v. Smith (In re 53 Foot Trawler Pegasus),* 2008 WL 4938345, 2008 U.S. Dist. LEXIS 96332, at *14-15 (M.D. Fla. Nov. 18, 2008) ............................... 8, 17

*Yuki Kobayashi v. McMullin*, No. 2:19-cv-06591-SSS (MAA), 2023 WL 3493991, 2023 U.S. Dist. LEXIS 87743 ........................................................................... 4

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**Statutes**

United States Code, Title 42, Section 1983 ................................................passim

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## I.    INTRODUCTION

Defendant Antelope Valley Chevrolet, Inc. ("AVC") moves to dismiss several of Plaintiff Gabriela Stephanie Barrios' causes of action in her Second Amended Complaint. AVC's motion should be denied in its entirety because Plaintiff has sufficiently pled facts to support each of her claims.

The crux of this case is that AVC, unhappy with a vehicle sale contract it had entered into with Plaintiff, conspired with local law enforcement to have Plaintiff arrested on false charges in order to repossess her vehicle without proper legal process. AVC's actions went far beyond merely reporting suspected criminal activity - the dealership actively participated in a scheme to deprive Plaintiff of her constitutional rights through threats, intimidation, and the wrongful use of police power[1]. The Second Amended Complaint contains detailed factual allegations supporting claims for civil rights violations, false arrest, conversion, and other causes of action arising from this misconduct. At this stage, Plaintiff's well-pled allegations must be accepted as true, and they more than suffice to state plausible claims for relief.

## II.    STATEMENT OF FACTS

On September 8, 2022, Plaintiff Gabriela Stephanie Barrios entered into a Retail Installment Sale Contract (RISC) with AVC to purchase a 2022 Chevrolet Malibu. (Second Amended Complaint ("SAC") ¶ 35). The contract contained a provision allowing AVC to cancel within 10 days if it was unable to assign the contract to a financial institution. (SAC ¶ 37). AVC did not exercise this cancellation right within the 10-day period. (SAC ¶ 41).

After the 10-day cancellation period had expired, AVC made repeated attempts to contact Plaintiff about returning the vehicle, including contacting her mother. (SAC ¶¶ 43-45). On October 27, 2022, well beyond the 10-day window,

---

[1] Depositions are being conducted as this motion is litigated, and as discovery progresses, more evidence is being uncovered about the cooperation between the LASD and AVC in the arrest and repossession of Barrios' vehicle.

-1-

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

THE LAW OFFICES OF: ANDRE L. VERDUN

AVC sent Plaintiff written correspondence demanding she return the vehicle by November 4, 2022. (SAC ¶ 49). The dealership also made implied threats to report Plaintiff to the IRS. (SAC ¶ 46).

Unable to coerce Plaintiff into surrendering the vehicle, AVC then engaged in a joint action with the Los Angeles Sheriff's Department to improperly seize the vehicle without a court order. (SAC ¶ 52). On or about November 2, 2022, at least three AVC employees met with LASD officers at the dealership. (SAC ¶¶ 54-56). During these meetings, AVC employees falsely reported to police that Plaintiff had stolen the vehicle. (Id.)

As a result of AVC's false report and conspiring with law enforcement, on November 3, 2022 at 7:30 am, Plaintiff was arrested for grand theft auto and embezzlement. (SAC ¶ 60). This arrest occurred before the November 4 deadline AVC had given Plaintiff to return the car. (Id.) The police arrested Plaintiff without probable cause, without conducting an investigation, and by solely relying on AVC's false statements. (Id.)

Plaintiff was then detained for over 7 hours, including being pulled over with her young children in the car, arrested at gunpoint, handcuffed, fingerprinted, interrogated, and jailed for more than 5 hours. (SAC ¶¶ 1-2). During her detention, police refused to allow Plaintiff to use her breast pump, causing her physical pain and humiliation. (SAC ¶ 2).

