Thomas R. O'Connor (Bar No. 272325)
*toconnor@ctsclaw.com*
Jiwon Michael Shin (Bar No. 320504)
*mshin@ctsclaw.com*
**CALLAHAN, THOMPSON, SHERMAN**
 **& CAUDILL, LLP**
2601 Main Street, Suite 800
Irvine, California 92614
Tel:  (949) 261-2872
Fax:  (949) 261-6060

Attorneys for Defendant,
**ANTELOPE VALLEY CHEVROLET, INC.**
**(ERRONEOUSLY SUED AND SERVED HEREIN AS**
**ANTELOPE CHEVROLET, INC.)**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GABRIELA STEPHANIE BARRIOS, <br><br> Plaintiff, <br><br> v. <br><br> ANTELOPE CHEVROLET, LOS ANGELES SHERIFF'S DEPARTMENT, and OFFICERS 1-10, in their official capacities, inclusive, <br><br> Defendants. | Case No.:  2:23-cv-10476-AB-JC <br><br> JUDGE:  Hon. Andre Birotte, Jr. <br> DEPARTMENT:  7B <br> Fourth Amended Complaint:  1/29/2025 <br><br> **DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **Hearing Information:** <br> Date: 8/8/2025 <br> Time: 1:30 PM <br> Dept.: 7B |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE on August 8, 2025 at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 7B of the above-entitled court, located at 350 West First Street, Los Angeles, CA 90012, California, Defendant ANTELOPE VALLEY CHEVROLET, INC. (ERRONEOUSLY SUED AND SERVED HEREIN

DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

AS ANTELOPE CHEVROLET, INC.) ("AVC") will and hereby does move for summary judgment or, in the alternative, partial summary judgment, against the Fourth Amended Complaint of Plaintiff GABRIELA STEPHANIE BARRIOS ("Plaintiff") pursuant to Federal Rule of Civil Procedure 56.  This Motion is made on the This Motion is made on the ground that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law for the reasons that:

1. Plaintiff's first and second causes of action for violation of federal civil rights under 42 U.S.C. § 1983 against AVC have no factual or legal merit.

2. Plaintiff's fourth of action for violation of the Bane Act, (Cal. Civ. Code §52.1) against AVC has no factual or legal merit.

3. Plaintiff's fifth cause of action for common law false arrest and false imprisonment against AVC has no factual or legal merit.

4. Plaintiff's sixth cause of action for negligence against AVC has no factual or legal merit.

5. Plaintiff's seventh cause of action for violation of the Rosenthal Fair Debt Collection Practices Act, (Cal. Civ. Code §1788 et seq.) against AVC has no factual or legal merit.

6. Plaintiff's eighth cause of action for violation of California Business & Professions Code §17200 against AVC has no factual or legal merit.

7. Plaintiff's ninth cause of action for conversion against AVC has no factual or legal merit.

8. Plaintiff's tenth cause of action for extortion against AVC has no factual or legal merit.

This motion is based on this notice, the attached memorandum of points and authorities, the accompanying Statement of Uncontroverted Facts and Conclusions of Law, the declaration of Jack Oh and Jiwon Michael Shin, all pleadings and records on

DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

file in this action, and on such further authority, evidence, or argument as may be presented at or before the time of any hearing on this Motion.

## LOCAL RULE 7-3

On June 25, 2025, I met and conferred with Plaintiff's counsel Andre Verdun over a telephone call to meet and confer to discuss the substance of AVC's Motion for Summary Judgment, or in the Alternative, Summary Judgment. The parties were unable to reach a resolution that eliminates the necessity for a hearing on any of the issues. Counsel have met and conferred in compliance with Central District of California Local Rule 7-3. (Declaration of Jiwon Michael Shin ("Shin Decl."), ¶13).

Respectfully submitted,

**CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**

DATED: July 2, 2025

By: _____
Thomas R. O'Connor
Jiwon Michael Shin
Attorneys for Defendant
**ANTELOPE VALLEY CHEVROLET, INC. (ERRONEOUSLY SUED AND SERVED HEREIN AS ANTELOPE CHEVROLET, INC.)**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 7

II.   SUMMARY OF FACTS ...................................................................... 7

III.  LEGAL STANDARD ........................................................................ 10

A.   PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC VIOLATED HER CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (1ST AND 2ND CAUSES OF ACTION) ........................................... 12

B.   PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC VIOLATED THE BANE ACT (CAL. CIV. CODE § 52.1) (4TH CAUSE OF ACTION) ................ 16

C.   PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC COMITTED OR IS LIABLE FOR COMMON LAW FALSE ARREST AND FALSE IMPRISONMENT (5TH CAUSE OF ACTION) .............................. 17

D.   PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC COMITTED OR IS LIABLE FOR NEGLIGENCE (6th CAUSE OF ACTION) ........................... 18

E.   PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC VIOLATED THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) (7th CAUSE OF ACTION) ................................................................ 20

F.   PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC VIOLATED CALIFORNIA BUS. & PROF. CODE SECTION 17200 (8th CAUSE OF ACTION) ......................................................................... 23

G.   PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC COMITTED OR IS LIABLE FOR CONVERSION (9TH CAUSE OF ACTION) ........................ 23

H.   PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC COMITTED OR IS LIABLE FOR CIVIL EXTORTION (10TH CAUSE OF ACTION) ............... 24