Meanwhile, LASD officers seized Plaintiff's vehicle without a court order and returned it directly to AVC. (SAC ¶ 59). AVC has refused to return Plaintiff's deposit on the vehicle. (SAC ¶ 64).

### III.   ARGUMENT

#### A. Plaintiff Has Sufficiently Pled Her § 1983 Claims Against AVC

Plaintiff objected to returning the vehicle. AVC gave a deadline to return the vehicle without incident, but even before that deadline, and without a judicial court order, AVC utilized the assistance of the LASD to wrongfully repossess the

-2-

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

car. As stated by the Ninth Circuit:

> We conclude that there may be a deprivation within the meaning of § 1983 not only when there has been an actual "taking" of property by a police officer, but also when the officer assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession. While mere acquiescence by the police to "stand by in case of trouble" is insufficient to convert a repossession into state action, police intervention and aid in the repossession does constitute state action.

*Harris v. Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981)

Indeed, the Ninth Circuit has held that using the police to facilitate a repossession is state action, holding a third party liable (even landlords can be liable under § 1983 for invoking the authority of the police to put the weight of the state behind their wrongful evictions.) *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983). As the Central District of California recently stated:

> " However, a joint action can be pleaded not just by a conspiracy, but also by facts showing that a private party is a "a willful participant in joint action with the State or its agents," Tsao, 698 F.3d at 1140 (quoting *Franklin*, 312 F.3d at 445)—that is, "when the actions of the state and the private party are intertwined or when the parties have a symbiotic relationship," *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 960 (9th Cir. 2008). **The Ninth Circuit has considered circumstances in which a police officer's involvement in a private**

-3-

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

THE LAW OFFICES OF: ANDRE L. VERDUN

**vehicle repossession [\*53] or eviction constitutes state action such that the private entity is liable.** *See Villegas*, 541 F.3d at 961 (citing *Meyers v. Redwood City*, 400 F.3d 765 (9th Cir. 2005); *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983); and *Harris v. City of Roseburg*, 664 F.2d 1121 (9th Cir. 1981)). "These cases teach us that '[w]hile mere acquiescence by the police to "stand by in case of trouble" is insufficient to convert' a private enforcement action into one attributable to the state, 'police intervention and aid . . . does constitute state action.' Even mere assistance in effectuating an enforcement action or the intimidation of a person so 'as to cause him to refrain from exercising his legal right to resist' will support a finding of state action." *Id.* (alterations in original) (quoting *Harris*, 664 F.2d at 1127). Here, making all inferences in Plaintiff's favor, the TAC contains sufficient allegations of joint action between Landlord McMullin and the police officers arising from the incidents at the Apartment. The District Court should **DENY** the McMullin Motion to dismiss the Section 1983 claim against Landlord McMullin for the incidents at the Apartment."

*Yuki Kobayashi v. McMullin*, No. 2:19-cv-06591-SSS (MAA), 2023 WL 3493991, 2023 U.S. Dist. LEXIS 87743, at *52-53 (C.D. Cal. Mar. 2, 2023)

Indeed, in the wrongful repossession case of *Villegas,* the Ninth Circuit reasoned that the conduct of private parties can amount to government action and held it was at least a question of fact as to "whether [Defendant's] participation rose to the level of 'substantial cooperation" sufficient to establish state action under the joint activity test.' " *Villegas v. Gilroy Garlic*

-4-

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*Festival Ass'n*, 541 F.3d 950, 963 (9th Cir. 2008).  There the police took direction from a private party, just as is alleged herein.

AVC's argument that Plaintiff's § 1983 claims fail because it is a private entity, and therefore did not act under color of state law, fails to take into account the full weight of Ninth Circuit precedent, which has held repeatedly that a private party acts under color of state law for purposes of § 1983 when it is a "willful participant in joint action with the State or its agents." (*Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003)). Joint action exists when the state has "so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." (*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012)).