IV.  CONCLUSION ................................................................................. 26

CTSC|law

CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) ...............................12

*Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983)...................................13

*Betts v. Shearman*, 751 F.3d 78, 86 (2d Cir. 2014) .................................................13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)...........................................12

*Cole v. Johnson* (1961) 197 Cal.App.2d 788 .......................................................18

*Collins v. Womancare* (9th Cir. 1989)....................................................................13

*Cox v. Griffin* (2019) 34 Cal.App.5th 440, 446.....................................................18

*Dwight R. v. Christy B.*, 212 Cal. App. 4th 697, 698 (2013) ...............................15

*Fuhrman v. California Satellite Systems*, 179 Cal.App.3d 408, 426 (1986)..........25

*Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) .............................12

*Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d. Cir. 1999) ....................................................................................................................13

*Gorlack v. Ferrari* (1960)........................................................................................18

*Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir. 1989)............................................13

*Intermarketing Media, LLC v. Barlow*, No. 8:20-CV-00889-JLS (DFMx), 2021 U.S. Dist. LEXIS 243264 .................................................................................25

*Johnson v. Honeywell Internat. Inc.* 179 Cal. App. 4th 549, 555–56 (2009) ........19

*Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1087 (C.D. Cal. 2009) ....................13

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 553..................................................................................................23

*Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1404 ...............24

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).) ..................................................................................................11

*Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010)................................12

*Peng v. Mei Chin Penghu, 335 F.3d 970, 980 (9th Cir. 2003)* ..............................13

*People v. Hesslink*, 167 Cal. App. 3d 781, 789 (1985) .........................................25

*Perez v. City of Los Angeles*, 2023 U.S. Dist. LEXIS 218383........................13, 14

*Piedvache v. Ige* (D.Haw. Nov. 2, 2016, No. 16-00138 DKW-RLP) 2016 U.S.Dist.LEXIS 152224 ........................................................................12

*Priest v. United States*, No. 5:16-cv-01528-CAS(SPx), 2017 U.S. Dist. LEXIS 193655 ...............................................................................................19

*Quiroz v. Seventh Ave. Ctr.* 140 Cal. App. 4th 1256, 1285 (2006) ........................19

*Scalia v. Cty. of Kern* (E.D.Cal. 2018) ................................................................16

*Scott v. Harris,* 550 U.S. 372,380 (2007).............................................................12

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).................11

*Turner v. Mellon*, 41 Cal. 2d 45, 48, 257 P.2d 15, 17 (1953) ...............................18

*Yates v. Allied Int'l Credit Corp.*, 578 F. Supp. 2d 1251, 1254 (S.D. Cal. 2008) .............................................................................................................23


**Statutes**

42 U.S.C. § 1983...................................................................................................12

42 U.S.C. 1983......................................................................................................11

Civil Code § 52.1 .............................................................................................16, 17


**Rules**

Cal. Civ. Code § 52.1............................................................................................11

Cal. Evid. Code § 669(a) .......................................................................................20

Cal. Pen. Code, § 518 ...........................................................................................25

California Evidence Code § 669(a) ........................................................................19

Civil Code § 1788.30, subsection (e) .....................................................................23

Civil Rights Violation under 42 U.S.C. 1983 ........................................................11

Fed. R. Civ. P. 56(a)..............................................................................................11

Professions Code § 17200 .....................................................................................24

DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Gabriela Stephanie Barrios ("Plaintiff") was arrested after refusing to return a vehicle to Defendant Antelope Valley Chevrolet, Inc. ("AVC"), the dealership where she had attempted to purchase it, after ignoring numerous requests by the dealership to return the vehicle.  Among a variety of claims, Plaintiff accuses AVC of making a false police report and the Los Angeles Sheriff's Department ("LASD") of false arrest.  Plaintiff's claims are at best speculative and based on unsupported conspiracy theories lacking evidentiary support. The undisputed facts demonstrate that AVC had reasonable grounds for reporting the vehicle as stolen and turned the matter over to the LASD who properly effectuated an arrest. Summary judgment is appropriate.

### II.    SUMMARY OF FACTS

This case arises out of the sale of a 2022 Chevrolet Malibu, VIN: 1G1ZB5ST5NF185813 ("the Subject Vehicle") by AVC to Plaintiff Gabriela Stephanie Barrios ("Plaintiff"). [AVC's Statement of Uncontroverted Facts ("SUF") 1].  On or about September 8, 2022, Plaintiff entered into an agreement with AVC to purchase the Subject Vehicle (the "Retail Installment Sale Contract" or "RISC"); the paperwork included a credit application.  [SUF 2.]  Plaintiff represented income of $5,000 a month in the application. [SUF 3.]

Based on her represented income, funding was preliminarily approved subject to the lender verifying her information and Plaintiff took possession of the Subject Vehicle. [SUF 4.]

Plaintiff signed a Request for Transcript of Tax Return (form 4506-C), which the lender submitted to the IRS to verify her income.  [SUF 5.]  On or about September 27, 2022, the lender notified AVC of its determination that Plaintiff had reported zero income for the prior year based on the response from the IRS to the 4506-C.  [SUF 6.] As a result, the lender denied funding for Plaintiff's purchase. [SUF 7.]