Here, the Second Amended Complaint (SAC) does not merely allege that AVC reported suspected criminal activity to the police. Instead, it details a coordinated scheme between AVC and the Los Angeles Sheriff's Department (LASD) to deprive Plaintiff of her constitutional rights:

- AVC substantially participated with the LASD officers in planning and procuring a wrongful repossession, arrest, and incarceration, in a civil dispute over a car contract, without the required Court Order. (SAC ¶¶ 52-61)

- At least three AVC employees met in person with a number of LASD officers at the AVC dealership to plan the seizure of Plaintiff's vehicle. (SAC ¶¶ 54-56)

- AVC employees met in person with LASD officers at the dealership to plan the seizure of Plaintiff's vehicle. (SAC ¶¶ 54-56)

- AVC employees made false statements to police, claiming Plaintiff had stolen the vehicle, when in fact she had possession pursuant to a valid sales contract. (Id.)

- AVC and LASD engaged in "joint action to improperly seize Plaintiff's vehicle without a Court Order." (SAC ¶ 52)

-5-

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

- LASD arrested Plaintiff without probable cause, relying solely on AVC's false statements and without conducting any independent investigation. (SAC ¶ 60)

- LASD seized Plaintiff's vehicle and returned it directly to AVC, again without a court order. (SAC ¶ 59)

Moreover, recent discovery has revealed an even deeper level of coordination between AVC and LASD, further solidifying the claims in the complaint. Text messages show that <u>AVC was in constant communication with LASD officers</u>, <u>actively directing the timing and execution of Plaintiff's arrest</u>. In a shocking revelation, while LASD officers stood by, AVC continued negotiating financing terms with Plaintiff, yet instructed LASD to delay making an arrest until they decided what course of action to take. Once AVC decided to move forward with the arrest, they informed LASD, who immediately carried it out—arresting Plaintiff, seizing the vehicle, and returning it to AVC. This all occurred without a court order and while AVC was still engaged in financing discussions (which LSD knew about), demonstrating that the arrest was driven entirely by AVC's direction, not by any legitimate criminal suspicion.

The text messages below, between the AVC/dealer and the LASD police detective, referring to the dealer's General Manager Jack Oh, show the joint efforts carried out at the direction of AVC and Jack Oh. **Also attached as Exhibit 1**. Notably this direction and conspiracy began nearly a week before the wrongful arrest, repossession, and incarceration, as shown by the text messages AVC produced herein, <u>even though the police reports suggest the first contact between AVC and LASD was November 2, 2024</u>.

Pending depositions will clarify the details surrounding the dealer's direction of the police's unlawful acts to resolve a civil dispute without the required Court Order.

-6-

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**







-7-

Now that it is clear the texts are between AVC and the LASD, evidence strongly supports the allegations in the complaint and demonstrates that AVC was not merely a bystander but an active orchestrator of the unlawful arrest and seizure. While these specific details were not included in the Second Amended Complaint, as they were only recently discovered, Plaintiff is prepared to amend the complaint to include this additional information if the Court deems it necessary.

While mere complaints to the police are insufficient to create state action (*Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989)), these allegations go well beyond passive information-sharing. In *Collins*, private citizens made a citizen's arrest only after police refused to assist, thereby taking independent action. By contrast, AVC directly controlled LASD's response, using law enforcement to serve its private interests.

The U.S. Supreme Court has also said that both private persons and state officials can be liable for constitutional violations under United States Code, Title 42, Section 1983. See *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 152 (1970).

Additionally, in denying both the creditor and consumer's parties Motions for Summary Judgment regarding wrongful repossession and conversion, another court reviewed the caselaw on the issue and noted, "If the strong arm of the law is needed, then the *creditor* must secure judicial intervention when a police officer is carrying out or sanctioning the repossession"). *Woynar v. Smith (In re 53 Foot Trawler Pegasus),* 2008 WL 4938345, 2008 U.S. Dist. LEXIS 96332, at \*14-15 (M.D. Fla. Nov. 18, 2008).  Also, "the introduction of law enforcement officers into the area of self-help repossession, regardless of their degree of participation or nonparticipation in the actual events, would constitute state action, thereby invalidating a repossession without proper notice and hearing." *Id.*