-7-

AVC then began making numerous attempts to contact Plaintiff about the financing issues. [SUF 8.] AVC sent Plaintiff a letter via certified mail advising her of the failed attempts to obtain financing for the loan, and requesting that Plaintiff return the vehicle by the end of the day on October 4, 2022. [SUF 9.] The letter was sent after AVC learned that Plaintiff "had no income" and financing had been rejected. [SUF 10.]

AVC sent text messages and called Plaintiff more than 20 times to address the inconsistencies in her credit application and to try and assist her in getting the loan funded. [SUF 11.] "[B]etween October 18, 2022 and October 26, 2022, [AVC] sent multiple messages to Plaintiff indicating it wanted to help her with the sale process and asking her to respond so the dealer could help with the loan process." [SUF 12.] Specifically, on October 18 and October 22, 2022, Nina Garcia of AVC sent Plaintiff several text messages regarding "issues with the finances." [SUF 13.]

AVC delayed filing a police report while it attempted to contact Plaintiff. [SUF 14.] On October 22, 2022, AVC employee James Gonzalez entered a note in AVC's call log that Plaintiff did "not want to bring car back." [SUF 15.] On October 24, 2022, Mr. Gonzalez entered another note stating that he spoke with Plaintiff's boyfriend, who said Plaintiff would not return the car, so the dealership was "SOL"; he also stated he and Plaintiff were speaking to an attorney. [SUF 16.] On October 26, 2022, Mr. Gonzalez entered a call log note indicating that he spoke with Plaintiff and inquired whether she would return the car, to which Plaintiff responded "no" and that she "will be keeping it." [SUF 17.]

Nonetheless, on October 26, 2022, at 2:14 p.m. Ms. Garcia again text messaged Plaintiff informing her that she was trying to help with the loan process, but that the income Plaintiff provided was not verifying with the IRS. [SUF 18.] Plaintiff admitted that she received an email from Mr. Oh and text messages regarding AVC's inability to verify her income. [SUF 19.] However, Plaintiff did not respond to those inquiries. [SUF 20.]

Pursuant to the terms and conditions of the RISC, Plaintiff warrantied that she gave true and correct information in her credit application, and that upon request, that she would provide documents and other information necessary to verify any item contained in her credit application. [SUF 21.] The RISC defines "default" to mean any of several occurrences, including violating any other agreement in the contract. [SUF 22.] The RISC provides that if Plaintiff is in default under the RISC, AVC is entitled to take (repossess) the Subject Vehicle from her. [SUF 23.] Plaintiff's refusal to communicate information to verify her credit information and address the bank's findings rendered her in default and entitled AVC to immediate possession of the Subject Vehicle pursuant to the terms of the purchase contract. [SUF 24.]

Based on the bank's determination that Plaintiff misrepresented her income in the credit application, and Plaintiff's subsequent refusal to respond to AVC despite numerous attempts to reach her for over a month, culminating with Plaintiff's direct refusal to return the Subject Vehicle, AVC came to the reasonable belief that Plaintiff had lied in her credit application in order to take possession of the Subject Vehicle. [SUF 25.] Consequently, AVC's General Manager, Jack Oh, decided to contact the police to determine if Plaintiff had committed a crime. [SUF 26.]

On or about October 26, 2022, Sheriff's Detective Michael Gelardo visited AVC and, based on the information provided, felt like this was a stolen vehicle given the fraudulent loan application. [SUF 27.] AVC still refrained from filing a police report because it wanted to see if Plaintiff's mother could co-sign for the vehicle purchase. [SUF 28.] AVC employee Nicole McCracken sent a text message to Detective Gelardo stating she would keep him posted on AVC's efforts. [SUF 29.]

On November 2, 2022, LASD returned to AVC's dealership. [SUF 30.] At that time, AVC signed a CHP 180 Vehicle Report regarding the Subject Vehicle. *Ibid*. Per the deputies' request, Nicole McCracken provided copies of documents related to Plaintiff's vehicle purchase and a log of AVC's attempts to contact her. [SUF 31.]

//

In addition to the information and records from AVC, LASD attempted to reach Plaintiff for comment, but she ignored them as well. [SUF 32.]  Detective Gelardo testified that he recalled reviewing the credit application, the RISC, bank statements, and a call log which showed that AVC made some 21 attempts to contact Plaintiff. [SUF 33.] Based on his investigation, Detective Gelardo concluded there was probable cause that a crime was committed and to effect an arrest.  [SUF 34.]  It did not matter that AVC had given Plaintiff a deadline of November 4, 2022 to return the Subject Vehicle because the crime had already been committed.  [SUF 35.]  It was necessary to wait until AVC completed the CHP 180 report before the Subject Vehicle could be entered into the stolen vehicle database.  [SUF 36.]

Plaintiff was arrested on November 3, 2022.  [SUF 37.]  The Subject Vehicle was subsequently returned to AVC.  [SUF 38.]  AVC did not formulate a plan with LASD regarding how to repossess the vehicle from Plaintiff and have it returned to AVC.   [SUF 39.] AVC did not communicate with LASD deputies about any instructions, directions or plans about pulling over and arresting Plaintiff, or about taking the vehicle from her.  [SUF 40.]  No one from AVC was present during the arrest.  [SUF 41.]