-8-

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Antelope Valley Chevrolet jointly engaged with the Los Angeles Sheriff's Department in the prohibited action, acting `under color' of law for purposes of the statute. To act `under color' of law does not require that the accused be an officer of the State. It is enough that Antelope Valley Chevrolet is a willful participant in joint activity with the State or its agents. See *United States v. Price,* 383 U.S. 787, 794 (1966). In the matter at hand, the police officers affirmatively participated in the repossession of Plaintiff's property, and therefore as the *Howerton* case points out, Antelope Valley Chevrolet was acting under the color of law to deprive Plaintiff possession of her vehicle. See *Howerton v. Gabica*, 708 F.2d 380, 383-84 (9th Cir. 1983).

The dealership's conduct far exceeds the level of state action found in *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983), where the Ninth Circuit held that landlords' repeated requests for police assistance to evict tenants constituted state action. In *Howerton*, police were present at multiple stages: a uniformed off-duty officer warned the tenants about utility disconnection, the same officer advised the tenants to leave and suggested other rental options, and police were present when the utilities were disconnected. Although the police claimed they were merely present to "keep the peace", the Ninth Circuit found their repeated involvement at each stage sufficient to constitute state action, stating that "the police intervened at every step" of the eviction process.

In *Howerton*, police stood by while the landlord acted. Here, AVC actively orchestrated Plaintiff's arrest and the vehicle seizure by enlisting LASD's involvement, directing their actions, and manipulating the process to achieve its desired outcome. If, in *Howerton,* repeated police presence while the landlord acted created joint action, here, AVC not only enlisted LASD's help but also used law enforcement as its private enforcer, orchestrating Plaintiff's arrest and the unlawful repossession of her vehicle, while instructing LASD precisely when and how to act. This direct involvement and command over law enforcement's

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

conduct is well documented in text messages and other communications between AVC and LASD officers, proving that AVC's role was not simply as an observer or participant, but as the primary actor driving the constitutional violations.

Similar to *Howerton*, in *Hollandsworth v. City & Cty. of Honolulu,* No. 19-00587, 2020 U.S. Dist. LEXIS 34133, a private-party defendant reached out to the police and told them of the need to retrieve the property (a horse), the police agreed to offer "standby assistance," the police arrived at the scene, intervened, displayed their authority, and over plaintiff's objections, caused the buyer to capitulate, allowing the previous owner to take the property (a horse) thereby "effecting the deprivation of the property." The court held the facts create a plausible claim for joint action. Indeed, nowhere in *Howerton* nor in *Hollandsworth* are there facts showing the substantial participation and joint coordination and direction provided to the police by the private actor as the discovery has revealed here.

Additionally, the Third Circuit in *Abbott v. Latshaw*, 164 F.3d 141 (3d Cir. 1998), held that using police to repossess property without a court order constitutes state action because law enforcement has no authority to determine possession rights—that is the court's role. Like in *Abbott*, AVC used LASD to bypass the courts entirely, depriving Plaintiff of her due process rights.

Defendant's reliance on a lengthy passage from a Tenth Circuit case (*Carey v. Continental)* is also unavailing, as noted by another court:

> "In contrast, the Tenth Circuit 'concluded that a store security guard who reported a suspected shoplifter to the police was a state actor' in *Lusby v. T.G. & Y. Stores Inc.*, 749 F.2d 1423, 1429 (10th Cir. 1984). *Gallagher*, 49 F.3d at 1454. The court 'noted that the officer that made the arrest did not make an independent investigation but relied on the judgment of the security guard.' *Id.* The Tenth Circuit applied a similar analysis in *Coleman v. Turpen*, 697 F.2d 1341, 1345 (10th Cir. 1982), where the private wrecking company that towed, and subsequently sold, the plaintiff's vehicle

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

was deemed to be a state actor because its actions constituted "an integral part of the deprivation."[2]