Plaintiff's operative Fourth Amended Complaint ("FAC") alleges the following causes of action against AVC: Civil Rights Violation under 42 U.S.C. 1983 (two counts); violation of the Bane Act (Cal. Civ. Code § 52.1); common law false arrest and false imprisonment; negligence; violation of the Rosenthal Fair Debt Collection Practices Act; violation of California Bus. & Prof. Code section 17200; conversion; civil extortion.[1]

### III.    LEGAL STANDARD

Summary judgment shall be rendered when the movant establishes that there is no genuine dispute as to any material fact and that the movant is entitled to judgment

---

[1] The first page title of the pleading includes an 11th claim for declaratory and injunctive relief.  However, the body of the FAC does not include such a claim for relief.

as a matter of law. ( Fed. R. Civ. P. 56(a).) To satisfy its burden at summary judgment, a moving party without the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." (*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).)  "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. [Citation.] If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.' [Citations.]" (*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).)

Where the movant satisfies its burden to show an absence of evidence supporting the nonmovant, "the burden then shifts to the non-mov[ant] to designate *specific facts* demonstrating the existence of genuine issues for trial." ( *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010) [emphasis added].)  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims[.]" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).)

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." ( *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).) "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." ( *Scott v. Harris,* 550 U.S. 372,380 (2007), [emphasis in original] "summary judgment" (quoting *Anderson,* 477 U.S. at 247-48).)

### A.    PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC VIOLATED HER CIVIL RIGHTS UNDER 42 U.S.C. § 1983 (1ST AND 2ND CAUSES OF ACTION)

To state a claim under 42 U.S.C. § 1983, a plaintiff must "plead that (1) the defendants acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes." (*Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).) "Section 1983 claims do not generally lie against private parties... To state a claim under Section 1983, a plaintiff must allege the violation was committed by a person acting under color of law. Individuals and private entities are not normally liable under Section 1983, given these requirements, because they are not generally acting under color of state law, and . . . [c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act. [Citations.]" (*Piedvache v. Ige* (D.Haw. Nov. 2, 2016, No. 16-00138 DKW-RLP) 2016 U.S.Dist.LEXIS 152224, at *17 [internal quotes omitted].) "[T]he joint action inquiry focuses on whether the state has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity. . . . [Citation]. Joint action therefore requires a substantial degree of cooperative action." (*Collins v. Womancare* (9th Cir. 1989) 878 F.2d 1145, 1154.)

Recently, the Central District has summarized the law that merely complaining to the police does not convert a private party into a state actor:

"'[M]erely complaining to the police does not convert a private party into a state actor.' Citations; see also *Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ('The mere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under [section 1983].'); *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d. Cir. 1999) (same); *Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir. 1989) ('[P]rivate parties are not

-12-

state actors when they merely call on the law for assistance, even though they may not have grounds to do so.'). And this remains the case even where, as here, a plaintiff alleges a private party has made false allegations to the police. See *Peng v. Mei Chin Penghu, 335 F.3d 970, 980 (9th Cir. 2003)* (private parties who allegedly gave false information to police officer leading to plaintiff's arrest were not state actors); *Betts v. Shearman*, 751 F.3d 78, 86 (2d Cir. 2014) ('Betts's claim against Shearman as a state actor boils down to the fact that he was arrested upon the false accusation of assault made against him by a private citizen to the police. This is insufficient to state a plausible claim that Shearman and the arresting officers shared a common goal of violating Betts's rights.'); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1087 (C.D. Cal. 2009) ('Providing false information to the police does not transform a private individual into a state actor.')." (*Perez v. City of Los Angeles*, 2023 U.S. Dist. LEXIS 218383, *13-14.)

The undisputed evidence establishes AVC did nothing beyond reporting the incident. In fact, AVC did everything possible to *avoid* making the report – repeatedly reaching out to Plaintiff by phone, text, email and mail. [SUF 7-13.] Even after being told Plaintiff was not going to return the Subject Vehicle, AVC explored the possibility of Plaintiff's mother co-signing on the loan. [SUF 14-17, 27.] Only after all efforts failed did AVC reach out to law enforcement. [SUF 24.]

Initially, AVC sought information as to whether Plaintiff had committed a crime. [SUF 42.] Sheriff's Detective Michael Gelardo visited AVC and, based on the information provided, felt like this was a stolen vehicle given the fraudulent loan application. [SUF 26.] By November 1, 2022, it was clear that Plaintiff would not voluntarily return the Subject Vehicle and AVC requested the sheriff's return and take a report. [SUF 43; SUF 30.] AVC completed the stolen vehicle report, and provided the LASD with information and documents related to the sale, and AVC's attempts to

DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

contact Plaintiff.  [SUF 30, 31, 33.]  Before an officer completes a CHP 180 stolen vehicle report, the officer would have to have probable cause a crime has been committed.  [SUF 44.]

AVC took no further action related to the arrest of Plaintiff. AVC did not formulate a plan with LASD regarding how to repossess the vehicle from Plaintiff and have it returned to AVC.  [SUF 39.]  AVC did not communicate with LASD deputies about any instructions, directions or plans about pulling over and arresting Plaintiff, or about taking the vehicle from her.  [SUF 40.]  No one from AVC was present when Plaintiff was arrested.  [SUF 41.]  Such conduct does not give rise to a cause of action under section 1983.