As noted above on page 3, here, "The police arrested Plaintiff without probable cause, without conducting an investigation, and by solely relying on AVC's false statements. (Id.)". And in yet another case distinguishing the Tenth Circuit *Carey* case Defendant relies on, the court stated:

> "the undisputed evidence establishes that Kenney and the police officers acted in a concerted manner to enter the house and restrain plaintiff of his liberty. Moreover, there are allegations allowing the inference that the police officers actually acted under the direction of Kenney, who informed Haynes and Wiley that they could enter and search for bond forfeitures and that this was done all the time. *See Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1430 (10th Cir. 1984) (jury could find that security guard acted under color of state law where local police followed custom allowing guard to substitute his judgment for that of police), *cert. denied in part, granted in part as to other party*, 474 U.S. 818 & 805 (1985).

*Bailey v. Kenney*, 791 F. Supp. 1511, 1522-23 (D. Kan. 1992).

In sum, the facts presented here show a far greater level of coordination and interdependence between AVC and LASD than in *Howerton*. AVC's direction of LASD's actions—determining *when* and how the arrest and seizure would take place—demonstrates an intermingling of state and private actions sufficient to establish state action under § 1983. Any attempt to dismiss these claims at this stage would ignore the strong evidence of joint action and the clear deprivation of Plaintiff's constitutional rights orchestrated by AVC through LASD's unlawful conduct.

/ / /

/ / /

---

[2] *Baumann v. FRB*, 2013 WL 4757264, 2013 U.S. Dist. LEXIS 126041, at *19 (D. Colo. Sep. 3, 2013).

-11-

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## B. **Plaintiff Has Sufficiently Pled Her Bane Act Claim**

Defendants argue that Plaintiff's Bane Act claim fails because she does not sufficiently allege that AVC engaged in the requisite "threat, intimidation, or coercion" necessary to establish liability under California Civil Code § 52.1. Specifically, Defendants assert that the making of a false police report cannot satisfy the statutory requirements and that Plaintiff has failed to show AVC's intent to interfere with her rights. However, Defendants' argument mischaracterizes the scope of the Bane Act and the nature of Plaintiff's allegations.

Plaintiff has now sufficiently pled facts showing that AVC and the Los Angeles Sheriff's Department ("LASD") engaged in joint action to violate her rights as discussed in detail above. Communications between AVC and LASD officers, shows that AVC actively directed LASD in the timing and execution of Plaintiff's arrest and the seizure of her vehicle. Contrary to Defendants' assertions, this goes far beyond merely making a false report. It is now clear that AVC worked in concert with LASD to orchestrate Plaintiff's wrongful arrest and seizure, providing instructions and exercising control over when and how the police would act. This level of participation establishes joint action, satisfying the state action requirement under the Bane Act.

In *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018), the Ninth Circuit held that the "threat, intimidation, or coercion" element does not need to be independent from the constitutional violation itself, so long as there is a specific intent to violate the plaintiff's rights. Here, AVC's intent is evident from its close coordination with LASD, where it directed law enforcement to carry out the arrest and seizure of Plaintiff's vehicle without a court order. Also, it can be deduced from the facts available that AVC told Plaintiff to remain in possession of the vehicle, so that LASD could arrest her in possession, negating her ability to contest ownership of the vehicle. These actions occurred without probable cause

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

and before the expiration of the deadline AVC had given Plaintiff to return the vehicle, demonstrating that AVC and LASD were acting in concert to violate Plaintiff's rights.

The court previously expressed concern that AVC's false police report alone could not constitute a threat, intimidation, or coercion under the Bane Act, especially because Plaintiff was not present during the report. Plaintiff has now clarified that the credible threat and coercion came not from AVC's report itself, but from the actions of LASD officers who, under AVC's direction, used their law enforcement authority to arrest Plaintiff and seize her vehicle.

Plaintiff was arrested at gunpoint in front of her children, handcuffed, and detained for several hours. These actions clearly involved threats, intimidation, and coercion, which were carried out under AVC's instructions. Therefore, the requirement of a credible threat is satisfied by LASD's conduct in carrying out the wrongful arrest and vehicle seizure at AVC's behest.