Plaintiff relies on a few text communications between Nicole McCracken, AVC's public relations person and executive assistant and Detective Michael Gelardo to imply some type of conspiratorial relationship. The argument is completely unsupported and nothing but unfounded speculation.  Ms. McCracken did know Detective Gelardo through her work in public relations.  [SUF 45.]

Ms. McCracken was the individual who first reached out to Detective Gelardo regarding the instant matter.   [SUF 25, 46.]  At that time, AVC was still trying to work with Plaintiff.  [SUF 26, 27, 47.]  Ms. McCracken followed up with a text saying she would keep Detective Gelardo posted on AVC's efforts.  [SUF 28.]  When it became obvious further efforts would be futile, Mr. Oh had Ms. McCracken asked Detective Gelardo to return to take the stolen vehicle report. [SUF 29, 30, 48]  There is nothing conspiratorial or nefarious about the communications.  To assert otherwise is pure speculation.

In *Dwight R. v. Christy B*., 212 Cal. App. 4th 697, 698 (2013), the California Court of Appeal rejected a similar argument.  There, Dwight alleged that Christy, a licensed marriage and family therapist, conspired with his former mother-in-law and state actors, including several San Bernardino County social workers, to falsely accuse him of sexually abusing his five-year-old daughter R1.  (*Id.* at p. 702.)  Relevant here,

-14-

Dwight did not establish a probability of prevailing on the "state actor" component of his §1983 claims. The father merely speculated that the therapist conspired or engaged in joint action.  The court stated:

> "Dwight merely speculates that Christy conspired or engaged in joint action with social workers and L.S. to fabricate false allegations that Dwight was sexually abusing the girls. For example, Dwight alleges that L.S. had 'preexisting personal and professional relationships' with the social worker defendants and with Christy, through her work for the Los Angeles County Office of Education. But L.S. and Christy flatly denied this allegation, and Dwight adduced no competent, admissible evidence to support it. More generally, Dwight speculates that L.S., Christy, and the social worker defendants were in cahoots because they all worked with abused children, and R1's initial therapy session with Christy took place on the day she was to have her first overnight visit with Dwight. But none of these circumstances support a reasonable inference that Christy conspired or engaged in joint action with state actors, including the social worker defendants or with L.S., to deprive Dwight or the girls of their federal constitutional rights to familial association and against unlawful seizure.
>
> In sum, Dwight's speculation is insufficient to support his conspiracy or joint action allegations. He therefore failed to make a prima facie evidentiary showing to support the state actor component of his section 1983 claims against Christy." (*Id.* at p. 715.)

The same is true here.  The contention that the text communications somehow imply a conspiracy lacks any reasonable inference that AVC was conspiring with or engaged in joint action with the state actors to deprive Plaintiff of her federal constitutional rights.  The texts all took place before AVC even made a complaint. Communicating, whether by phone or text, was simply to ask the Detective to come

-15-

to (or return to) the dealership. Once the complaint was made, AVC had no involvement in the investigation or arrest of Plaintiff.

## B. PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC VIOLATED THE BANE ACT (CAL. CIV. CODE § 52.1) (4TH CAUSE OF ACTION)

"A plaintiff bringing a claim pursuant to the Bane Act 'must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion.' [Citation.]" (*Scalia v. Cty. of Kern* (E.D.Cal. 2018) 308 F. Supp. 3d 1064, 1080.) "Speech alone is not sufficient to support an action brought pursuant to subdivision (b) or (c) [Civil Code § 52.1], except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." (Civil Code § 52.1(k)).

As with the civil rights claims, Plaintiff alleges conclusory statements that AVC acted "jointly and in concert" with the Los Angeles Sheriff's Department to violate Plaintiff's rights. (E.g., FAC, ¶¶ 176 & 183). Plaintiff's claims appear to be directed at the conduct of the Los Angeles Sheriff's Department. Even the conclusory allegations of a conspiracy allege no conduct on the part of AVC: "The defendant officers acted in concert with Antelope Valley Chevrolet, relying solely on their statements and without conducting an independent investigation, to falsely arrest and imprison Plaintiff, in violation of her rights under California law." (FAC, ¶ 178).

Speech alone is not sufficient to support an action brought under the Bane Act, "except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be

committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat." (Cal Civ Code § 52.1(k).) None of these elements are alleged in the FAC.

Here, the only basis for maintaining a claim against AVC would possibly be a showing of joint action with the LASD.  (See Order Denying Defendant's Motion to Strike [Dkkt. No. 99] And Denying Defendant's Motion to Dismiss Fourth Amended Complaint [Dkt. No. 100], Doc. 130.)  As discussed above, the uncontroverted facts establish there is no merit to Plaintiff's §1983 claims.  There was no joint action between AVC and the LASD.

## C.  PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC COMITTED OR IS LIABLE FOR COMMON LAW FALSE ARREST AND FALSE IMPRISONMENT (5TH CAUSE OF ACTION)

"False arrest and false imprisonment are the same tort. False arrest is a way of committing false imprisonment." (*Cox v. Griffin* (2019) 34 Cal.App.5th 440, 446, fn. 6.) "It is the settled rule that 'A private person does not become liable for false imprisonment when in good faith he gives information -- even mistaken information -- to the proper authorities though such information may be the principal cause of plaintiff's imprisonment.' [Citations.]" (*Gorlack v. Ferrari* (1960) 184 Cal.App.2d 702, 709.) For example, in *Cole v. Johnson* (1961) 197 Cal.App.2d 788, the court held a judgment of nonsuit was proper as to the person who identified one plaintiff as a robber, since he took no active part in bringing about the arrest, but only identified, to the best of his ability, the man he thought was the perpetrator of the crime, and since there was no evidence that he was actuated by malice.