The coordination between AVC and LASD, where AVC directed law enforcement in the timing and execution of the arrest, demonstrates joint action. This joint effort, where LASD used coercive force to arrest Plaintiff under AVC's guidance, establishes the necessary 'threat, intimidation, or coercion' under the Bane Act. Since the officers' actions, including threats of arrest, are attributable to AVC, this satisfies the requirement for the Bane Act claim.

The court also indicated in its prior ruling that Plaintiff must show that AVC had a specific intent to interfere with her rights. Plaintiff has sufficiently alleged that AVC acted with specific intent to interfere with her Fourth Amendment right to freedom from unreasonable seizure. AVC's intent is demonstrated by its decision to direct LASD to proceed with the arrest and seizure, even though the deadline for Plaintiff to return the vehicle had not yet passed and there was no court order authorizing such actions.

Recent discovery confirms that AVC controlled LASD's actions, instructing

-13-

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

THE LAW OFFICES OF: ANDRE L. VERDUN

them on when to make the arrest and seize the vehicle. AVC's actions were not merely passive; they were deliberate and aimed at using the power of the state to resolve a private dispute. This conduct reflects a clear intent to violate Plaintiff's constitutional rights, as required by the Bane Act.

Defendants argue that AVC's false police report cannot constitute coercion because Plaintiff was not present when it was made. However, this argument overlooks the fact that the coercion did not come from the report itself, but from the coordinated actions of LASD under AVC's direction. The court need not find that Plaintiff was present during the report for AVC's conduct to violate the Bane Act; the key issue is whether AVC orchestrated a credible threat through LASD's actions, which Plaintiff has sufficiently alleged.

Defendants argue that the litigation privilege bars Plaintiff's Bane Act claim, but this privilege does not apply here. Plaintiff alleges AVC coordinated with LASD to orchestrate her unlawful arrest and property seizure, which is extrajudicial conduct and not protected speech. As the court in *People v. Persolve, LLC*, 218 Cal.App.4th 1267, 1274 (2013), held, the litigation privilege cannot override specific statutory protections, like those provided by § 1983 and the Bane Act. Moreover, the California Supreme Court has confirmed that the privilege does not shield unlawful conduct, such as false reporting or fraud, as alleged in this case. Also, the California Supreme Court said in *Rubin v. Green*, 4 Cal.4th 1187, 1196 (1993), that even where conduct could arguably be covered by the litigation privilege, it does not apply if the gravamen of the complaint involves criminal or fraudulent conduct that falls outside of legitimate litigation activities.

Plaintiff has adequately pled a Bane Act violation by showing that AVC conspired with LASD to orchestrate her wrongful arrest and the unlawful seizure of her vehicle. AVC's specific intent to interfere with Plaintiff's rights is evident from its direction and control over LASD's actions, and the credible threats and

-14-

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

coercion were carried out by LASD under AVC's instructions. For these reasons, Plaintiff's Bane Act claim is fully supported by the facts and should proceed.

### C. **Plaintiff Has Sufficiently Pled Her False Arrest/Imprisonment Claim**

AVC contends that Plaintiff's false arrest claim fails because AVC did not participate in the arrest and merely provided information to police. This argument has already been considered and rejected by this Court. See, ECF 55, P 11-14. As such, as demonstrated the claim survives this motion.

### D. **Plaintiff Has Sufficiently Pled Her Conversion Claim**

AVC argues that Plaintiff's conversion claim fails because she has not adequately alleged ownership or right to possession of the vehicle. This argument ignores multiple allegations in the complaint clearly establishing Plaintiff's right to possess the vehicle.

To state a claim for conversion, a plaintiff must allege: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998).