*Cole* cited the earlier California Supreme Court decision in *Turner v. Mellon*, 41 Cal. 2d 45, 48, 257 P.2d 15, 17 (1953), where the court stated: "It is settled law 'that the defendant must have taken some active part in bringing about the unlawful arrest and that he is not liable if, acting in good faith, he merely gives information to

the authorities. [Citations.] . . . [It] would be unjust to impose liability for an honest mistake in identification even where the identification may have been the principal cause of the wrongful arrest.' [Citation.]"  The court further explained: "We think it serves the public interest -- and, hence, the line should be drawn here -- that citizens who have been criminally wronged may, without fear of civil reprisal for an honest mistake, report to the police or public prosecutor the facts of the crime and in good faith, without malice, identify to the best of their ability to such public officers the perpetrator of the crime. Investigation and action from then on are the responsibility of the public employes who are skilled in that work and who are paid to perform it." (*Id.* at pp. 48-49.)

In the present case, the uncontroverted facts establish that AVC was informed, correctly or mistakenly, by the lender that Plaintiff had misrepresented her income in her credit application resulting in her being denied a loan and defaulting on the RISC agreement.  [SUF 6, 20-24.]  AVC did not immediately involve the police but went to great lengths to discuss the issue with Plaintiff who refused to communicate with AVC.  [SUF 7-13, 17-19, 27, 47.]   Before reporting the Subject Vehicle as stolen, AVC sought input from LASD as to whether a crime had been committed.  [SUF 25, 26, 42.] Only when AVC was informed Plaintiff would not return the Subject Vehicle did AVC report it as stolen and turn the matter over to LASD to pursue.  [SUF 14-16, 31, 43, 48.]  AVC acted reasonably and without malice.  [SUF 24.][2]

### D.   PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC COMITTED OR IS LIABLE FOR NEGLIGENCE (6TH CAUSE OF ACTION)

"The elements of a cause of action for negligence in California are: (1) a legal duty to use due care; (2) a breach of that legal duty; and (3) the breach was the proximate or legal cause of the resulting injury." (*Priest v. United States*, No. 5:16-

---

[2] Additionally, as discussed above, the uncontroverted facts establish AVC did not act as a joint participant with LASD in making Plaintiff's arrest.

DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

cv-01528-CAS(SPx), 2017 U.S. Dist. LEXIS 193655, at *7 (C.D. Cal. Nov. 20, 2017).)

Plaintiff alleges two bases for her negligence claim against AVC: common law negligence and negligence per se. Neither has merit.

Under California law, negligence per se is not a cause of action but a legal presumption.  "'[T]he doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence.' [Citation.] The doctrine of negligence per se does not provide a private right of action for violation of a statute. [Citation.]" (*Johnson v. Honeywell Internat. Inc*. 179 Cal. App. 4th 549, 555–56 (2009).)

"Thus, the doctrine of negligence per se does not establish tort liability." (*Quiroz v. Seventh Ave. Ctr.* 140 Cal. App. 4th 1256, 1285 (2006)). Further, California Evidence Code § 669(a) provides that the "failure of a person to exercise due care is presumed if: (1) he violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." Cal. Evid. Code § 669(a).

Here, the FAC cites no underlying statute, ordinance, or regulation; does not allege how Plaintiff was in a protected class; nor allege any causal connection to her injuries. Instead, the FAC nebulously alleges "Antelope Valley Chevrolet violated specific statutes, regulations, and ordinances designed to protect individuals like Plaintiff from the type of harm she suffered." (Exhibit A, FAC, ECF #92, ¶ 197.)  As discussed throughout this Motion, there is no merit to any statutory theory of liability which would support a claim under Evidence Code section 669.

//

//

The gist of the negligence claim is based on allegations of "the false arrest, false imprisonment, and failure to provide necessary medical care, directly and proximately caused harm to Plaintiff, constituting negligence under California common law." (Exhibit A, FAC, ECF #92, ¶ 196.) As discussed above, there is no merit to the claim of false arrest and false imprisonment. Thus, there is similarly no merit to Plaintiff's negligence cause of action.

As for the allegation AVC failed to provide necessary medical care, the uncontroverted evidence establishes no AVC employees were present when Plaintiff allegedly suffered physical injuries.  (SUF 41.)  Plaintiff cannot establish a cause of action for negligence.

**E.  PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC VIOLATED THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (FDCPA) (7TH CAUSE OF ACTION)**

Plaintiff alleges a laundry list of allegations that AVC violated the Rosenthal FDCPA.  Despite the expanse of allegations, none are factually supported.

Plaintiff first alleges AVC violated the Act by (1) using criminal means to cause harm to Plaintiff, her reputation, and her property, (2) and asserting that Plaintiff committed a crime by retaining possession of the vehicle, which was false, (3) the communication of, or threat to communicate to any person the fact that a debtor has engaged in conduct, which the debt collector knows or has reason to believe will defame the debtor; and (4) The threat to take any action against the debtor which is prohibited by this title.  (Exhibit A, FAC, ECF #92, ¶ 206.)