Here, Plaintiff has alleged:

- She entered into a valid contract to purchase the vehicle from AVC. (SAC ¶ 35)
- AVC had a 10-day right to cancel the contract, which it did not exercise. (SAC ¶¶ 37, 41)
- "Plaintiff had a legal right to possession of the vehicle pursuant to the express terms of the Agreement." (SAC ¶ 64)
- "Plaintiff's possession of the vehicle was open and under a claim of title through the contract." (SAC ¶ 66)

These allegations clearly establish Plaintiff's right to possess the vehicle at the time it was seized. Contrary to AVC's assertion, Plaintiff was not required to use the magic words "I owned the vehicle" to adequately plead this element. Her

-15-

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

allegations that she had a legal right to possession under a valid sales contract are more than sufficient at this stage.

Plaintiff has also adequately alleged the other elements of conversion - that AVC wrongfully disposed of her property rights by conspiring with police to seize the vehicle without legal process (SAC ¶¶ 52-60), and that she suffered damages as a result (SAC ¶¶ 8, 64). These allegations are sufficient to state a plausible claim for conversion.

As noted above, other courts have denied dispositive motions involving wrongful repossessions and conversion. *Woynar v. Smith (In re 53 Foot Trawler Pegasus),* 2008 WL 4938345, 2008 U.S. Dist. LEXIS 96332, at *14-15 (M.D. Fla. Nov. 18, 2008).

### E. Plaintiff Has Sufficiently Pled Her Civil Extortion Claim

AVC contends that Plaintiff's civil extortion claim fails because she has not alleged specific threats or that AVC obtained property through extortion. This argument ignores key allegations in the complaint.

Under California law, civil extortion includes obtaining property from another, with consent, induced by a wrongful use of force or fear. *Flatley v. Mauro*, 39 Cal. 4th 299, 326 (2006). Fear may be induced by a threat to do an unlawful injury to the person or property of the individual threatened. *Fuhrman v. California Satellite Systems,* 179 Cal. App. 3d 408, 426 (1986).

Here, Plaintiff has alleged:

- - AVC sent Plaintiff a writing, "impliedly threatened to report her to the IRS if she didn't return the vehicle, implying she faced criminal charges for lying on her tax returns." (SAC ¶ 46)
- AVC "emailed Plaintiff threatening her that she could owe the dealer attorney's fees." (SAC ¶ 46)
- AVC engaged in "civil extortion." (SAC ¶ 46)
- AVC substantially participated with the LASD officers in planning and

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

THE LAW OFFICES OF: ANDRE L. VERDUN

procuring a wrongful repossession, arrest, and incarceration, in a civil dispute over a car contract, without the required Court Order. (SAC ¶¶ 52-61)

- AVC obtained Plaintiff's vehicle through this conduct. (SAC ¶¶ 59, 64)

These allegations sufficiently plead the elements of civil extortion at this stage. Plaintiff has alleged that AVC made implied threats of criminal prosecution and civil liability in an attempt to coerce her into surrendering her vehicle, and this was combined with engaging in actual conduct which succeeded in the wrongful repossession, arrest and incarceration. Indeed, Plaintiff further alleged that AVC ultimately obtained her vehicle through this course of conduct. While AVC may dispute these allegations, they must be accepted as true at this stage and are sufficient to state a plausible claim for civil extortion.

Furthermore, as discussed in another case, "Instead of using the courts as a means to recover the vehicle, TVT resorted to threats of arrest, the intimidation of police and criminal conviction in order to force Claimant to return the vehicle. This meets the definition of extortion." *Sanchez v. Oremor of Temecula, LLC,* 2021 WL 2631962 (Arbitration Award) (Superior Court of Los Angeles, February 24, 2021).

## IV.   CONCLUSION

For the foregoing reasons, Defendant Antelope Valley Chevrolet's motion to dismiss should be denied in its entirety. Plaintiff has alleged sufficient facts to state plausible claims for relief on all challenged causes of action. To the extent the Court finds any deficiencies in the pleading, Plaintiff respectfully requests leave to amend to cure any such issues.

Dated: October 11, 2024

*Andre Verdun*

Andre Verdun, Attorney for Plaintiff, Gabriela Stephanie Barrios

-17-

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**