The uncontroverted evidence establishes AVC had a reasonable basis for believing Plaintiff committed fraud and illegally obtained and retained possession of the Subject Vehicle.  [SUF 24.]  AVC was informed by the lender of the income discrepancy in Plaintiff's credit application. [SUF 6.]  AVC made numerous good

-20-

DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

faith attempts to discuss the issue with Plaintiff but she consistently refused.[3] [SUF 7-12, 17, 19, 27, 28, 33.] Instead, Plaintiff indicated she would not return the Subject Vehicle. [SUF 14 – 16.] Plaintiff's conduct was a breach of the terms of the RISC. [SUF 20-23.]  AVC confirmed with LASD that Plaintiff's conduct was a crime and turned the matter over to the authorities. [SUF 25, 26, 30, 31, 42.]  AVC provided LASD with copies of documents related to Plaintiff's vehicle purchase and a log of AVC's attempts to contact her.  [SUF 31.]

Plaintiff argues that AVC acted improperly in filing the stolen vehicle report before the deadline given in a demand letter.  This argument is a red herring.  AVC's correspondence, dated September 27, 2022, stated "pursuant to 'sellers right to cancel' under the contract, we hereby cancel the contract and request that you immediately make arrangements to return the vehicle to our dealership located at 1160 West Motor Lane, Lancaster, California prior to 5:00 PM on 10/4/2022."  [SUF 49.] AVC's correspondence, dated October 27, 2022, stated "we demand that you surrender the Vehicle by making it available for us to pick it up by no later than 3:00p.m. on November 4, 2022." [SUF 50.] Neither letter made any promises not to report the vehicle stolen. According to Detective Gelardo, the crime had already been committed.  [SUF 34, 35.]  Indeed, it was well after the letters were sent, and before the vehicle theft report was made, that Plaintiff stated she refused to return the Subject Vehicle.  [SUF 14-16, 30, 43.]

Likewise, Plaintiff's arguments that AVC did not seek rescission of the deal within the ten-day window (Exhibit A, ECF #92, ¶ 206), is irrelevant.  While it is true that some correspondence erroneously refers to rescission based on the ten-day period, the error is immaterial.  First, to the extent Plaintiff made misrepresentations in her credit application, the rescission clause does not apply as Plaintiff materially breached the terms of the RISC.  [SUF 20-23.]  Second, for the same reason, Plaintiff has no

_____

[3] Plaintiff admitted that she received a text message from Mr. Oh and text messages regarding AVC's inability to verify her income.  SUF 18.

-21-

damages as a result of the error.

Plaintiff alleges that AVC violated the Rosenthal FDCPA by representing that it had a right to possess the Subject Vehicle when it did not.  As the facts stated above establish, this is simply not true. AVC had every right to demand possession of the Subject Vehicle from Plaintiff, because Plaintiff was in default under the terms of the RISC for failing to provide information and records to verify her credit information upon request.  [SUF 20-23.]

Plaintiff alleges that AVC violated the Rosenthal FDCPA by impermissibly communicating with third parties, including the police in connection with attempts to collect a debt. However, AVC's communication with the Sheriff's department was not for the purpose of collecting a debt, but was to report what it reasonably believed to have been criminal conduct. Under Civil Code section 47(b), communications made in any legislative, judicial or other official proceedings authorized by law are absolutely privileged. "[S]ection 47(b) is not limited to statements made in a courtroom." [Citations] "Civil Code section 47 gives all persons the right to report crimes to the police, the local prosecutor or an appropriate regulatory agency, even if the report is made in bad faith." [Citations] (*Yates v. Allied Int'l Credit Corp.*, 578 F. Supp. 2d 1251, 1254 (S.D. Cal. 2008)).

Based on the 4506-C form that Plaintiff signed and provided, the lender determined that Plaintiff had reported zero income to the IRS4 while representing in her credit application that she earns $5000 per month. [SUF 4-6.] Based on those findings along with Plaintiff's refusal to respond to AVC's requests for information to explain these discrepancies, AVC reasonably believed that Plaintiff had obtained possession of the Vehicle through fraud.  [SUF 24.]  AVC genuinely believed that Plaintiff may have engaged in criminal conduct and communicated that to LASD. Even if Plaintiff can prove that she accurately reported her income on the credit application, AVC's erroneous communications were not intentional, which provides an affirmative defense to this cause of action pursuant to Civil Code § 1788.30,

-22-

subsection (e), which provides, "A debt collector shall have no civil liability to which such debt collector might otherwise be subject for a violation of this title, if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation." Accordingly, this cause of action lacks merit.

### F. PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC VIOLATED CALIFORNIA BUS. & PROF. CODE SECTION 17200 (8TH CAUSE OF ACTION)

"The UCL does not proscribe specific activities, but in relevant part broadly prohibits any unlawful, unfair or fraudulent business act or practice. (§ 17200.) Because … section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. … By proscribing any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." (*Law Offices of Mathew Higbee v. Expungement Assistance Servs*., 214 Cal. App. 4th 544, 553, [internal quotes and citations omitted] (2013))

Thus, to prevail under the Business and Professions Code § 17200, Plaintiff must establish that AVC's alleged conduct in connection with its business practices was unlawful. As discussed in this Motion, none of Plaintiff's causes of action against AVC have merit.

### G. PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC COMITTED OR IS LIABLE FOR CONVERSION (9TH CAUSE OF ACTION)

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." (*Mendoza v. Continental Sales Co*.

-23-

(2006) 140 Cal.App.4th 1395, 1404-1405.)

Here, Plaintiff cannot establish the first two elements.  The uncontroverted facts establish that Plaintiff provided false information in her credit application and thus did not have ownership or a right to possession of the Subject Vehicle at the time the Vehicle was taken from her.  [SUF 4-6, 20-22.]  Further, Plaintiff's refusal to communicate information to verify her credit information and address the bank's findings rendered her in default and entitled AVC to immediate possession of the Subject Vehicle pursuant to the terms of the purchase contract.  [*Ibid*.; SUF 23.]

Even if Plaintiff could demonstrate a right to possession, AVC did not effect a conversion by a wrongful act or disposition of property rights.  AVC confirmed with LASD that Plaintiff's conduct was a crime and turned the matter over to the authorities. [SUF 25, 26, 30, 31, 42.]  AVC proceeded in a legally appropriate manner and, as discussed at length above, made every effort to resolve the issue without such intervention, to no avail.

## H.   PLAINTIFF WILL NOT BE ABLE TO ESTABLISH THE ELEMENTS TO PROVE AVC COMITTED OR IS LIABLE FOR CIVIL EXTORTION (10TH CAUSE OF ACTION)

"Extortion is the obtaining of property or other consideration from another, with his or her consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." (Cal. Pen. Code, § 518.)

The elements of extortion are "(1) A wrongful use of force or fear, (2) with the specific intent of inducing the victim to consent to the defendant's obtaining his or her property, (3) which does in fact induce such consent and results in the defendant's obtaining property from the victim." (*People v. Hesslink*, 167 Cal. App. 3d 781, 789 (1985).)  In a reasoned opinion discussing the cause of action, the Central District adopted the holding in *Fuhrman v. California Satellite Systems*, 179 Cal.App.3d 408, 426 (1986), which held, in part, that civil claims premised upon extortive conduct are treated as a type of fraud claim; and as a result, a required element to establish a civil

-24-

extortion cause of action is that defendants knew their claims were false. (*Intermarketing Media, LLC v. Barlow*, No. 8:20-CV-00889-JLS (DFMx), 2021 U.S. Dist. LEXIS 243264, at 33 (C.D. Cal. May 1, 2021).)

Here, the uncontroverted evidence establishes AVC had a reasonable basis for believing Plaintiff committed fraud and illegally obtained and retained possession of the Subject Vehicle. [SUF 24.] AVC was informed by the lender of the income discrepancy in Plaintiff's credit application. [SUF 6.] AVC made numerous good faith attempts to discuss the issue with Plaintiff but she consistently refused.[4] [SUF 7-12, 17, 19, 27, 28, 33.] Instead, Plaintiff indicated she would not return the Subject Vehicle. [SUF 14 – 16.] Plaintiff's conduct was a breach of the terms of the RISC. [SUF 20-23.] Rather than having knowledge that its claim was false, AVC confirmed with LASD that Plaintiff's conduct was a crime and turned the matter over to the authorities to pursue. [SUF 25, 26, 30, 31, 42.]

Additionally, Plaintiff did not capitulate to any threats or wrongful use of force or fear by AVC. Plaintiff was arrested and the Subject Vehicle was seized by LASD ands returned to AVC following her arrest. [SUF 37 & 38.] Plaintiff's return of the vehicle spare key and vehicle manual followed Detective Gelardo's warnings and not from any alleged conduct by AVC.[5] (FAC, ¶ 231). Plaintiff's downpayment was already in possession of AVC when she paid it at the time of sale. [SUF 2] Plaintiff cannot establish a claim for extortion.

//

//

//

//

//

---

[4] Plaintiff admitted that she received a text message from Mr. Oh and text messages regarding AVC's inability to verify her income. [SUF 18.]

[5] As with other claims, the uncontroverted evidence establishes AVC was not a joint actor with the LASD with respect to Plaintiff's arrest.

-25-

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, AVC requests the Court grant summary judgment in its favor and against Plaintiff on Plaintiff's Fourth Amended Complaint. Alternatively, AVC requests the Court grant partial summary judgment in its favor and against Plaintiff on each cause of action alleged against it in Plaintiff's Fourth Amended Complaint. Respectfully submitted.

DATED: July 2, 2025

CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP

By: _____

Thomas R. O'Connor
Jiwon Michael Shin
Attorneys for Defendant
**ANTELOPE VALLEY CHEVROLET, INC. (ERRONEOUSLY SUED AND SERVED HEREIN AS ANTELOPE CHEVROLET, INC.)**

-26-

## **CERTIFICATE OF SERVICE**

I, Thomas R. O'Connor, attorney for defendant ANTELOPE VALLEY CHEVROLET, INC. (ERRONEOUSLY SUED AND SERVED HEREIN AS ANTELOPE CHEVROLET, INC.), hereby certify that on July 2, 2025, I caused a complete and accurate copy of the foregoing to be served via this Court's CM/ECF notification system, which will electronically serve all participants in this case.

/s/ Thomas R. O'Connor
Thomas R. O'Connor

-27-

DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT