Thomas R. O'Connor (Bar No. 272325)
toconnor@ctsclaw.com
Jiwon Michael Shin (Bar No. 320504)
mshin@ctsclaw.com
**CALLAHAN, THOMPSON, SHERMAN**
 **& CAUDILL, LLP**
2601 Main Street, Suite 800
Irvine, California 92614
Tel: (949) 261-2872
Fax: (949) 261-6060

Attorneys for Defendant,
**ANTELOPE VALLEY CHEVROLET, INC.**
**(ERRONEOUSLY SUED AND SERVED HEREIN AS**
**ANTELOPE CHEVROLET, INC.)**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GABRIELA STEPHANIE BARRIOS,<br><br>Plaintiff,<br><br>v.<br><br>ANTELOPE CHEVROLET, LOS ANGELES SHERIFF'S DEPARTMENT, and OFFICERS 1-10, in their official capacities, inclusive,<br><br>Defendants. | Case No.: 2:23-cv-10476-AB-JC<br><br>JUDGE: Hon. Andre Birotte, Jr.<br>DEPARTMENT: 7B<br>Fourth Amended Complaint: 1/29/2025<br><br>**DECLARATION OF JIWON MICHAEL SHIN IN SUPPORT OF DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Hearing Information:**<br>Date: 8/8/2025<br>Time: 1:30 PM<br>Dept.: 7B |

## DECLARATION OF JIWON MICHAEL SHIN

I, Jiwon Michael Shin, declare as follows:

1.    I am an attorney licensed to practice law in the State of California and I am admitted to the Central District of California. I am an associate at Callahan,

-1-

Thompson, Sherman & Caudill, LLP, attorneys of record for Defendant Antelope Valley Chevrolet, Inc. The statements contained herein are based on personal knowledge. If called to testify to their contents, I would and could testify competently thereto.

2.      Attached hereto as **Exhibit A** is Plaintiff's Fourth Amended Complaint filed on January 29, 2025, ECF #92.

3.      Attached hereto as **Exhibit B** are true and correct copies of excerpts from the transcript of Plaintiff Gabriela Stephanie Barrios' deposition taken in the instant action on December 20, 2024.

4.      Attached hereto as **Exhibit C** are true and correct copies of excerpts from the transcript of Jack Oh's deposition taken in the instant action on September 24, 2024.

5.      Attached hereto as **Exhibit D** are true and correct copies of excerpts from the transcript of James Gonzalez's deposition taken in the instant action on September 26, 2024.

6.      Attached hereto as **Exhibit E** are true and correct copies of excerpts from the transcript of Michael Gelardo's deposition taken in the instant action on December 19, 2024.

7.      Attached hereto as **Exhibit F** is reserved.

8.      Attached hereto as **Exhibit G** are true and correct copies of excerpts from the transcript of Jonathan Torsney's deposition taken in the instant action on October 3, 2024.

9.      Attached hereto as **Exhibit H** are true and correct copies of excerpts from the transcript of Rowell Quemuel's deposition taken in the instant action on April 10, 2025.

10.    Attached hereto as **Exhibit I** is a true and correct copy of Nicole McCracken's Declaration executed on March 27, 2025.

11.    Attached hereto as **Exhibit J** are true and correct copies of excerpts from the transcript of Jack Oh's deposition when he testified as AVC's Person Most Knowledgeable on December 5, 2024.

12.    Attached hereto as **Exhibit K** is a true and correct copy of Jack Oh's declaration executed on June 19, 2025.

13    On June 19, 2025, I emailed Plaintiff's counsel a copy of AVC's anticipated motion and asked to schedule a call to meet and confer to discuss the substance of AVC's Motion for Summary Judgment, or in the Alternative, Summary Judgment. On June 25, 2025, I met and conferred with Plaintiff's counsel Andre Verdun over a telephone call regarding the Motion. We were unable to reach a resolution that eliminates the necessity for a hearing on any of the issues.


I declare under penalty of perjury of the laws of the United States of America that the forgoing is true and correct. Signed this 1st day of July, 2025 in Irvine, California.

Jiwon Michael Shin, Declarant

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Thomas R. O'Connor, attorney for defendant ANTELOPE VALLEY CHEVROLET, INC. (ERRONEOUSLY SUED AND SERVED HEREIN AS ANTELOPE CHEVROLET, INC.), hereby certify that on July 1, 2025, I caused a complete and accurate copy of the foregoing to be served via this Court's CM/ECF notification system, which will electronically serve all participants in this case.

*/s/ Thomas R. O'Connor*
Thomas R. O'Connor

# EXHIBIT "A"

Andre Verdun (SBN 265436)
**Law Office of Andre L. Verdun**
1777 N Ventura Ave
Ventura, CA 93001
Tel. 6198800110
Fax. 8668040051
andre@verdunlaw.com

Attorney for Plaintiff,
Gabriela Stephanie Barrios

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| GABRIELA STEPHANIE BARRIOS,<br><br>        Plaintiff(s),<br><br>   vs.<br><br>**ANTELOPE VALLEY CHEVROLET, INC., LOS ANGELES SHERIFF'S DEPARTMENT, OFFICERS TORSNEY, CAMPBELL, SKAGGS, and WALDON, MICHAEL GELARDO and OFFICERS 5-10, in their official capacities, inclusive,**<br><br>        Defendants. | Case #: **2:23-cv-10476**<br><br>**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br>**I.    42 U.S.C. § 1983;**<br>**II.   42 U.S.C. § 1983;**<br>**III.  42 U.S.C. § 1983;**<br>**VI.  VIOLATION OF THE BANE ACT, CAL. CIV. CODE § 52.1;**<br>**V.    COMMON LAW FALSE ARREST AND FALSE IMPRISONMENT;**<br>**VI.  NEGLIGENCE;**<br>**VII. ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE § 1788 et seq.;**<br>**VIII. CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200;**<br>**IX.  CONVERSION;**<br>**X.    CIVIL EXTORTION;**<br>**XI. DECLARATORY AND INJUNCTIVE RELIEF** |

-1-

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

## SUMMARY

1. Defendant car dealership Antelope Valley Chevrolet, Inc. ("AVC") wanted to resolve a civil dispute with a customer who purchased a car, so it enlisted and directed a joint action with Defendant Los Angeles County Sherrif, under color of authority, to engage in a self-help repossession of a car that was in the rightful possession of Plaintiff, Ms. Barrios.

2. In late October to early November 2022, after AVC's messages and phone calls of threats, intimidation and coercion failed, and Plaintiff refused to return the car, used its previous contacts with the Los Angeles Sherriff's Department ("LASD") to engage in several text messages and three personal meetings to coordinate a joint action (providing the police Ms. Barrios's private financial information, credit application, and information as to where the car may be, and where the police could go to in an attempt to self-help repossess the car, and/or arrest Plaintiff), turning the police into private debt collectors to repossess a car Ms. Barrios had purchased from AVC pursuant to a standard Retail Installment Sales Contract. The police did not merely stand by in case of trouble during AVC's self-help repossession. The police went way further; at the direction of AVC, the police intervened and aided in AVC's self-help repossession, and also arrested Plaintiff, thus constituting a state action where AVC and LASD were willful participants in the joint action. The District Attorney did not pursue any charges against Plaintiff, demonstrating this was never a case where Plaintiff had stolen the vehicle case, but a self-help repossession.

3. AVC and LASD engaged in this self-help repossession without any required notice, hearing and court order. LASD's role changed from being the protector of the peace to the enforcer; without any notice and opportunity for a hearing, and no court order. Detective Gelardo personally drove the car back to AVC, fulfilling the joint plan of AVC and LASD. AVC's substantial participation in the wrongful repossession rises to a joint action.

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF:
ANDRE L. VERDUN

4. The use of the police without a court order to conduct a repossession also breaches the peace (California Commercial Code § 9609), and states a claim for a violation of the Fair Debt Collection Practices Act and Conversion.[1]

5. Without notice, a hearing, and the required court order[2] more than six (6) police cars of the Lancaster Police Department pulled over Gabriela Barrios, with her 3-month-old and 11-year-old daughters in her car, and with firearms drawn, demanded she get out of the car.  A plain clothes detective then took the car back to the AVC dealership that had sold it to Barrios, and which had directed the police assistance, in a joint action, lacking any due process, to resolve an ongoing civil dispute.

6. The LASD maintains and enforces a widespread, systematic de facto policy and custom of conducting extrajudicial property seizures and transfers, training and supervising its officers to execute these unlawful takings without due process. Officers, like Detective Gelardo, routinely operate makeshift "curbside

---

[1] *Shue v. Jmac Distribution, LLC*, Civil Action No. 23-cv-12152-ADB, 2024 U.S. Dist. LEXIS 147061 (D. Mass. Aug. 16, 2024)("calling in law enforcement to aid in self-help repossession, as JMAC's representative did, might independently constitute a breach of the peace. *In re 53 Foot Trawler Pegasus*, No. 08-cv-00117, 2008 WL 4938345, at *5 (M.D. Fla. Nov. 18, 2008) ("If the strong arm of the law is needed, then the creditor must secure judicial intervention when a police officer is carrying out or sanctioning the repossession."); *Albertorio-Santiago v. Reliable Fin. Servs.*, 612 F. Supp. 2d 159, 170 (D.P.R. 2009) ("If law enforcement is needed, then a breach of the peace has occurred, and the creditor must secure judicial intervention to carry out the repossession.").
[2] *Woynar v. Smith (In re 53 Foot Trawler Pegasus)*, 2008 WL 4938345, 2008 U.S. Dist. LEXIS 96332, at *14-15 (M.D. Fla. Nov. 18, 2008) ("We believe, therefore, that the introduction of law enforcement officers into the area of self-help repossession, regardless of their degree of participation or nonparticipation in the actual events, would constitute state action, thereby invalidating a repossession without proper notice and hearing… If the strong arm of the law is needed, then the creditor must secure judicial intervention when a police officer is carrying out or sanctioning the repossession").

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

courtrooms" where deputies unilaterally adjudicate property disputes on the spot, seizing possessions from one party and immediately transferring them to another -- all without providing constitutionally mandated notice or opportunity for hearing. This practice has been explicitly condemned in prior cases as precisely the situation and deprivation of rights to be avoided by the 4th and 14th Amendments. Multiple deputies have testified under oath that this unconstitutional practice of on-scene property transfers without due process protections represents standard operating procedure within the department and is consistent with their training, supervision, custom, de facto policy, and practices. This entrenched, department-wide custom of circumventing fundamental due process requirements is the direct and moving force behind the constitutional violations alleged here, establishing municipal liability under *Monell.*

7. Barrios was detained for more than seven (7) hours, including being pulled over, arrested, hand-cuffed, finger-printed, interrogated, and jailed (for more than 5 hours), despite the fact the police had no warrant or court order.  To add insult to injury the police took away her special lactation bra, even after Barrios explained the necessity for the bra.  The police told her to go ahead and stain her shirt and that they could give her a different shirt later. After more than 5 hours at the police station, surrounded by strangers, with no privacy, and with no way to pump or alleviate the pressure in her lactating breasts, Barrios leaked through her shirt.

8. The incident also caused Barrios emotional distress, anxiety, headaches, panic attacks, required her to seek medical attention, as well as friction for Barrios with her employer, the County of Los Angeles.

## **INTRODUCTION**

9. Defendant, Antelope Valley Chevrolet, inc. threatened Gabriela Stephanie Barrios with legal action, filed a false police report, and had Plaintiff wrongfully arrested for grand theft auto and embezzlement. Despite the fact that Antelope

THE LAW OFFICES OF: ANDRE L. VERDUN

Valley Chevrolet had no right to possession of the car, they engaged in threats, intimidation and fear, coercion and deceptive practices to regain the vehicle that was in the lawful possession of Ms. Barrios.

10.     Gabriela Stephanie Barrios signed a contract with Antelope Valley Chevrolet for the purchase of a 2022 Chevrolet Malibu. Pursuant to this contract, Defendant had a 10-day option to cancel the contract. Defendant did not exercise the option within 10 days.

11.     However, Defendant wanted to cancel the contract well after the 10 day timeframe allowed in the retail installment sales contact because it could not find third-party financing. Unable to properly rescind the contract, Defendant engaged in numerous attempts to contact Plaintiff, contact Plaintiff's mother, and even threatened repossession and criminal action. When these attempts failed to intimidate Plaintiff to return of the vehicle, Defendant Antelope Valley Chevrolet filed a false police report, leading to Plaintiff's arrest by the Los Angeles Sheriff's Department.

12.     The actions of Antelope Valley Chevrolet, in concert with the Los Angeles Sheriff's Department, violated both federal and California law, including 42 U.S.C. § 1983 for civil rights violations, the Bane Act, California Civil Code § 52.1Civil Extortion, Common Law False Arrest and False Imprisonment, Conversion, Intrusion Upon Seclusion, the Rosenthal Fair Debt Collection Practices Act, California Business and Professions Code 17200, Negligence, Consumer Legal Remedies Act and Declaratory and Injunctive Relief.

13.     Plaintiff has suffered actual damages, including, but not limited to, mental and emotional distress, pain and anguish, humiliation, embarrassment, legal expenses, and damage to her reputation. The wrongful arrest and subsequent incarceration put Plaintiff at special risk due to her pre-existing medical conditions, further exacerbating her suffering.

/ / /

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF: ANDRE L. VERDUN

## DEPRIVATIONS OF CIVIL RIGHTS

14.     Antelope Valley Chevrolet, in collaboration with the Los Angeles Sheriff's Department, engaged in a series of actions that led to the unlawful arrest and incarceration of Gabriela Stephanie Barrios.

15.     These actions were not only a violation of the Consumer Legal Remedies Act and an abuse of debt collection practices but also a deprivation of Ms. Barrios's civil rights under the United States Constitution and state law.

16.     The wrongful arrest, lack of probable cause, and failure to conduct a proper investigation, coupled with Ms. Barrios's pre-existing medical conditions, exposed her to unnecessary risk and violated her clearly established rights, privileges, or immunities secured under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

17.     This case seeks to address and redress these serious violations, holding both the dealership and the involved law enforcement officers accountable for their unlawful, reckless, and indifferent acts.

## ABUSIVE DEBT COLLECTION IS UNLAWFUL

18.     The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.  The California legislature incorporated most of the federal FDCPA through Civil Code § 1788.17.

19.     The California legislature has determined that the banking and credit

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

The Law Offices of: ANDRE L. VERDUN

system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices. Civil Code 1788.2.

20.     Gabriela Stephanie Barrios brings this action to challenge the actions of Antelope Valley Chevrolet and the Los Angeles Sherriff's Department with regard to violations mentioned above.

## JURISDICTION AND VENUE

21.     Defendants Antelope Valley Chevrolet and Los Angeles Sheriff's Department are authorized to do business and operate within the State of California.

22.     Jurisdiction of this Court arises under § 395(b) of the California Code of Civil Procedure.

23.     Venue is proper in that the conduct complained of occurred in Los Angeles County, where Defendants transact business and have significant and substantial contacts with the State of California.

## PARTIES

24.     Plaintiff Gabriela Stephanie Barrios is a consumer who resides in the County of Los Angeles, State of California, from whom Defendants sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff. In addition, Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(c).

25.     Defendant Antelope Valley Chevrolet ("Dealer") is a company operating from the State of California.

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF: ANDRE L. VERDUN

26.     Defendant Los Angeles Sheriff's Department "LASD") is a law enforcement agency operating within Los Angeles County, State of California, involved in the arrest and incarceration of Plaintiff.

27.     Plaintiff is informed and believes that at all relevant times mentioned here, Defendant TORSNEY is an officer, employee, and agent of Defendant LASD, involved in the joint and police actions stated below.

28.     Plaintiff is informed and believes that at all relevant times mentioned here, Defendant CAMPBELL is an officer, employee, and agent of Defendant LASD, involved in the joint and police actions stated below.

29.     Plaintiff is informed and believes that at all relevant times mentioned here, Defendant SKAGGS is an officer, employee, and agent of Defendant LASD, involved in the joint and police actions stated below.

30.     Plaintiff is informed and believes that at all relevant times mentioned here, Defendant WALDON is an officer, employee, and agent of Defendant LASD involved in the joint and police actions stated below, involved in the joint and police actions stated below.

31.     Plaintiff is informed and believes that at all relevant times mentioned here, Defendant Detective MICHAEL GELARDO is an officer, employee, and agent of Defendant LASD involved in the joint and police actions stated below, involved in the joint and police actions stated below.

32.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 5-50 inclusive, which include DOE OFFICERS 5-10, are unknown to Plaintiff who, therefore, sues said Defendants by such fictitious names. Plaintiff will amend this complaint to show their true names and capacities when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is responsible in some manner for the events and happenings, and proximately caused the injuries and damages, hereinafter alleged.

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF:
ANDRE L. VERDUN

33.     Plaintiff is informed and believes, and thereon alleges, that Antelope Valley Chevrolet and Los Angeles Sheriff's Department and DOE OFFICERS 5-10, and perhaps DOES 5-50, in the ordinary course of business, engaged in actions leading to the deprivation of Plaintiff's civil rights as defined by 42 U.S.C. § 1983.

34.     This action arises out of a "debt" as that term is defined by Cal. Civ. Code § 1788.2(d) that was incurred as a result of a "consumer credit transaction" as defined by Cal. Civ. Code § 1788.2(e).

## EXHAUSTION OF PRE-FILING REQUIREMENTS

35.     Prior to commencing this action, Plaintiff fulfilled all pre-filing requirements as mandated by California law, including the submission of a tort claim letter to the County.

36.     Specifically, Plaintiff provided timely written notice of her claims to the County in accordance with California Government Code § 910 et seq. The tort claim letter detailed the circumstances of the incident, the nature of the claims, the injuries and damages suffered, and the relief sought.

37.     The tort claim letter was properly served on the County within the statutory time frame and provided the County with an opportunity to investigate and respond to the claims.

38.     The County failed to adequately respond to the tort claim letter within the time prescribed by law, or the response was unsatisfactory to Plaintiff, thereby exhausting all administrative remedies and allowing Plaintiff to proceed with this civil action.

39.     Plaintiff also prepared a demand letter pursuant to the Consumer Legal Remedies Act, California Civil Code § 1750 et al, and mailed said demand letter via certified mail to the Dealer.  The dealer failed to timely respond to Plaintiff's demand letter.

40.     Plaintiff has complied with all other applicable statutes, regulations,

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

and administrative requirements necessary to bring this action.

## **FACTUAL ALLEGATIONS**

41.     On or about September 8, 2022, Plaintiff Gabriela Stephanie Barrios entered into a Retail Installment Sale Contract (the "Agreement") with Antelope Valley Chevrolet to purchase a 2022 Chevrolet Malibu, Vehicle Identification Number: 1G1ZB5ST5NF185813.

42.     Antelope Valley Chevrolet completed a series of paperwork with Ms. Barrios, including an application to purchase the vehicle, as well as pulled her credit report, and approved Ms. Barrios to purchase the vehicle.  In executing the retail installment sales contract with Ms. Barrios and handing Ms. Barrios the keys to the vehicle, Plaintiff and Antelope Valley Chevrolet had a reasonable belief that they had entered into a civil contract for the purchase of the vehicle. Thus, Ms. Barrios had a contractual and lawful right to possession of the vehicle.

43.     The Agreement executed between Plaintiff Gabriela Stephanie Barrios and Antelope Valley Chevrolet contained a specific provision regarding the Seller's right to cancel the contract, which reads as follows:

> *Seller's Right to Cancel*
>
> *If Seller is unable to assign this contract to a financial institution within 10 days after the date of this contract, Seller may, at its option, cancel this contract by giving Buyer written notice of cancellation within 10 days after the date of this contract. If Seller cancels this contract, Buyer shall immediately return the vehicle to Seller in the same condition as it was when Buyer took possession of the vehicle. If Buyer fails to return the vehicle to Seller within 10 days after the date of cancellation, Seller may recover from Buyer all costs incurred by Seller in connection with the return of the*

## **FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF:
ANDRE L. VERDUN

*vehicle, including, but not limited to, reasonable storage fees and towing charges.*

*During the period between the date of this contract and the date on which the vehicle is returned to Seller, the terms of this contract, including those relating to use of the vehicle and insurance, shall remain in full force.*

*Buyer shall be responsible for all loss or damage to the vehicle during this time, and Buyer shall pay for any reasonable costs for repair of the vehicle until it is returned to Seller.*

44.     As such, the dealer had 10 days from the date the contract was signed (September 8, 2022) to rescind the contract. Therefore, the deadline for Antelope Valley Chevrolet ("Dealer") to exercise its right to cancel the contract was September 18, 2022. Any attempt to rescind the contract beyond this date would be inconsistent with the terms of the Agreement. Thus, Ms. Barrios was in lawful possession of the vehicle. Not one provision in the Retail Installment Sales Contract suggests that even if the Buyer breaches the civil contract or refuses to return the vehicle, the Seller will call the police and report the vehicle stolen.

45.     Despite Plaintiff submitting every document requested of her, upon information and belief, after entering into the Agreement with Plaintiff, the Dealer experienced difficulty with assigning the Agreement to a lender.

46.     On September 13, 2022, Antelope Valley Chevrolet attempted to contact Plaintiff regarding GM rewards and asked her to come in for 10 minutes to take care of her "GM rewards." There was no mention of returning the car during this communication or any indication that there were issues with financing.

47.     The Dealer did not rescind the contract within the 10-day period.

48.     Jack Oh, the General Manager, testified at his deposition that if the dealership does not inform the customer within 10 days of the purchase date that

-11-

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

the dealership could not find financing, the dealership becomes the lender.

49.     Twelve (12) days after entering the contract with Ms. Barrios, on September 20, 2022, Antelope Valley Chevrolet ("AVC") texted Plaintiff that it was important and asking her to call. AVC made no mention of returning the car during this communication or any indication that there were issues with financing.

50.     In a clear attempt to avoid being the lender, the Dealer continued to reach out to Plaintiff and her family, misrepresenting her legal rights pursuant to the contract.

51.     Despite entering into a written contract on September 8, 2022, and being past the 10 day window to cancel the contract, between October 18, 2022 and October 26, 2022, the Dealer sent multiple messages to Plaintiff indicating it wanted to help her with the sale process and asking her to respond so the dealer could help with the loan process.

52.     On October 27, 2022, AVC initially spoke to Plaintiff's mother and convinced Plaintiff's mother to have her credit ran to have her be a possible co-signor on the contract, insinuating that the contract signed on September 8, 2022 was no longer in effect.  Moreover, AVC did not mention to Plaintiff's mother that Plaintiff stole the vehicle.

53.     AVC was in contact with Plaintiff between September 9, 2022 and October 27, 2022 and up until that time did AVC did not accuse Plaintiff of stealing the vehicle.  At all times, AVC referred to the contract signed and their desire to help her with the financing when addressing Plaintiff.

54.     On October 27, 2022, AVC gave Barrios until November 4, 2022 to return to the vehicle.

/ / /

/ / /

/ / /

/ / /

-12-

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

**Jack Oh**

From:             Jack Oh
Sent:             Thursday, October 27, 2022 2:42 PM
To:               GABRIELA.BARRIOS051511@GMAIL.COM
Subject:          Final Notice from Antelope Valley Chevrolet

purchase contract and are deemed in default under the Agreement. You are hereby notified that we have terminated your purchase and right to use the Vehicle. We demand that you surrender the Vehicle by making it available for us to pick it up **by no later than 3:00 p.m. on November 4, 2022**.

This is your one final opportunity to resolve this obligation. Please contact us within the time provided to resolve this

Vehicle from our dealership. Subsequently, we discovered that you provided false information when you applied for financing for this purchase. Specifically, you made representations in your credit application regarding your income. However, the lender the purchase contract was submitted to for financing subsequently learned that you had stated in your tax filings that you had not earned any income, and therefore declined to finance the purchase because you were unable to prove proof of any income. As a result, you breached the WARRANTIES OF BUYER section of the purchase contract and are deemed in default under the Agreement. You are hereby notified that we have terminated your purchase and right to use the Vehicle. We demand that you surrender the Vehicle by making it available for us to pick it up **by no later than 3:00 p.m. on November 4, 2022**.

This is your one final opportunity to resolve this obligation. Please contact us within the time provided to resolve this obligation. Should you fail to comply with this demand, you may become liable for all reasonable expenses incurred by us, including but not limited to expenses for repossession, transportation and storage of the Vehicle, and our reasonable attorney's fees and costs incurred.

55.      Prior to the October 27, 2022 email improperly demanding return of the vehicle, on October 26, 2024, a text message from the AVC dealership (authorized by General Manager Jack Oh) to Ms. Barrios shows that AVC asserted threats of "red flag[ging]," Ms. Barrios's income to the IRS, thereby using intimidation and coercion to cause fear.

56.      Despite having any proof and after Ms. Barrios provided all requested documents to the Dealer, including a 4506T form, bank statements, and other requested documents, AVC implied that Ms. Barrios committed an alleged crime and attempted to disgrace her and induce her to return the vehicle to AVC. Ms. Barrios's amended 2021 Tax Returns reflected accurate income reporting. At no time did the Dealer ask Ms. Barrios for a copy of her 2021 Tax Returns, nor amended tax returns.

57.      AVC sent text messages to Barrios implying she faced criminal

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

investigation by the IRS if she did not surrender the car, stating "we don't want the IRS to red-flag you," thereby implying she could face criminal liability for underreporting income. In the same communications, AVC also threatened that Plaintiff could owe their attorney's fees if she did not comply. These communications went well beyond merely informing Plaintiff of financing problems; they leveraged threats of IRS action (and potential criminal consequences) to coerce her compliance. Such conduct amounts to civil extortion, as AVC used fear of criminal/IRS repercussions to force Plaintiff into relinquishing her contractual rights in the vehicle. AVC's references to "not wanting the IRS to red flag you" were far from benign; they were used as leverage to force Plaintiff's hand.

58.    Indeed, in these text messages, AVC told Plaintiff that it "did not want to push it" with the IRS but implied it would do so if Plaintiff failed to comply with its demands. This explicit or implied threat of IRS involvement—along with threats of attorney's fees—demonstrates AVC's intent to use fear and coercion to obtain property from Plaintiff, satisfying the wrongful use of fear element for civil extortion under California law.

59.    Additionally, after the threats of getting IRS involved, on or about October 27, 2022, after pulling Plaintiff's mother's credit but still not able to find a financial institution for the contract, AVC employees verbally threatened Plaintiff's mother, saying that if Plaintiff did not promptly return the vehicle, they would "get the police involved." Alarmed by these statements, Plaintiff's mother communicated the threat to Plaintiff, prompting Plaintiff to call the LASD herself. The Sheriff's Department, however, informed Plaintiff there was "nothing in the system" indicating any criminal report or warrant. This further supports that AVC's later claims to police that the vehicle was "stolen" were manufactured only after other tactics (including threats to the mother) failed. Notably, by this point AVC has made two threats of intimidation, coercion and fear; to report Plaintiff to

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

the IRS and to get the police involved.

60.     AVC specifically used the words "theft" and "stolen" when making the police report almost 2 months after Plaintiff signed the contract with AVC to entice police to take specific State action against Plaintiff.

61.     Defendant used explicit and implied threats to wrongfully obtain money or property from Plaintiff, satisfying the elements of extortion under Penal Code §§ 518–519. These threats included:

- Threatening to involve the IRS ("we don't want the IRS to red-flag you"), thereby implying criminal liability, or an effort to disgrace, for underreported income;
- Threatening to impose attorney's fees or further legal liability if Plaintiff did not comply; and
- Threatening criminal arrest (orchestrated with law enforcement) if Plaintiff did not surrender the vehicle.

62.     In making these threats, Defendant intended that fear be the controlling reason for Plaintiff to give up her contractual right to the vehicle (i.e., "consent under duress"). This use of wrongful fear to force Plaintiff to relinquish her property and deposit meets the definition of extortion (Pen. Code §§ 518, 519; see also CALCRIM No. 1830).

63.     AVC's retention of Plaintiff's down payment, and refusal to act as Plaintiff's finance company since it could not assign the contract to a financial institution and did not inform Plaintiff within the required 10 days of cancellation of the contract, demonstrates AVC's substantial participation in causing Plaintiff's arrest.

64.     Despite pulling the credit report for Plaintiff's mother, Ada Barrios, on October 27, 2022, in a continued attempt to obtain financing for the purchase of the vehicle, also on October 27, 2022, Antelope Valley Chevrolet demanded Plaintiff return the 2022 Chevrolet Malibu.

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF
ANDRE L. VERDUN

65.     Despite being past the 10 day window to cancel the contract, the Dealer also informed Plaintiff that it terminated her purchase and her right to use the Vehicle.  Despite being past the 10 day window to cancel the contract, the Dealer demanded that Ms. Barrios surrender the Vehicle by no later than November 4, 2022.

66.     Despite the Agreement's provision allowing the Seller to cancel the contract within 10 days if unable to assign it to a financial institution, the communication rescinding the contract was sent well beyond this 10-day time frame.

67.     At minimum, since AVC, the Dealer, did not void the agreement within the 10-day period stipulated in the contract, Plaintiff had a legal right to take possession of the vehicle, and the situation was a contractual dispute as opposed to a criminal matter.

68.     Under the terms of the Retail Installment Sales Contract (RISC), once the 10-day Seller's Right to Cancel expired without timely exercise, Plaintiff's right to possess the 2022 Chevrolet Malibu became fully vested. AVC never issued a timely written notice of cancellation under the contract. Instead, as late as October 27, 2022 (well beyond the 10-day limit), AVC was still trying to arrange alternative financing and speaking with Plaintiff and her mother about possible co-signor options.

69.     Moreover, Plaintiff alleges that no formal default notice or other legally compliant notice under California law was ever served upon her regarding any alleged breach, nor was any official "Notice of Right to Cure" or "Notice of Repossession" provided in accordance with applicable statutes. Plaintiff maintained insurance on the vehicle, was in open and continuous possession, and reasonably believed she remained in lawful possession under a valid and binding contract. At no time did AVC provide Plaintiff with a statutory notice of default or instructions to surrender the vehicle in a manner consistent with the

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

RISC or California law.

70.    Additionally, the vehicle was registered in Plaintiff's name, and Plaintiff had paid a significant down payment that the Dealer retained. Despite ultimately seizing the car through collaboration with law enforcement, the Dealer has never returned Plaintiff's deposit or provided a refund, further underscoring that the contract was never lawfully canceled and that Plaintiff's possession was rightful. Plaintiff alleges that the AVC's belated attempts to declare her in "default" were both outside the RISC's cancellation window and procedurally improper, making Plaintiff's possession of the vehicle lawful at all relevant times. Plaintiff never otherwise breached the agreement. As to each and every specific item that was requested by AVC never provided Plaintiff with instructions to make payments to AVC given that they could not assign the contract to a financial institution. AVC continued to inform Plaintiff that they were attempting to find a financial institution.  Plaintiff produced the items requested. As such, AVC had no right to the vehicle, and Plaintiff remained in rightful possession at all times.

71.    When it could not coerce Plaintiff to return the vehicle on their own, AVC reached out to a resource they had used before.

72.    Despite attempting to hide the Sherriff department's relationship with AVC at during depositions, Detective Gelardo disclosed during his deposition testimony that AVC had a pre-existing relationship with Detective Gelardo and/or LASD and AVC, whereby AVC used the Sherrif to resolve non-criminal civil matters using their powers of arrest and their color of authority.

73.    Detective Gelardo carried personal phone numbers of AVC managers in his cell phones. This pre-existing relationship stemmed from earlier community "muffler-tagging" events and other joint policing programs held using AVC's dealership service bays sometimes in 2022. AVC used this special relationship with law enforcement, enabling a joint action to seize Plaintiff's car under color of law without any judicial process.

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

74.     Though it was completely omitted from any of the arrest or incident reports in this case, in late October 2022, Detective Gelardo met with AVC's General Manager Jack Oh, who oversees AVC and has more than 100 employees under his command, and Nicole McCracken about formulating a joint action plan on how repossess the vehicle from Barrios and have it returned to AVC. From October 26, 2022 to November 3, 2022, AVC communicating with the Sherrif's department via text messages to Detective Gelardo's personal cell phone and in-person meetings between AVC and Detective Gerlardo, not documented in police reports, regarding what action should be taken to dispossess Ms. Barrios of her possession the car she purchased.

75.     AVC told Detective Gelardo they were not able to find financing for the contract signed with Ms. Barrios, claiming they could not verify her tax returns, despite failing to request a copy of the tax returns, provided Detective Gelardo the communications between AVC and Barrios, and discussed options. Detective Gelardo, despite having copies of her bank statements showing her income as properly stated in her loan application, failed to request a copy of the tax returns as well, did no independent investigation, agreed to arrest Barrios, to take possession of the car from her, and to return the car to the dealership, if AVC requested that of him. This was done with no notice, opportunity for a hearing, or court order.

76.     AVC told Detective Gelardo they wanted to consider their options, and would be in touch with Detective Gelardo. Detective Gelardo waited for further instructions from AVC before initiating a stolen vehicle report and proceeding with steps to arrest Barrios.

77.     In the days following this meeting, Defendant AVC's Nicole McCracken and Detective Gelardo communicated by text message as to AVC's readiness to instruct Detective Gelardo as to his actions, those actions obviously having the color of authority to arrest and handcuff Plaintiff, dispossess her of her

-18-

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

property, return the car to AVC, and incarcerate Plaintiff, despite no notice, opportunity for a hearing, and no court oder, thus turning a debt collection matter into a joint action where AVC directed to police to use its color of authority to be judge and jury and decide a civil matter in favor of the car dealership, AVC.

78.    The text-message thread between Ms. McCracken (from AVC as authorized by Jack Oh, AVC's General Manager) and an LASD detective includes statements like:

> "Talked to Jack. He said he is still waiting to hear from attorney. He should know this afternoon or tomorrow. I'll keep you posted" (dated October 26, 2022) and specific statements showing LASD was taking direction from AVC such as "**I am still waiting for the go ahead for you guys**. Jack sent an email and now Mom wants to co-sign... I'll keep you posted" (dated October 27, 2022).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

79.    The following is a screen shot of a portion of the text messages between Ms. McCracken (from AVC as authorized by Jack Oh, AVC's General Manager) and LASD Detective Michael Gelardo, as described above:




80.    These messages confirm AVC was still negotiating financing for the vehicle while simultaneously orchestrating an arrest date for what the Police would later say was a stolen vehicle.

81.    Plaintiff is informed and believes, and on that basis alleges, that Antelope Valley Chevrolet ("AVC") did much more than simply report a purported crime to law enforcement. Rather, as described in the preceding paragraphs, AVC specifically planned and coordinated the arrest with officers or detectives from the Los Angeles Sheriff's Department ("LASD"), including but not limited to Detective Gelardo, who was waiting for AVC to decide whether to label the

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

vehicle "stolen."

82.     On information and belief, AVC's management (including but not limited to General Manager "Jack Oh" and Manager "Nicole McCracken") exchanged text messages and had in-person meetings with Detective Gelardo and/or other LASD deputies. In those communications, AVC employees directed if and when law enforcement would pull Plaintiff over, despite there being no judicial court order or independent probable cause determination made by LASD.

83.     Plaintiff is informed and believes that as early as late October 2022, AVC supplied officers with communications and personal data regarding Plaintiff's finances, credit, and supposed "IRS" issues.

84.     AVC did so not merely to "inform," but to decide whether the LASD would arrest Plaintiff for having a stolen vehicle, had criminally "stolen" the vehicle—a position AVC knew was factually baseless because the 10-day window to cancel had expired, the contract remained in effect, and the dispute was purely civil.

85.     Detective Gelardo initially refrained from taking any law-enforcement action until "Jack" (AVC's general manager) and/or Ms. McCracken gave the explicit go-ahead to treat the car as "stolen." In a text message (referenced in paragraphs above), AVC specifically wrote, "Jack wants to move forward with that car," prompting the detective to respond, "Let's do it." This demonstrates AVC exercised control over the timing and manner of the so-called "enforcement."

86.     Indeed, after the facts arose that Defendant claims made the vehicle "stolen", and during the time that AVC was considering whether it wanted to label the car "stolen," AVC continued to negotiate financing options with Plaintiff and her mother, demonstrating this was a civil matter.  Text messages from around October 27, 2022, show AVC threatening Plaintiff that she had until November 4, 2022 to return or otherwise resolve the issue regarding the 2022 Chevrolet

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF:
ANDRE L. VERDUN

Malibu. Despite that deadline, AVC and Detective Gelardo coordinated an arrest on or about November 3, 2022, preempting Plaintiff's chance to comply.

87. Detective Gelardo relied on AVC's direction and judgment as to whether the vehicle was stolen, and what actions to take. Detective Gelardo met with AVC, and agreed to arrest Ms. Barrios for stealing the vehicle, and to personally return possession of the vehicle to AVC, if they wanted.

88. AVC controlled the scenario and weighed options, and asked Detective Gelardo to hold off before proceeding with criminal arrest and repossession, and wanted to exhaust all other finance options before using Detective Gelardo and the LASD to retrieve the vehicle.

89. Once AVC decided it did want to use Detective Gelardo and the LASD to repossess the vehicle, AVC instructed Detective Gelardo to go get the vehicle, and arrest Plaintiff, and to personally return possession of the vehicle to AVC, and Detective Gelardo did just that, at AVC's direction.

90. To be sure, Detective Gelardo did no investigation, other than to listen to what AVC had to say, review the documents AVC gave him, and then waited for AVC to direct Detective Gelardo on how to act.

91. Detective Gelardo did not contact the financing agency, Plaintiff's bank, the IRS or any other entity to determine whether AVC's claim were valid. Detective Gelardo did not detain and question Plaintiff, but rather proceeded directly to an arrest. Detective Gelardo interviewed no other witnesses, nor took any other action to develop probable cause. Detective Gelardo did not believe that he had to wait to the date given to Plaintiff to return the car to arrest her, once AVC directed him to effectuate the arrest. Detective Gelardo simply listened to AVC, and acted as they willed Detective Gelardo to act. That includes that after Plaintiff was arrested, Detective Gelardo personally drove the vehicle to AVC and delivered it to them, as instructed by AVC.

92. Plaintiff alleges that AVC called the shots, and Detective Gelardo

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF: ANDRE L. VERDUN

carried it out, which renders AVC a joint actor operating under color of law for purposes of 42 U.S.C. § 1983. AVC did not merely provide a tip; it effectively dictated when and how law enforcement would seize Plaintiff and the vehicle.

93.   In doing so, AVC knowingly caused LASD to forego a meaningful, independent investigation. LASD deputies relied wholly on AVC's false claim that the car was "stolen" from the dealership's "parking lot," even though AVC had voluntarily handed Plaintiff the keys under a valid Retail Installment Sales Contract. By intentionally using such deceptive statements, AVC ensured the arrest would occur swiftly and without due process.

94.   Furthermore, AVC exploited its prior personal relationship with certain LASD detectives—established through "community policing" or "muffler-tagging" events in AVC's service bays—to request special treatment and guarantee that the police would respond as though there was a legitimate theft. This was not ordinary "furnishing of information"; rather, it was an orchestrated plan to weaponize law enforcement and the color of authority to regain possession of the vehicle from Ms. Barrios without seeking a court order.

95.   Plaintiff is informed and believes, and on that basis alleges, that AVC and its managers similarly threatened to call the IRS (implying that Plaintiff had lied about her income), and threatened to seek attorneys' fees or additional liability against Plaintiff and her mother. AVC's statements about "not wanting to push it with the IRS" instilled fear in Plaintiff that criminal or federal investigations would ensue if she did not surrender the vehicle.

96.   These threats, together with repeated mentions of criminal prosecution, caused Plaintiff to feel extreme pressure and distress. Because of AVC's misrepresentations, Plaintiff's family was also alarmed that Plaintiff even contacted LASD herself to confirm whether there was a valid warrant. She was told there was "nothing in the system," suggesting AVC had not yet triggered the "stolen vehicle" label. Ultimately, the arrest took place shortly afterward, upon

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF: ANDRE L. VERDUN

AVC's instructions.

97.     By coordinating the arrest date, misrepresenting the facts to law enforcement, and using the threat of IRS trouble or attorneys' fees, AVC inflicted fear upon Plaintiff with the deliberate intent to force the "voluntary" return of the vehicle. This fear-based "consent" to relinquish property is the essence of civil extortion under California law (see e.g. Cal. Penal Code §§ 518–519) and also underscores the lack of good faith behind AVC's police report.

As a direct result of AVC's instructions to LASD and its pre-arrest planning, Plaintiff was arrested by LASD on November 3, 2022—one day before the November 4 deadline AVC had itself imposed on Plaintiff to return the car.  LASD then decided to give possession of the car to AVC, all without AVC ever returning Plaintiff's down payment or deposit, and demanded that Plaintiff mail back the spare key and owner's manual under threat of further trouble. This conduct not only establishes AVC's joint action and liability for deprivation of civil rights under color of law, but also shows a violation of multiple consumer-protection statutes.

98.     Another text between the dealership and police specifically directing and dictating that LASD now has AVC's approval to take action (dated November 1, 2022) states: "Hi there. Are you available tomorrow? Jack wants to move forward with that car." The detective replies, "Of course. Let's do it. What time is good for you guys?" This exchange shows that law enforcement was literally waiting for AVC's direction and "green light" ("Jack wants to move forward") to treat the vehicle as "stolen" and move forward with the joint action to self-help repossess the car.

99.     These revelations contradict any notion that LASD made an independent probable-cause finding. Rather, LASD officers had no basis other than the dealership's false statement that Plaintiff "stole" the vehicle. Discovery confirms AVC decided when to label it "stolen" (once co-signer attempts failed) and directed LASD accordingly, creating state action under color of law.

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

100.     Since Detective Gelardo reviewed the communications between AVC and Barrios, Detective Gelardo knew that the dealership gave Barrios until November 4, 2024 to return the vehicle.

101.     Still, Detective Michael Gelardo visited AVC **on** November 2, 2022, after AVC indicated that it "would move forward" with having Gelardo carry out the arrest and the return of the vehicle.

102.     Michael Gelardo admitted in deposition that he had not done an independent investigation or verified any IRS or financing data. He simply followed AVC's lead: once "Jack wants to move forward," he proceeded to treat the vehicle as stolen. This further proves heightened police–dealership collaboration before the official police report date and affirmatively shows that the dealership decided the arrest date, not law enforcement.

103.     Moreover, every other deputy involved in Plaintiff's arrest testified they did no investigation, and simply arrested Plaintiff because Detective Michael Gelardo had instructed them to. This is not mentioned in the police report. The next day, on November 3, 2024, and one day before the "final" day for Plaintiff to return the vehicle, other deputies arrested Barrios at Detective Michael Gelardo direction, with no investigation into whether she had committed a crime.

104.     Detective Michael Gelardo then traveled to the location where Ms. Barrios was arrested, and where the car was held by the LASD to retrieve the vehicle.

105.     Detective Michael Gelardo then drove the vehicle to AVC.

106.     Once at AVC's dealership, Detective Michael Gelardo delivered the vehicle to AVC.

107.     Detective Michael Gelardo did not give Barrios an opportunity to contest the return of the vehicle to AVC.

108.     The vehicle was registered to Plaintiff Barrios.

109.     Barrios never gave consent to LASD, Detective Gelardo, or for any

-25-

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

other person to takes possession of the vehicle from her and return the vehicle to AVC.

110.    In October and November 2022, Antelope Valley Chevrolet and Los Angeles Sheriff's Department engaged in a joint action to improperly seize Plaintiff's vehicle without a Court Order.  At least three employees of Antelope Valley Chevrolet substantially participated in the joint action under color of law and state action.

111.    The purpose of three different employees of Antelope Valley Chevrolet meeting with Officers from the Los Angeles County's Sherriff's Office was to engage in a joint action whereby the dealer could use the governmental and state authority of the police to threaten Plaintiff with criminal arrest and prosecution to gain leverage for the dealership in causing the Plaintiff to surrender the vehicle to the police, who would then give the vehicle to the dealership, despite the fact this was merely a civil dispute, and the dealership had not even gone to court to obtain any court order permitting them to obtain the vehicle, as required. Antelope Valley Chevrolet's conduct is attributable to the government since the dealership had a substantial degree of participation with the government.

112.    Specifically, on or about November 2, 2022, Officer's from the Sheriff's Department physically went to the Antelope Valley Chevrolet dealership and met with James Gonzales, a dealership employee.  Mr. Gonzales informed the officers that Ms. Barrios signed an application as well as a retail installment sales contract to purchase the vehicle from the dealership.  Mr. Gonzales indicated that his attempts to collect the vehicle the dealership had sold Plaintiff were unsuccessful, and thus the dealership was now resorting to make a police report that the vehicle was stolen by Plaintiff, in an effort to get the police jointly involved to assist in the dealership's efforts to collect.  Because of what Gonzales said, along with the below described meetings, the Officers and the dealership

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

1   decided to pick up where Gonzales left off and use the color of the law and state

2   action in an attempt to collect the property that was subject to a civil dispute

3   based on a contract between Plaintiff and the dealership, despite not having a

4   court order, as required.

5      113.   On or about November 2, 2022, Officers from the Sheriff's

6   Department physically met with another Manager at the Antelope Valley

7   Chevrolet dealership, Jack Oh.  Mr. Oh reported to the police that Plaintiff has

8   stolen a vehicle from the dealership.

9      114.   On or about November 2, 2022, Officers from the Sheriff's

10  Department physically met with their General Manager, Nicole McCracken at the

11  Antelope Valley Chevrolet dealership.  McCracken went on to sign a CHP 180

12  form.  This CHP 180 Form falsely stated that Plaintiff had "STOLEN" a vehicle

13  from Antelope Valley Chevrolet.

14     115.   Not only did Antelope Valley Chevrolet contact and meet with the

15  police on or about November 2, 2023, at the dealership's offices, but AVC,

16  bizarrely, informed the police that Plaintiff stole the vehicle from the "parking lot"

17  of the dealership on September 9, 2022, as if AVC forgot they handed Plaintiff

18  the keys to the vehicle.

19     116.   AVC's inability to verify Plaintiff's income was also used by AVC to

20  fuel a smear campaign against Plaintiff to her family and especially to the police

21  by making false claims of theft of property subject to a civil contract between the

22  parties. AVC also gave incorrect information to the police about Plaintiff's IRS tax

23  information, in an attempt to allege Plaintiff committed tax fraud, and to get the

24  police to arrest Plaintiff for a made up crime, furthering AVC's civil extortion of

25  Plaintiff.

26     117.   Defendants joint action worked, the Officers seized possession of the

27  vehicle from Ms. Barrios, without a court order, and returned the vehicle to the

28  the possession of AVC, the car dealership where the three meetings between

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND
INJUNCTIVE RELIEF**

AVC and the dealership took place to establish the goal of the joint action, thereby allowing the dealership and LASD to be the judge jury as to how the civil dispute should be decided, under color of law.  Indeed the joint action and surrender of the vehicle was effected by the lack of due process and imprisonment of Plaintiff, just as three different employees of the dealership and several officers orchestrated.

118.    Plaintiff is informed and believes, and thereon alleges, that AVC's communications with law enforcement went far beyond a good-faith report of suspected wrongdoing. Specifically, AVC's management held coordinated planning sessions with Michael Gelardo, in which it was AVC that ultimately decided if, when and how to effectuate the arrest of Plaintiff and the seizure of her vehicle—actions that are not part of any "official proceeding" protected by the so-called litigation privilege. AVC dictated that once arrested, the Plaintiff's vehicle would be returned to AVC by Detective Gelardo, and Detective Gelardo carried out those demands as AVC instructed him to.

119.    Rather than merely "reporting" the vehicle as stolen, to initiate an investigation, AVC directed the Los Angeles Sheriff's Department ("LASD") to treat the transaction as a crime, even though AVC was aware this was a civil contract dispute and that the 10-day rescission period had expired.

120.    This orchestrated plan, all the text messages and meeting between the Sherriff's department and the dealer AVC, and the labeling the car as stolen to have Plaintiff arrested—constituted active participation in law enforcement functions beyond any privileged speech or petitioning activity.

121.    Plaintiff alleges that AVC's mal intent and deception nullify any claim that it was merely "furnishing information" to authorities. AVC concealed from LASD the facts that (i) they had already given Plaintiff until November 4 to return the car, (ii) AVC had not timely rescinded the contract, and (iii) AVC continued to negotiate financing with Plaintiff's mother up until days before labeling the car

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF:
ANDRE L. VERDUN

"stolen." By withholding these critical details, AVC misled LASD into wrongfully arresting Plaintiff, for a civil dispute collection matter, which cannot be immunized by the litigation privilege. See RW changes, i

122.    As a result, on November 3, 2022, and as part of the dealership's collection efforts and joint efforts with the police, the Plaintiff was arrested by the police, on November 3, at 7:30 a.m., for grand theft auto and embezzlement (well before the dealer's November 4, 2022 deadline for her to return the car). The police arrested Plaintiff without probable cause, without conducting an investigation, and by solely relying on the statements of Antelope Valley Chevrolet during their meetings at the dealership's offices.

123.    Plaintiff was held at Young County Jail as a result of Defendant's accusations.

124.    Due to Plaintiff's pre-existing medical conditions, including hepatitis E and tuberculosis, her incarceration put her at special risk. The environment and circumstances of her confinement exacerbated her vulnerability to these conditions, creating a situation of heightened concern for her health and well-being.

125.    During the numerous communications up until October 27, 2022, the dealership never communicated their intent to terminate the contract and, even well after the 10-day rescission period, was still telling Plaintiff they needed to help her with getting financing.

126.    Since the 10-day rescission period ran, this was not theft as Plaintiff had the right to possession of the vehicle when she took it, and it was not embezzlement as defined in California Penal Code Section 503.  At minimum, because Plaintiff had a legal right to possession of the vehicle pursuant to the express terms of the Agreement, any dispute between Plaintiff and Defendant was contractual, and not a criminal dispute. Additionally, Plaintiff has not received the return of her deposit payment she made pursuant to the Retail

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF:
ANDRE L. VERDUN

Installment Sales Contract. Moreover, Antelope Valley Chevrolet called Plaintiff and demanded she also return the spare key and vehicle manual following her arrest.

127.    Under extreme fear that further arrests or criminal charges might ensue, Plaintiff mailed the spare key (which operates the vehicle) and the vehicle manual to AVC soon after her release from custody. Plaintiff expressly informed AVC that she was sending these items solely because AVC and law enforcement had threatened she could face additional penalties if she "refused to cooperate."

128.    Plaintiff never received any refund of her original down payment and deposit. Because AVC continued to imply that criminal charges or "embezzlement" prosecution could intensify if Plaintiff resisted, she was effectively coerced into relinquishing all claims to her deposit or possession of the vehicle. This demonstrates that Plaintiff did indeed "part with property" as a direct result of Defendant's fear-inducing threats—a classic hallmark of civil extortion under California law.

129.    Plaintiff's actions did not demonstrate an intent to fraudulently convert or conceal the vehicle for her own use, and any communication rescinding the contract was sent well beyond the 10-day timeframe specified in the Agreement, which may affect the legality of the demand for the return of the vehicle.

130.    Plaintiff's possession of the vehicle was open and under a claim of title through the contract, and the arrest was made without probable cause and without investigating, raising questions about the validity of the charges.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

## CIVIL RIGHTS VIOLATION, 42 U.S.C. § 1983

*(Against the Los Angeles Sheriff's Department and Officers 1-10 in their official capacities, and Antelope Valley Chevrolet)*

131.    Plaintiff repeats the allegations contained above as if the same were

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF: ANDRE L. VERDUN

here set forth at length.

132.    Antelope Valley Chevrolet, through their agents, servants or employees, acted jointly and in concert with the Los Angeles Sheriff's Department and the defendant officers to deprive Plaintiff of her rights under the United States Constitution and state law.

133.    Both private persons and state officials can be liable for constitutional violations under Section 1983.[3]  Recent case law directly holds private parties and entities liable under § 1983 under a joint action theory.[4]  Although Antelope Valley Chevrolet is a private entity, in the matter at hand, the actions of the private entity can and should be liable under § 1983.

134.    Here, almost two (2) months after having Plaintiff execute a series of papers including a retail installment sales contract which specified the terms of their contract, handling Plaintiff the keys to the vehicle, watching Plaintiff drive away from the dealership lot, calling Plaintiff five (5) days later to discuss her GM rewards for purchasing a vehicle from them, calling Plaintiff indicating they wanted to "help her," and thereafter sending Plaintiff a letter demanding she return the vehicle on November 4, 2022, on or about November 2, 2022, three employees met with the police, at the dealerships' offices, and made statements to Los Angeles Sheriff's Department claiming Plaintiff stole the vehicle from the parking lot of the dealership.

135.    Here, the Los Angeles Sheriff's Department had insinuated itself into a position of interdependence with Antelope Valley Chevrolet that it must be recognized as a joint participant in the challenged activity.[5]  Los Angeles Sheriff's Department and Antelope Valley Chevrolet essentially worked together to effect

---

[3] See *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)
[4] See *Kirtley v. Rainey*, 326 F.3d 1088, 1093-95 (9th Cir. 2003); *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1140 (9th Cir. 2012)
[5] See *Gorenc v. Salt River Project Agric. Improvement & Power Dist*., 869 F.2d 503, 507 (9th Cir. 1989) (quoting *Burton v. Wilmington Parking Auth*., 365 U.S. 715, 725, 81 S. Ct. 856, 6 L. Ed. 2d 45 (1961)).

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

the wrongful repossession of Plaintiff's vehicle.  Los Angeles Sheriff's Department, only as a result of the meetings at the dealership's offices and request of Antelope Valley Chevrolet followed Plaintiff from her house with her two (2) children in the vehicle, turned on sirens on at least six (6) police vehicles, forced Plaintiff to walk out of her vehicle while her children were still in the vehicle, and demanded Plaintiff hand over the keys.  Thereafter, Los Angeles Sheriff's Department drove the vehicle directly to Antelope Valley Chevrolet.  To date, despite claiming to cancel the contract, and wrongfully obtaining physical possession of Plaintiff's vehicle, Antelope Valley Chevrolet has not returned Plaintiff's deposit.  Instead, Antelope Valley Chevrolet called Plaintiff after the Los Angeles Sheriff's Department arrested Plaintiff and drove the vehicle back to Antelope Valley Chevrolet, to demand that Plaintiff return the spare key and vehicle manual to Antelope Valley Chevrolet.

136.     It is reasonable to assume that most people would be afraid to enforce their legal rights pursuant to their civil contracts if Antelope Valley Chevrolet was allowed to claim they stole the vehicle each time a civil dispute arose, and enter into a joint state action with the police to improperly seize vehicles, despite not having a court order, as required.  By using the Los Angeles Sheriff's Department to effectuate a wrongful repossession of Plaintiff's vehicle, Antelope Valley Chevrolet joined with and relied on the authority of state actors to accomplish the repossession.  Antelope Valley Chevrolet and its employees were state actors due to their joint participation in the self-help repossession of Plaintiff's vehicle.

137.     Antelope Valley Chevrolet jointly engaged with the Los Angeles Sheriff's Department in the prohibited action, are acting `under color' of law for purposes of the statute. To act 'under color' of law does not require that the

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

accused be an officer of the State. It is enough that Antelope Valley Chevrolet is a willful participant in joint activity with the State or its agents.[6]

138.    In the matter at hand, the police officers affirmatively participated in the repossession of Plaintiff's property, and therefore as the *Howerton* case points out, Antelope Valley Chevrolet was acting under the color of law to deprive Plaintiff possession of her vehicle.[7]

139.    As a result of their unlawful, reckless, and indifferent acts or omissions, the Los Angeles Sheriff's Department, Antelope Valley Chevrolet, and the defendant officers, both alone and in concert, conspired to and acted under color of law, but contrary to law, and deprived Plaintiff of her rights, privileges, or immunities secured under the Constitution and laws of the United States and 42 U.S.C. § 1983.

140.    Plaintiff asserts this *Monell* claim against the Los Angeles Sheriff's Department, alleging that the Department, through its deliberate indifference, maintained and enforced an official policy, practice, or custom that directly caused the constitutional violations suffered by the Plaintiff.

141.    It is clearly established law that notice and opportunity to be heard applied to the Los Angeles Sherriff's Department and its officers providing assistance in a private repossession; and were required to provide Plaintiff notice and an opportunity to be heard.

142.    On information and belief, Plaintiff alleges that the Los Angeles Sheriff's Department (LASD) has engaged in a pattern and practice of intervening in civil disputes on behalf of private entities, such as dealerships, without providing notice and an opportunity to be heard, and conducting proper investigations, which constitute a violation of individuals' constitutional rights. LASD acts without court orders, and has implanted a policy for its officers to act

---

[6] See *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)
[7] See H*owerton v. Gabica*, 708 F.2d 380, 383-84 (9th Cir. 1983)

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

without court orders in resolving private civil disputes, thus violating the due process rights.  This pattern and practice have been sufficiently widespread to represent a custom or unofficial policy of the Department.

143.     Further, on information and belief, Plaintiff contends that there have been numerous instances where LASD officers, acting under the color of state law and in their official capacities, have detained and arrested individuals at the behest of private entities without lawful basis or adequate investigation, thereby depriving those individuals of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

144.     Defendants' conduct violated Plaintiff's rights under the Fourteenth Amendment's Due Process Clause. By seizing Plaintiff's vehicle—her personal property—without any court order, hearing, or other judicial process, Defendants deprived Plaintiff of a constitutionally protected property interest without due process of law. Plaintiff received no notice and no opportunity to be heard before her vehicle was forcibly taken and returned to the dealership.

145.     As both private and state actors jointly participated in this seizure, their actions constitute state action for purposes of a due process violation under § 1983. Defendants' failure to seek or obtain a court order or provide any procedural safeguards is a textbook denial of Plaintiff's due process rights. The Fourteenth Amendment requires notice and an opportunity for a hearing prior to the deprivation of one's property. Here, Defendants bypassed all judicial or administrative processes, jointly commandeering law enforcement power to effectuate an unlawful repossession.

146.     Plaintiff also alleges, on information and belief, that the LASD's higher command and supervisory personnel have been aware of, condoned, and in some cases explicitly directed such unconstitutional practices, thereby showing deliberate indifference to the rights of the citizens they are sworn to protect.

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

147.    On information and belief, Plaintiff asserts that these practices are not isolated incidents but are part of a routine and systemic approach adopted by the LASD, which has been allowed to persist due to a failure to discipline officers involved in such practices, a lack of proper training and oversight regarding constitutional rights, and a failure to implement adequate policies to prevent such constitutional violations.

148.    Plaintiff further alleges, on information and belief, that the discovery process will unveil evidence supporting these claims, including internal communications, complaints filed against the Department, disciplinary records of officers, training materials and policies, and other documentation that will demonstrate the LASD's ongoing disregard for constitutional rights in similar circumstances.

149.    On information and belief, Plaintiff alleges that these unconstitutional practices by the LASD have caused significant harm to numerous individuals beyond the Plaintiff, indicating a deliberate indifference to the public's constitutional rights and a need for systemic reform within the Department.

150.    Based on the foregoing, Plaintiff seeks not only compensatory and punitive damages but also declaratory and injunctive relief to mandate the LASD to implement substantial changes in their policies, practices, training, and oversight mechanisms to prevent further violations of constitutional rights.

151.    As a direct and foreseeable consequence of the Los Angeles Sheriff's Department's policies, practices, or customs, Plaintiff suffered significant damages, including the unlawful deprivation of her personal property, emotional distress, and other compensatory damages.

152.    Plaintiff seeks injunctive relief requiring the Los Angeles Sheriff's Department to reform its policies, practices, and training procedures to prevent future violations of constitutional rights, in addition to monetary damages for the injuries sustained, and attorney's fees pursuant to 42 U.S.C. § 1988. As a direct

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

The Law Offices of: ANDRE L. VERDUN

and proximate result of the conduct of the Los Angeles Sheriff's Department, Antelope Valley Chevrolet, and the defendant officers, Plaintiff was unlawfully deprived of her personal property without due process of law, without notice and an opportunity to be heard.

153.    Unless enjoined and prospective relief ordered, the Los Angeles Sheriff's Department will continue in its unlawful practices, in violation of the United States Constitution and established law.

154.    WHEREFORE, Plaintiff demands judgment against Defendants, the Los Angeles Sheriff's Department, Officers 1-10 in their official capacities, and Antelope Valley Chevrolet, for the following:

- Prospective injunctive relief directing the Defendants to establish and implement policies, procedures, and/or customs for the Los Angeles Sheriff's Department to act in accordance with established law;
- Attorney fees as provided by law, including pursuant to 42 U.S.C. § 1988;
- Such other and further relief as the Court shall deem just and proper.

## SECOND CAUSE OF ACTION

## CIVIL RIGHTS VIOLATION, 42 U.S.C. § 1983

*(Against Officers 1-10 of the Los Angeles Sheriff's Department in their individual capacities and Antelope Valley Chevrolet)*

155.    Plaintiff repeats the allegations contained above as if the same were here set forth at length.

156.    Antelope Valley Chevrolet, through their agents, servants, or employees, acted jointly and in concert with the defendant officers of the Los Angeles Sheriff's Department to deprive Plaintiff of her rights under the United States Constitution and state law.

157.    As a result of the defendant officers' unlawful, reckless, and indifferent acts or omissions, the defendant officers unlawfully assisted in

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF: ANDRE L. VERDUN

depriving Plaintiff of her clearly established rights, privileges, or immunities secured under the Constitution and laws of the United States and 42 U.S.C. § 1983.

158.    As a direct and proximate result of the conduct of the defendant officers, Plaintiff was unlawfully deprived of her personal property without due process of law, without notice and an opportunity to be heard in violation of her clearly established constitutional rights.

159.    The defendant officers knew or should have known, as would any reasonable person, that they were assisting in depriving Plaintiff of her personal property without due process of law, without notice and an opportunity to be heard, in violation of her clearly established constitutional rights.

160.    The defendant officers' actions were instrumental in the taking of Plaintiff's vehicle, including the arrest and subsequent deprivation of her rights.

161.    The deprivation would not have been possible but for the presence and active assistance of the defendant officers of the Los Angeles Sheriff's Department.

162.    As a result, Plaintiff has suffered damages resulting from these violations of her civil rights.

163.    **WHEREFORE**, Plaintiff demands judgment against Defendants, Officers 1-10 of the Los Angeles Sheriff's Department in their individual capacities, for the following:

- (a) Damages;
- (b) Attorney fees and costs as provided by law, including 42 U.S.C. § 1988;
- (c) Such other and further relief as the Court shall deem just and proper.

FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF

# THIRD CAUSE OF ACTION

## CIVIL RIGHTS VIOLATION, 42 U.S.C. § 1983

*(Fourth and Fourteenth Amendment: Excessive Force, False Arrest, False Imprisonment)*

*(Against Officers 1-10 of the Los Angeles Sheriff's Department in their individual capacities)*

164.    Plaintiff repeats the allegations contained above as if the same were here set forth at length.

165.    The defendant officers of the Los Angeles Sheriff's Department, acting under color of law, engaged in conduct that violated Plaintiff's clearly established rights under the Fourth Amendment to the United States Constitution.

166.    Excessive Force: The defendant officers used excessive and unreasonable force in the arrest and detention of Plaintiff, causing physical injury, emotional distress, and other damages, in violation of Plaintiff's Fourth Amendment rights against unreasonable seizures.

167.    False Arrest: The defendant officers arrested Plaintiff without probable cause, relying solely on the statements of Antelope Valley Chevrolet, and without conducting an independent investigation, in violation of Plaintiff's Fourth Amendment rights against unreasonable seizures.

168.    False Imprisonment: The defendant officers unlawfully detained Plaintiff without proper legal justification, holding her in custody without probable cause, in violation of Plaintiff's Fourth Amendment rights against unreasonable seizures.

169.    Additionally, Defendants' conduct violated Plaintiff's rights under the Fourteenth Amendment's Due Process Clause. By seizing Plaintiff's vehicle—her personal property—without any court order, hearing, or other judicial process, Defendants deprived Plaintiff of a constitutionally protected property interest without due process of law. Plaintiff received no notice and no opportunity to be

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF: ANDRE L. VERDUN

heard before her vehicle was forcibly taken and returned to the dealership.

170.    As both private and state actors jointly participated in this seizure, their actions constitute state action for purposes of a due process violation under § 1983. Defendants' failure to seek or obtain a court order or provide any procedural safeguards is a textbook denial of Plaintiff's due process rights. The Fourteenth Amendment requires notice and an opportunity for a hearing prior to the deprivation of one's property. Here, Defendants bypassed all judicial or administrative processes, jointly commandeering law enforcement power to effectuate an unlawful repossession.

171.    The defendant officers knew or should have known, as would any reasonable person, that their actions were in violation of Plaintiff's clearly established Fourth Amendment rights.

172.    The actions of the defendant officers were instrumental in causing the violations of Plaintiff's rights, including the use of excessive force, false arrest, and false imprisonment.

173.    As a result, Plaintiff has suffered physical injury, emotional distress, loss of liberty, and other damages resulting from these violations of her Fourth Amendment rights:

174.  WHEREFORE, Plaintiff demands judgment against Defendants, Officers 1-10 of the Los Angeles Sheriff's Department in their individual capacities, for the following:

- (a) Compensatory damages for physical injury, emotional distress, loss of liberty, and other damages;
- (b) Punitive damages, as allowed by law, to punish the Defendants for their willful and wanton conduct and to deter similar conduct in the future;
- (c) Attorney fees and costs as provided by law, including pursuant to 42 U.S.C. § 1988;
- (d) Such other and further relief as the Court shall deem just and proper.

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE BANE ACT, CALIFORNIA CIVIL CODE § 52.1

*(Against Antelope Valley Chevrolet)*

175.     Plaintiff repeats the allegations contained above as if the same were here set forth at length.

176.     The defendant officers of the Los Angeles Sheriff's Department and Antelope Valley Chevrolet, acting jointly and in concert, interfered with Plaintiff's rights under the United States Constitution and California law by threats, intimidation, or coercion.

177.     Plaintiff alleges that AVC's statements, including "We don't want the IRS to red-flag you," and telling Plaintiff's mother that the police want to speak with her and asking the message to be given to Plaintiff among others—went beyond mere speech. These threatening, coercive and intimidating messages were delivered with the intent to intimidate Plaintiff into surrendering her property rights without any judicial process, thereby constituting "threats" or "intimidation" under California Civil Code § 52.1.

178.     Indeed, the "coercion" was not simply a one-time statement; it was the entire course of conduct by which AVC leveraged the threat of criminal prosecution and potential federal investigation (i.e., involving the IRS) and the threat of attorney's fees being owed to AVC by Plaintiff to induce fear in Plaintiff. This concerted intimidation, culminating in her actual arrest, meets the Bane Act's requirement of "threats, intimidation, or coercion" that interfered with Plaintiff's property and liberty rights.

179.     Excessive Force: The defendant officers used excessive and unreasonable force in the arrest and detention of Plaintiff, threatening and intimidating her, in violation of her Fourth Amendment rights and California law.

180.     False Arrest and False Imprisonment: The defendant officers falsely arrested and unlawfully detained Plaintiff without probable cause, intimidating

-40-

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

and coercing her, in violation of her Fourth Amendment rights and California law.

181.    Additionally, Defendants' conduct violated Plaintiff's rights under the Fourteenth Amendment's Due Process Clause. By seizing Plaintiff's vehicle—her personal property—without any court order, hearing, or other judicial process, Defendants deprived Plaintiff of a constitutionally protected property interest without due process of law. Plaintiff received no notice and no opportunity to be heard before her vehicle was forcibly taken and returned to the dealership.

182.    As both private and state actors jointly participated in this seizure, their actions constitute state action for purposes of a due process violation under § 1983. Defendants' failure to seek or obtain a court order or provide any procedural safeguards is a textbook denial of Plaintiff's due process rights. The Fourteenth Amendment requires notice and an opportunity for a hearing prior to the deprivation of one's property. Here, Defendants bypassed all judicial or administrative processes, jointly commandeering law enforcement power to effectuate an unlawful repossession.

183.    Conspiracy with Antelope Valley Chevrolet: The defendant officers acted in concert with Antelope Valley Chevrolet, relying solely on their statements and without conducting an independent investigation, to falsely arrest and imprison Plaintiff, in violation of her rights under California law.

184.    The defendant officers and Antelope Valley Chevrolet knew or should have known that their actions constituted interference with Plaintiff's rights by threats, intimidation, or coercion, in violation of the Bane Act.

185.    As a result, Plaintiff has suffered physical injury, emotional distress, loss of liberty, and other damages resulting from these violations of her rights under the Bane Act.

186.    WHEREFORE, Plaintiff demands judgment against Defendants, Officers 1-10 of the Los Angeles Sheriff's Department and Antelope Valley Chevrolet, for the following:

-41-

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

The Law Offices of:
ANDRE L. VERDUN

- (a) Compensatory damages for physical injury, emotional distress, loss of liberty, and other damages;
- (b) Punitive damages, as allowed by law, to punish the Defendants for their willful and wanton conduct and to deter similar conduct in the future;
- (c) Attorney fees and costs as provided for pursuant to California Civil Code § 52.1(h); and
- (d) Such other and further relief as the Court shall deem just and proper.

## FIFTH CAUSE OF ACTION
## COMMON LAW FALSE ARREST AND FALSE IMPRISONMENT
### *(Against Antelope Valley Chevrolet)*

187.    Plaintiff repeats the allegations contained above as if the same were here set forth at length.

188.    False Arrest: The defendant officers of the Los Angeles Sheriff's Department arrested Plaintiff without probable cause, relying solely on the statements of Antelope Valley Chevrolet, and without conducting an independent investigation. This arrest was made without proper legal justification, constituting a false arrest under California common law.

189.    False Imprisonment: Following the false arrest, the defendant officers unlawfully detained Plaintiff without proper legal justification, holding her in custody without probable cause. This detention constituted false imprisonment under California common law.

190.    The defendant officers knew or should have known that their actions were in violation of Plaintiff's clearly established rights under California common law.

191.    The actions of the defendant officers were instrumental in causing the violations of Plaintiff's rights, including false arrest and false imprisonment.

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

192.    As a result, Plaintiff has suffered physical injury, emotional distress, loss of liberty, and other damages resulting from these violations of her rights under California common law.

193.    WHEREFORE, Plaintiff demands judgment against Defendants, Officers 1-10 of the Los Angeles Sheriff's Department, for the following:

- (a) Compensatory damages for physical injury, emotional distress, loss of liberty, and other damages;
- (b) Punitive damages, as allowed by California law, to punish the Defendants for their willful and wanton conduct and to deter similar conduct in the future;
- (c) Attorney fees and costs, as allowed by California law; and
- (d) Such other and further relief as the Court shall deem just and proper.

## SIXTH CAUSE OF ACTION
## NEGLIGENCE
*(Against Antelope Valley Chevrolet)*

194.    Plaintiff repeats the allegations contained above as if the same were here set forth at length.

195.    Plaintiff repeats the allegations contained above as if the same were here set forth at length.

196.    Common Law Negligence: The defendant officers of the Los Angeles Sheriff's Department and Antelope Valley Chevrolet owed a duty of care to Plaintiff, which they breached by acting recklessly and without due consideration for Plaintiff's rights and well-being. Their actions, including the false arrest, false imprisonment, and failure to provide necessary medical care, directly and proximately caused harm to Plaintiff, constituting negligence under California common law.

197.    Negligence Per Se: The defendant officers and Antelope Valley

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

Chevrolet violated specific statutes, regulations, and ordinances designed to protect individuals like Plaintiff from the type of harm she suffered. Their violations of these laws constitute negligence per se under California law.

198.    The defendant officers and Antelope Valley Chevrolet knew or should have known that their actions were in violation of Plaintiff's rights and well-being, constituting negligence and negligence per se under California law.

199.    The actions of the defendant officers and Antelope Valley Chevrolet were instrumental in causing the violations of Plaintiff's rights and the harm she suffered.

200.    As a result, Plaintiff has suffered physical injury, emotional distress, loss of liberty, and other damages resulting from these violations of her rights under California common law and negligence per se.

201.    WHEREFORE, Plaintiff demands judgment against Defendants, Officers 1-10 of the Los Angeles Sheriff's Department and Antelope Valley Chevrolet, for the following:

- (a) Compensatory damages for physical injury, emotional distress, loss of liberty, and other damages;
- (b) Punitive damages, as allowed by California law, to punish the Defendants for their willful and wanton conduct and to deter similar conduct in the future;
- (c) Attorney fees and costs, as allowed by California law; and
- (d) Such other and further relief as the Court shall deem just and proper.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (RFDCPA)

*(Against Antelope Valley Chevrolet)*

202.    Plaintiff repeats the allegations contained above as if the same were

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

The Law Offices of:
ANDRE L. VERDUN

here set forth at length.

203.     Plaintiff is a "debtor" as defined by Civil Code 1788.2(h).

204.     AVC is a "debt collector" as defined by Civil Code § 1788.2(c), that was attempting to collect a "consumer debt" as defined § 1788.2(d).

205.     AVC's acts and omissions violated Civil Code § 1788 et seq. including but not limited to the below.

206.     By falsely representing to law enforcement that Plaintiff committed grand theft auto and embezzlement, and by failing to properly rescind the contract within the 10-day period, Antelope Valley Chevrolet violated Cal. Civil Code 1788 et seq., and Cal. Civ. Code § 1788.10(a), (b), (c) and (d) by: (1) using criminal means to cause harm to Plaintiff, her reputation, and her property, (2) and asserting that Plaintiff committed a crime by retaining possession of the vehicle, which was false, (3) The communication of, or threat to communicate to any person the fact that a debtor has engaged in conduct, which the debt collector knows or has reason to believe will defame the debtor; and (4) The threat to take any action against the debtor which is prohibited by this title.

207.     By representing that it had a right to possess the vehicle when it did not, by providing false information to the police in an attempt to collect a debt, by initiating a false police report to unlawfully seize possession of the vehicle from Plaintiff, by unlawfully using the police in a private debt collection matter, by engaging in false, deceptive and threatening communications, AVC violated (CC 1788.17 as it incorporates 15 U.S.C. § 1692e, e(5), e(7), e(10)) prohibiting the use of false, deceptive, and misleading representations in connection with the collection of a debt, including The threat to take any action that cannot legally be taken or that is not intended to be taken, "The false representation or implication that the <u>consumer</u> committed any crime or other conduct in order to disgrace the <u>consumer</u>, and "(10) "The use of any false representation or deceptive means to collect or attempt to collect any <u>debt</u> or to obtain information concerning

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

a consumer."

208.    Through the above conduct, Antelope Valley Chevrolet violated Civil Code 1788.17 (which incorporates 15 U.S.C. § 1692b and c) by impermissibly communicating with third parties, including Plaintiff's mother, and the police, in connection with an attempt to collect a debt.

209.    Through the above conduct, Antelope Valley Chevrolet violated Civil Code 1788.17 (which incorporates 15 U.S.C. § 1692d), which prohibits engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1). The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.  AVC threatened and used using criminal means, i.e., initiating a false police report, in connection with collection of a debt.

210.    Through the above conduct, Antelope Valley Chevrolet violated Civil Code 1788.17 (which incorporates 15 U.S.C. § 1692e(2)(A)) by falsely representing the character, amount, or legal status of any debt.

211.    Through the above conduct, Antelope Valley Chevrolet violated Civil Code 1788.17 (which incorporates 15 U.S.C. § 1692e(10)) by using false representations and deceptive means in connection with an attempt to collect.

212.    Through the above conduct, Antelope Valley Chevrolet violated Civil Code 1788.17 (which incorporates 15 U.S.C. § 1692f by using unfair and unconscionable means to collect a debt, including 1692f(6), "Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the; filing a false police report, using the police to collect a debt without a court order.

213.    Through the above conduct, Antelope Valley Chevrolet violated Civil Code 1788.17 (which incorporates 15 U.S.C. § 1692f(1)) by collecting an amount

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF:
ANDRE L. VERDUN

not expressly authorized by the agreement creating the debt or permitted by law, including directing the unlawful repossession of Plaintiff's car and retaining the Plaintiff's downpayment and deposit.

214.    The foregoing acts and omissions constitute numerous and multiple violations of the RFDCPA.

215.    As a result of each and every violation of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a), statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b), and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.17 and 1788.30(c) from Antelope Valley Chevrolet.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200
### *(Against Antelope Valley Chevrolet)*

216.    Plaintiff repeats the allegations contained above as if the same were here set forth at length.

217.    Business and Professions Code § 17200 et seq prohibits any unlawful, unfair, or fraudulent business practice, an unfair, deceptive, untrue, or misleading advertising, and any violation of Business and Professions Code § 17500 et seq.

218.    Antelope Valley Chevrolet's conduct involves their business acts and practices.

219.    In particular, Antelope Valley Chevrolet is a car retailer, routinely entering into contracts for the purchasing of vehicles. As part of their duties in the same, it is to honor the contracts as written, and not take any unfair action regarding the same.

220.    Antelope Valley Chevrolet's conduct is unlawful to the extent that they

-47-

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

have violated the law as alleged in this complaint, including the failure to properly rescind the contract within the stipulated time frame and initiating legal actions against the Plaintiff.

221.     Antelope Valley Chevrolet's conduct is unfair because it is entirely against California's public policy of, among other things, enforcing contracts as written and prohibiting the filing of false police reports.

222.     Plaintiff has suffered economic injury, and as a result of Antelope Valley Chevrolet's conduct, which has deprived her of her use of the vehicle.

223.     Plaintiff has suffered damages due to Antelope Valley Chevrolet's conduct, including but not limited to, loss of use of the vehicle, legal expenses, and damage to her reputation, as well as those noted above.

## NINTH CAUSE OF ACTION

## CONVERSION

### *(Against Antelope Valley Chevrolet)*

224.     Plaintiff repeats the allegations contained above as if the same were here set forth at length.

225.     Plaintiff had lawful possession of the vehicle.

226.     By using its previous personal contacts with LASD, engaging in numerous communications from late November to early October 2022, some to Detective Gelardo's personal cell phone (although not documented in police reports) having in-person meetings with the police to coordinate a repossession, filing a false police report, directing the police to inappropriately use state action and the color of authority to arrest, handcuff and incarcerate Plaintiff, and then having the police give possession of Plaintiff's car to AVC, without any notice, opportunity for a hearing, or court order, Defendants intentionally and substantially interfered with Plaintiff's property and her rights thereto.

227.     Plaintiff was harmed and Defendant's conduct was a substantial factor in causing Plaintiff's harm, including failing return Plaintiff's deposit.

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF:
ANDRE L. VERDUN

# TENTH CAUSE OF ACTION

## CIVIL EXTORTION

*(Against Antelope Valley Chevrolet)*

228.    Plaintiff repeats the allegations contained above as if the same were here set forth at length.

229.    Under Penal Code § 519, extortion occurs when a person: (1) threatens to unlawfully injure someone's property or reputation (including accusing them of a crime or exposing them to disgrace), and (2) uses that threat to coerce consent to surrender money or property. Here, Defendant fabricated a stolen-vehicle claim and invoked the threat of IRS involvement to expose Plaintiff to disgrace or criminal liability. By design, these threats created fear and compelled Plaintiff to relinquish her property rights. Consequently, the "consent" to surrender the vehicle was not voluntary but rather the direct result of Defendant's wrongful use of fear.

230.    Defendant used explicit and implied threats to wrongfully obtain money or property from Plaintiff, satisfying the elements of extortion under Penal Code §§ 518–519. These threats included:

> • Threatening to involve the IRS ("we don't want the IRS to red-flag you"), thereby implying criminal liability for underreported income;
>
> • Threatening to impose attorney's fees or further legal liability if Plaintiff did not comply; and
>
> • Threatening criminal arrest (orchestrated with law enforcement) if Plaintiff did not surrender the vehicle.

231.    In October and November 2022, Defendant AVC through its general manager, initiated a campaign of threats via text messages to Plaintiff's phone, warning of potential IRS investigations by stating "we don't want the IRS to red-flag you" and threatening to "push it" with the IRS if she did not comply with their demands. When these initial threats failed to secure the vehicle's return, AVC

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

escalated by threatening Plaintiff's mother with police involvement. This escalation culminated in AVC enlisting Detective Michael Gelardo to effectuate Plaintiff's arrest, on AVC's behalf and at AVC's direction, after which Detective Gelardo himself continued AVC's extortion scheme by warning Plaintiff she could face additional prosecution if she did not return specific items. Under this duress and direct threat from AVC acting on their own and also by using Detective Gelardo, Plaintiff capitulated by returning the spare key and vehicle manual to AVC, and was effectively coerced into relinquishing her rights to her deposit payment and the vehicle, demonstrating that AVC's extortionate conduct, ultimately enforced through Detective Gelardo's actions, successfully induced Plaintiff to part with property through the wrongful use of fear, meeting all elements required for civil extortion under California law. In making these threats, Defendant intended that fear be the controlling reason for Plaintiff to give up her contractual right to the vehicle (i.e., "consent under duress"). This use of wrongful fear to force Plaintiff to relinquish her property and deposit meets the definition of extortion (Pen. Code §§ 518, 519; see also CALCRIM No. 1830).

232.    Under this duress, Plaintiff capitulated by returning the spare key and vehicle manual to AVC, and was effectively coerced into relinquishing her rights to her deposit payment, demonstrating that AVC's extortionate conduct successfully induced Plaintiff to part with property through the wrongful use of fear, meeting all elements required for civil extortion under California law, as evidenced by the following specific facts: [WHO] AVC through its general manager; [WHAT] Made threats via text messages about IRS investigations, criminal charges, and police involvement to coerce return of property; [WHEN] October and November 2022; [WHERE] Via text messages from AVC's phone to Plaintiff's phone, and verbal threats to Plaintiff's mother; [WHY] To force Plaintiff to return vehicle and surrender her deposit rights; [PROPERTY OBTAINED] The spare key and vehicle manual and relinquished her rights to her deposit payment

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

THE LAW OFFICES OF:
ANDRE L. VERDUN

and the vehicle. Because of these combined threats—to expose Plaintiff to IRS scrutiny, to hold her liable for attorney's fees, and to orchestrate her arrest—fear became the controlling reason for Plaintiff's coerced 'consent' in relinquishing her contractual interest in the vehicle.

233.    Defendant committed civil extortion by obtaining property from another by use of fear, including threating to do an unlawful injury of another (wrongfully dispossessing Plaintiff of her car, and impliedly threatening to report Plaintiff to the IRS, implying she faced criminal charges for lying on her tax returns, and that she could be liable for AVC's attorney's fees); accusing Plaintiff of a crime; exposing Plaintiff to disgrace, and exposing secrets affecting Plaintiff.

234.    As a proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be determined by proof and finder of fact at trial.

235.    Defendant acted with oppression, fraud, and/or malice, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

The Law Offices of: ANDRE L. VERDUN

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in her favor, and against Defendants, for the following:

     a. Statutory, actual, and punitive damages;

     b. Attorneys' fees and costs;

     c. For injunctive, and all other equitable relief, including an order declaring that the contract for the vehicle at issue is valid and enforceable;

     d. For such other and further relief as this Court deems just and proper; and

     e. Pre-judgment and post-judgment interest at the legal rate.

Dated: January 28, 2025



Andre Verdun
**LAW OFFICE OF ANDRE L VERDUN**
Attorney for Plaintiff, Gabriela Stephanie Barrios

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

# DEMAND FOR JURY TRIAL

**NOW COMES** Gabriela Stephanie Barrios, the Plaintiff in this matter, who hereby demands a trial by jury in the above-captioned matter.

Dated: January 28, 2025

s/ Andre Verdun

Andre Verdun
**LAW OFFICE OF ANDRE L VERDUN**
Attorney for Plaintiff, Gabriela Stephanie Barrios

**FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF**

## CERTIFICATE OF SERVICE

**Case Name: Barrios v Antelope Chevrolet**

**Case No.: 2:23-cv-10476**

I, the undersigned, affirm that at the time of serving the referenced documents, I was over the age of eighteen years and not a party to this action. Additionally, I am not a registered California process server.

I am employed in Ventura County/San Diego County, California, and my primary business address is 1777 N Ventura Ave, Ventura, CA 93001.

On January 29, 2025, I served the foregoing documents described as: **FOURTH AMENDED COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF** on the parties in this action addressed as follows:

 XX  **ECF System**: I have caused service of the document(s) referenced above, on the parties identified above by electronically filing them with the Clerk of the District Court using its ECF System, which provides electronic notification to them.

Thomas R. O'Connor   CTSC Law 2601 Main Street, Suite 800 Irvine, California 92614 Attorney for Antelope Valley Chevrolet  Molshree Gupta, Esq. Carina M. Jordan, Esq. KJAR, McKENNA& STOCKALPER, LLP 841 Apollo Street, Suite 100 El Segundo, California 90245 Attorney for Los Angeles Sheriff's Department

**Email service list upon which service of these documents were served on**: toconnor@ctsclaw.com, ronaldwilcox@gmail.com, service@verdunlaw.com, andre@verdunlaw.com, mnixon@kmslegal.com, pstockalper@kmslegal.com, mgupta@kmslegal.com, bezra@kmslegal.com, toconnor@ctsclaw.com, LUnis@ctsclaw.com, eschumann@ctsclaw.com, MShin@ctsclaw.com, allisonkrumhorn@gmail.com,

-1-

**PROOF OF SERVICE**

__ **US Mail**: I hereby certify that I have caused the foregoing to be mailed, via the United States Postal Service, to the following non-ECF participants in this case: **NONE**.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed January 29, 2025 at **Ventura, California**.

s/ *David Adams*

David Adams

**PROOF OF SERVICE**

# EXHIBIT "B"

1

2                    UNITED STATES DISTRICT COURT

3         CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

4

5    GABRIELA STEPHANIE BARRIOS,          )   Case No.:
                                          )   2:23-cv-10476-
6                        Plaintiff,       )   AB-JC
                                          )
7          vs.                            )
                                          )
8    ANTELOPE CHEVROLET; LOS ANGELES      )
     SHERIFF'S DEPARTMENT; and OFFICERS   )
9    1-10, in their official capacities,  )
     inclusive,                           )
10                                        )
                         Defendants.      )
11   _____)

12

13

14                 VIDEOTAPED DEPOSITION OF

15               GABRIELA STEPHANIE BARRIOS

16               FRIDAY, DECEMBER 20, 2024

17                  EL SEGUNDO, CALIFORNIA

18

19

20

21

22

23

24   REPORTED BY:   Amy J. Marsden, CSR No. 13067

25

1

2                    UNITED STATES DISTRICT COURT

3          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

4

5    GABRIELA STEPHANIE BARRIOS,          )   Case No.:
                                          )   2:23-cv-10476-
6                        Plaintiff,       )   AB-JC
                                          )
7          vs.                            )
                                          )
8    ANTELOPE CHEVROLET; LOS ANGELES      )
     SHERIFF'S DEPARTMENT; and OFFICERS   )
9    1-10, in their official capacities,  )
     inclusive,                           )
10                                        )
                         Defendants.      )
11   _____)

12

13

14         VIDEOTAPED DEPOSITION OF GABRIELA STEPHANIE

15   BARRIOS, the plaintiff, taken on behalf of Defendant

16   Antelope Valley Chevrolet, Inc., erroneously sued and

17   served herein as Antelope Chevrolet, Inc., at 841

18   Apollo Street, Suite 100, El Segundo, California,

19   commencing at the hour of 10:19 a.m., on Friday,

20   December 20, 2024, before Amy J. Marsden,

21   CSR No. 13067, pursuant to Notice of Taking Deposition.

22

23

24

25

Gabriela Stephanie Barrios
Gabriela Stephanie Barrios vs. Antelope Chevrolet

Case 2:23-cv-10479-AB-JC    Document 160-2    Filed 07/02/25    Page 64 of 186    Page
ID #:4438

1270304

```
 1    APPEARANCES OF COUNSEL:

 2

 3    For Plaintiff GABRIELA STEPHANIE BARRIOS:

 4        YG LEGAL FIRM
          BY:  YELENA GUREVICH
 5        3940 Laurel Canyon Boulevard, Suite 800
          Studio City, California  91604
 6        (213) 534-7769
          atty@yglegalfirm.com
 7
          LAW OFFICES OF ANDRE L. VERDUN
 8        BY:  ANDRE L. VERDUN (via videoconference)
          1777 North Ventura Avenue
 9        Ventura, California  93001
          (619) 880-0110
10        andre@verdunlaw.com

11

12    For Defendant ANTELOPE VALLEY CHEVROLET, INC.,
          erroneously sued and served herein as Antelope
          Chevrolet, Inc.:
13
          CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP
14        BY:  JIWON MICHAEL SHIN
          2601 Main Street, Suite 800
15        Irvine, California  92614
          (949) 261-2872
16        mshin@ctsclaw.com

17

18    For Defendant LOS ANGELES SHERIFF'S DEPARTMENT:

          KJAR, McKENNA & STOCKALPER, LLP
19        BY:  MOLSHREE GUPTA
          841 Apollo Street, Suite 100
20        El Segundo, California  90245
          (424) 217-3026
21        mgupta@kmslegal.com

22

23

24

25
```

Gabriela Stephanie Barrios
Gabriela Stephanie Barrios vs. Antelope Valley Chevrolet

1270304

```
 1    Also present:

 2         Gabriel Goodreau, Videographer

 3         Jack Oh (via videoconference)
           Antelope Valley Chevrolet
 4
           Laura Charolet (via videoconference)
 5         Law Offices of Andre L. Verdun

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        I N D E X

 2

 3   WITNESS:  GABRIELA STEPHANIE BARRIOS

 4   EXAMINATION                                  PAGE

 5           BY MR. SHIN                      9, 279
             BY MS. GUPTA                        105
 6

 7

 8
             (Exhibits bound under separate cover)
 9

10              EXHIBITS FOR IDENTIFICATION

11   Exhibit 39    Deposition Notice              17
                   (10 pages)
12
     Exhibit 40    Wells Fargo Bank Statement     40
13                 August 31, 2022
                   (9 pages)
14
     Exhibit 41    Wells Fargo Bank Statement     47
15                 June 30, 2022
                   (9 pages)
16
     Exhibit 42    Wells Fargo Bank Statement     49
17                 July 31, 2022
                   (9 pages)
18
     Exhibit 43    Credit Application             56
19                 (3 pages)

20   Exhibit 44    1040 Individual Income Tax Return  57
                   for 2021
21                 (2 pages)

22   Exhibit 45    IRS Account Transcript          61
                   (3 pages)
23
     Exhibit 46    2021 Form 1099-K                65
24                 (1 page)

25
```

```
 1                    EXHIBITS FOR IDENTIFICATION
                             (continued)
 2

 3    Exhibit 47     2021 Tax Return prepared by          68
                     DV Tax & Legal Services
 4                   (36 pages)

 5    Exhibit 48     Joint Stipulation Re:  Plaintiff's   70
                     Waiver of Privacy Interest
 6                   (8 pages)

 7    Exhibit 49     Text Messages                        79
                     (6 pages)
 8

 9    Exhibit 50     Body-worn camera video              165
                     COLA00010
                     (media file)
10

11    Exhibit 51     Body-worn camera video              192
                     COLA00011
12                   (media file)

13    Exhibit 52     Station interview video             242
                     (confidential)
                     COLA00004
14                   (media file)

15

16

17

18

19

20

21

22

23

24

25
```

1    QUESTION(S) THE WITNESS IS INSTRUCTED NOT TO ANSWER:

2                    PAGE      LINE

3                     37        4
                      90        5
4                    110       11
                     195        6
5                    283       12

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 2:23-cv-10476-AB-JC   Document 160-2   Filed 07/02/25   Page 69 of 186   Page
ID #:4443

Gabriela Stephanie Barrios
Gabriela Stephanie Barrios vs. Antelope Chevrolet

1270304

```
 1    No. 43.  Ms. Lopez, on the top left do you see your

 2    name -- your prior name on there?

 3         A.   Yes.

 4         Q.   And that's under "Buyer"; correct?

11:00  5   A.   Yes.

 6              MS. GUREVICH:  Michael, I think we already

 7    have the RISC as an exhibit.

 8              MR. SHIN:  Oh, do we?  I apologize.  Do you

 9    know what exhibit number that is?

11:00 10             MS. GUREVICH:  No, I do not.

11             MR. SHIN:  Well, then, I'll go ahead and

12    reserve the Exhibit 43 for a new one, and we'll fill in

13    the proper exhibit number how about during the break.

14             MS. GUREVICH:  Yeah, that sounds good.

11:00 15   BY MR. SHIN:

16         Q.   Ms. Lopez, on the right of this, do you see

17    under "Seller" where it says "Antelope Valley

18    Chevrolet"?

19         A.   Yes.

11:01 20        Q.   And towards the top center, it describes a

21    vehicle, a new 2022 Chevrolet Malibu.  Do you see that?

22         A.   Yes.

23         Q.   And on the back, let's say, on the very last

24    page where it says "Buyer Signature," is that your

11:01 25   signature?
```

Case 2:23-cv-10476-AB-JC    Document 160-2    Filed 07/02/25    Page 70 of 186    Page
ID #:4444

Gabriela Stephanie Barrios
Gabriela Stephanie Barrios vs. Antelope Chevrolet

1270304

1       A.    Yes.

2       Q.    Is this the retail installment purchase

3    contract that you signed to buy the 2022 Chevy Malibu?

4       A.    Yes.

11:01   5       Q.    Okay.  And did you read this document before

6    you signed it?

7       A.    Not word for word, but for the most part.

8       Q.    Because you wanted to make sure you understood

9    what you're signing up for; correct?

11:01  10       A.    Right.

11       Q.    Yeah.  And it's important to do that because

12    you want to make sure you understand what you're, you

13    know -- could be liable for; correct?

14            MS. GUREVICH:  Objection.  Rifkind versus

11:01  15    Superior Court.

16            You can answer.

17            THE WITNESS:  Right.

18    BY MR. SHIN:

19       Q.    Okay.  I mean, especially since it tells you

11:02  20    how much your monthly payments are going to be -- on

21    the first page, it's $606.51 -- I mean, it's important

22    to know what you're being committed to when you sign

23    this document; right?

24       A.    Right.

11:02  25            MS. GUREVICH:  Objection.  Rifkind.

Case 2:23-cv-10476-AB-DJ   Document 160-2   Filed 07/02/25   Page 71 of 186   Page
ID #:4445

Gabriela Stephanie Barrios
Gabriela Stephanie Barrios vs. Antelope Chevrolet

1270304

```
 1            So, by that, is it your understanding that, if
 2   you break any other promises that are contained in this
 3   contract, it'd constitute a default; correct?
 4            MS. GUREVICH:  Objection.  Rifkind versus
 5   Superior Court.
 6            You can answer.
 7            THE WITNESS:  Yes.
 8            MR. SHIN:  Thank you.
 9            Now, I don't believe this document was marked
10   as an exhibit yet, so I'm going to mark this one as
11   Exhibit 43.  I'm hoping I'm not incorrect.
12            A copy for you.
13   BY MR. SHIN:
14       Q.   Ms. Lopez, on the top, do you see your former
15   name on there?
16       A.   Yes.
17       Q.   Now, I understand that this document also
18   has -- oh, at the top left it says "Credit
19   Application."  Do you see that?
20       A.   Yes.
21            (Exhibit 43 was identified for the record and
22   later marked by the reporter.)
23   BY MR. SHIN:
24       Q.   Now, if you go to the last page, is that your
25   signature?
```

11:05  5
11:06 10
11:06 15
11:06 20
11:06 25

 1     A.   Yes.

 2     Q.   Is this a credit application with information

 3   you provided and then signed at the time you purchased

 4   the 2022 Chevy Malibu from Antelope Valley Chevrolet?

11:06  5     A.   Yes.

 6     Q.   Thank you.  And if you look at the -- about

 7   the center of the first page where it says "Gross

 8   Income," you represented $5,000 a month gross income;

 9   is that correct?

11:07 10     A.   Yes.

11     Q.   The next document I'm going to show you I'm

12   going to mark as Exhibit 44.

13          Ms. Lopez, at the very top of this document,

14   do you see where it says "1040 U.S. Individual Income

11:08 15   Tax Return" for 2021?

16     A.   Yes.

17          (Exhibit 44 was identified for the record and

18   later marked by the reporter.)

19   BY MR. SHIN:

11:08 20     Q.   And is that your name right below it?  Your

21   name at the time, excuse me.

22     A.   Yes.

23          MS. GUREVICH:  Michael, before you go forward,

24   we're going to mark this document as confidential

11:08 25   because it has social security numbers and it is her

Case 2:23-cv-10476-AB-JC    Document 160-2    Filed 07/02/25    Page 73 of 186    Page
ID #:4447

Gabriela Stephanie Barrios
Gabriela Stephanie Barrios vs. Antelope Chevrolet

1270304

1    confident has been marked as an exhibit already.  Let

2    me go ahead and provide one to counsel.  So I'm going

3    to leave it blank for now so we can fill in that

4    exhibit number later.

11:45    5        A copy for you.

6        MS. GUPTA:  Thank you.

7    BY MR. SHIN:

8        Q.   Ms. Lopez, this document is an email that was

9    sent by Jack Oh.  And at the very bottom, you'll see it

11:45   10   says Jack Oh is a general manager for Antelope Valley

11   Chevrolet.  And at the top, the email says -- has a

12   date of October 27, 2022, and the to -- and it was

13   delivered to an email address that's

14   gabriela.barrios051511@gmail.com.

11:46   15       Do you remember receiving this email?

16       A.   I do.

17       Q.   So you've seen this document before; correct?

18   Or this email, excuse me.

19       MS. GUREVICH:  Objection.  Asked and answered.

11:46   20       You can answer.

21       THE WITNESS:  Yes.

22   BY MR. SHIN:

23       Q.   Now, take a moment to read the email, please,

24   and let me know when you're done.

11:47   25       A.   Okay.

1          Q.   So having reviewed this email, let me go back

2    to my last question.   Does this refresh your memory at

3    all that at some point after you purchased the vehicle

4    an employee from Antelope Valley Chevrolet contacted

11:47    5    you to let you know that the lender stated that in your

6    tax filings that you had reported zero income?

7              MS. GUREVICH:   Objection.   Rifkind.   Asked and

8    answered.

9              You can answer.

11:47   10              THE WITNESS:   Yes.

11   BY MR. SHIN:

12        Q.   Okay.   Around the time you received this

13   email, do you recall people from Antelope Valley

14   Chevrolet trying to contact you because of this issue?

11:48   15              MS. GUREVICH:   Objection.   Assumes facts not

16   in evidence.

17              You can answer.

18              THE WITNESS:   I don't recall.

19   BY MR. SHIN:

11:48   20        Q.   Do you recall receiving any text messages

21   regarding an issue with your financing?

22              MS. GUREVICH:   Objection.   Asked and answered.

23   Assumes facts not in evidence.

24              You can answer.

11:48   25              THE WITNESS:   I don't recall.

Case 2:23-cv-10476-AB-JC    Document 160-2    Filed 07/02/25    Page 75 of 186    Page
ID #:4449

Gabriela Stephanie Barrios
Gabriela Stephanie Barrios vs. Antelope Chevrolet

1270304

```
          1    for the vehicle?
          2             MS. GUREVICH:  Objection.  Rifkind.
          3             You can answer.
          4             THE WITNESS:  Yes.
11:51     5    BY MR. SHIN:
          6        Q.   Okay.  So, now, including the messages and the
          7    email, you do recall receiving both with respect to
          8    some issues that they had with regards to financing
          9    your purchase of the vehicle; correct?
11:52    10             MS. GUREVICH:  Objection.  Misstates
         11    testimony.
         12             You can answer.
         13             THE WITNESS:  Yes.
         14    BY MR. SHIN:
11:52    15        Q.   Now, I noticed from the text messages they all
         16    appear to be from the dealership and there was no
         17    response from you as to any of them except for the
         18    first page which appears to be a photocopy of an
         19    insurance policy.  Was that insurance policy a copy of
11:52    20    which you provided to the dealership?
         21        A.   I believe so.
         22        Q.   Is there any reason why you didn't respond to
         23    any one of these text messages?
         24             MS. GUREVICH:  Objection.  Rifkind.  Assumes
11:52    25    facts not in evidence.
```

1        You can answer.

2        THE WITNESS:   I wasn't sure what to respond.

3    BY MR. SHIN:

4        Q.   Well, let's -- let's go back to -- kind of

11:52  5    review some of these.  You know, I think some of these

6    are a little bit out of order, but let's -- if you go

7    to the second page, there's a date on the top.  It says

8    October 18, 2022.  Now, this is before the email that I

9    showed you, which was dated October 27.  So about --

11:53 10    about ten days before.

11        It says "Miss Barrios.  It's Nina from AV

12    Chevrolet.  We have issues with the finances.  Can you

13    please contact us.  We are here to help but need your

14    assistance.  Thank you."

11:53 15        Is there a reason why you didn't know how to

16    respond to that?

17        MS. GUREVICH:  Objection.  Misstates

18    testimony.  Assumes facts not in evidence.  Rifkind

19    versus Superior Court.

11:53 20        You can answer.

21        THE WITNESS:  Yeah, I mean, I don't know -- I

22    don't know how to explain why, but I just wasn't sure

23    what -- if or what to respond.

24    BY MR. SHIN:

11:53 25        Q.   The next message says "Sorry to bother you

Case 2:23-cv-10476-AB-JC    Document 160-2    Filed 07/02/25    Page 77 of 186    Page
ID #:4451

Gabriela Stephanie Barrios
Gabriela Stephanie Barrios vs. Antelope Chevrolet

1270304

1    I, Amy J. Marsden, CSR 13067, do hereby declare:

2    That, prior to being examined, the witness named
in the foregoing deposition was by me duly sworn

3 pursuant to Section 30(f)(1) of the Federal Rules of
Civil Procedure and the deposition is a true record of

4 the testimony given by the witness.

5    That said deposition was taken down by me in
shorthand at the time and place therein named and

6 thereafter reduced to text under my direction.

7    __X____  That the witness was requested to review
the transcript and make any changes to the

8        transcript as a result of that review
pursuant to Section 30(e) of the Federal

9        Rules of Civil Procedure.

10    _____  No changes have been provided by the
witness during the period allowed.

11

      _____  The changes made by the witness are

12        appended to the transcript.

13    _____  No request was made that the transcript be
reviewed pursuant to Section 30(e) of the

14        Federal Rules of Civil Procedure.

15    I further declare that I have no interest in the
event of the action.

16

17    I declare under penalty of perjury under the laws
of the United States of America that the foregoing is

18 true and correct.

    WITNESS my hand this 14th day of January, 2025.

19

20

21

22

23       *Amy J. Marsden*

24    _____
       Amy J. Marsden, CSR No. 13067

25



# EXHIBIT "C"

# Deposition Transcript

Case Number: 2:23-cv-10476

Date: September 24, 2024

In the matter of:

# BARRIOS v LOS ANGELES SHERIFF'S DEPARTMENT, et al.

# JACK OH

**CERTIFIED COPY**

Reported by:
Claudia Badano



Steno
Official Reporters

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: Firm #108F

```
1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3

4   GABRIELA STEPHANIE BARRIOS,      )
                                     )
5                     Plaintiff,     )
                                     )
6        vs.                         )   CASE NO.
                                     )   2:23-cv-10476
7   ANTELOPE CHEVROLET, LOS ANGELES  )
    SHERIFF'S DEPARTMENT, and        )
8   OFFICERS 1-10, in their official )
    capacities, inclusive,           )
9                                    )
                      Defendants.    )
10  _____)

11

12

13

14                  DEPOSITION OF JACK OH

15             Tuesday, September 24, 2024

16

17

18

19

20

21  Reported by:
    Claudia Badano,
22  C.S.R. 8974
    JOB No. 1102694
23

24

25
```

1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3

4    GABRIELA STEPHANIE BARRIOS,        )
                                         )
5                       Plaintiff,       )
                                         )
6        vs.                             )   CASE NO.
                                         )   2:23-cv-10476
7    ANTELOPE CHEVROLET, LOS ANGELES )
     SHERIFF'S DEPARTMENT, and           )
8    OFFICERS 1-10, in their official)
     capacities, inclusive,             )
9                                        )
                        Defendants.      )
10   _____)

11

12

13

14         Deposition of JACK OH, taken on behalf of

15   Plaintiff, at 5250 Lankershim Boulevard, 5th Floor,

16   North Hollywood, California, at 9:21 a.m., on Tuesday,

17   September 24, 2024, before Claudia Badano, Certified

18   Shorthand Reporter No. 8974.

19

20

21

22

23

24

25

JACK OH
SEPTEMBER 24, 2024

JOB NO. 1102694

```
 1   APPEARANCES:

 2

 3   FOR PLAINTIFF:

 4         LAW OFFICE OF ANDRE L. VERDUN
           BY:  YELENA GUREVICH, ESQ.
 5         1777 North Ventura Avenue
           Ventura, California  93001
 6         (619) 880-0110
           andre@verdunlaw.com
 7

 8   FOR DEFENDANT ANTELOPE VALLEY CHEVROLET:

 9         CALLAHAN THOMPSON SHERMAN & CAUDILL LLP
           BY:  JIWON MICHAEL SHIN, ESQ.
10         2601 Main Street
           Suite 800
11         Irvine, California  92614
           (949) 261-2872
12         mshin@ctsclaw.com

13

14   FOR DEFENDANT LOS ANGELES COUNTY SHERIFF'S DEPARTMENT:

15         KJAR McKENNA & STOCKALPER
           BY:  MOLSHREE GUPTA, ESQ.
16         841 Apollo Street
           Suite 100
17         El Segundo, California  90245
           (424) 217-3026
18         mgupta@kmslegal.com

19   ALSO PRESENT:

20         GABRIELA STEPHANIE BARRIOS

21

22

23

24

25
```

JACK OH                                                          JOB NO. 1102694
SEPTEMBER 24, 2024

```
 1                          I N D E X

 2

 3    WITNESS              EXAMINATION BY              PAGE

 4    JACK OH

 5                         MS. GUREVICH              6, 102

 6                         MS. GUPTA                 97

 7

 8

 9                        E X H I B I T S

10

11
      NO.          PAGE            DESCRIPTION
12

13    Exhibit 1    50              Retail Installment Contract

14    Exhibit 2    53              2021 Amended Tax Returns for
                                   Gabriela Barrios
15
      Exhibit 3    81              Downpayment receipt
16
      Exhibit 4    86              IRS Transcript for 2021 Tax
17                                 Return

18

19

20

21

22

23

24

25
```

```
 1    QUESTIONS  INSTRUCTED  NOT  TO  ANSWER

 2    PAGE    LINE

 3     13      11
       72      20
 4     73      25
       92      21
 5     92      21
       93      7
 6    100      12

 7


 8
      INFORMATION  REQUESTED
 9
      (NONE)
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    team did.

2         Q.    Your management team reached out to

3    Ms. Barrios to have a cosigner?

4         A.    Cosigner.

5         Q.    Do you know if Nina Garcia decided to cancel

6    Gabriela Barrios's contract?

7              MR. SHIN:  Objection.  Asked and answered.

8    Vague, ambiguous, overbroad.

9              THE WITNESS:  I don't remember who.  It could

10   have been collective of everyone.

11   BY MS. GUREVICH:

12        Q.    Who at AVC has the authority to call the

13   police to report a car stolen?

14        A.    Myself, the owner.

15        Q.    Who decided to call the police claiming that

16   Gabriela Barrios -- sorry, that Ms. Barrios stole the

17   vehicle from the dealership?

18             MR. SHIN:  Objection.  Assumes facts not in

19   evidence.  Overbroad.

20             THE WITNESS:  The information we got from

21   GM Financial when they said that her tax return is

22   falsified, based under the contract, she did not hold

23   up to the agreement.  She took possession of the

24   vehicle.

25   ///

 1        MS. GUREVICH:  I'm going to mark it as the

 2 exact same exhibit as produced in discovery so that

 3 when we get to trial, we're not duplicating the

 4 numbers, so for this particular deposition right now,

 5 I'm marking it as Exhibit D AVC 000049 to -- sorry, 44

 6 to 49.  The exhibits are going to be a little bit out

 7 of order when I'm marking them in the deposition

 8 because they're going to be related to the way that

 9 they were produced in discovery and labeled in

10 discovery.

11        MS. GUPTA:  Okay.  It's not a procedure that

12 I'm familiar with.  I'm not -- obviously, not objecting

13 to it.  This is the first deposition that's taken place

14 in this case, so technically, we could mark it as

15 Exhibit 1.  It's the first exhibit so far today that

16 I'm aware of and then proceed from there.

17        Is there any objection to that, Counsel, just

18 so that we can keep track of deposition exhibits on our

19 end?

20        MS. GUREVICH:  My only concern is that -- I'm

21 sorry.  Let's go off the record for a moment.

22        (Discussion held off the record.)

23        MS. GUREVICH:  We're going to mark this as

24 Jack Oh Exhibit -- sorry -- Jack Oh Deposition

25 Exhibit 1 and the Bates stamp on this document is AVC

JACK OH
SEPTEMBER 24, 2024

JOB NO. 1102694

1    000044 to 000049.  This is the retail installment

2    contract.

3             (Plaintiff's Exhibit 1 was marked for

4             identification and attached to and

5             made a part of this deposition.)

6    BY MS. GUREVICH:

7        Q.    Mr. Oh, are you familiar with the terms of

8    this contract?

9        A.    Yes.

10       Q.    Are you familiar with the terms of the

11   contract in regards to the seller's right to cancel

12   provision?

13       A.    Yes.

14       Q.    What does that provision state?

15       A.    So it's part of the ten-day thing.  I could

16   read it out to you.

17       Q.    No.  I want you to tell me in your own words

18   what you understand that provision to state.

19       A.    That if we cannot obtain financing, we have

20   the right to take the car back.

21       Q.    Does that provision require you to notify the

22   customer within ten days?

23       A.    Yes.

24       Q.    What happens if you don't notify the customer

25   within ten days?

JACK OH
SEPTEMBER 24, 2024

JOB NO. 1102694

1    BY MS. GUREVICH:

2        Q.    Did the lender tell you that they couldn't

3    fund this deal because Ms. Barrios's tax returns show

4    $52,000 instead of 60,000?

5        A.    Well, not --

6            MR. SHIN:  Objection.  Vague and ambiguous.

7    Assumes facts not in evidence.  Argumentative.

8            THE WITNESS:  What I recall is the

9    GM Financial lender was not able to document what was

10    provided is what I remember, what she signed,

11    Ms. Barrios signed on the 4506(c).

12            MS. GUREVICH:  I will e-mail this document to

13    you because I do not have a physical copy.

14            THE REPORTER:  Thank you.

15    BY MS. GUREVICH:

16        Q.    Did AVC send a letter to Gabriela Barrios

17    saying that AVC was unable to assign the contract to

18    any financial institutions?

19        A.    The ten-day letter, yes.

20        Q.    Did AVC -- sorry.  Did this letter inform

21    Gabriela Barrios that AVC is cancelling the contract

22    pursuant to the seller's right to cancel under the

23    contract?

24            MR. SHIN:  Objection.  The document speaks for

25    itself.

```
 1            THE WITNESS:  During the weekly meeting,
 2    on-the-job training, we talk about the importance of
 3    the ten-day letter, so yes, that's something we talk
 4    about regularly.
 5    BY MS. GUREVICH:
 6        Q.   What specifically do you discuss as the
 7    importance of the ten-day letter?
 8        A.   We don't want to be a lien -- we don't want --
 9    we're not a finance company.  We're a dealer who sells
10    cars, so that's not a capacity that we want to take
11    upon and we have to send out the ten-day letter within
12    the tenth day.
13        Q.   Do you discuss what happens if the ten-day
14    letter is not sent within the ten days?
15        A.   We have in the past, yes.
16        Q.   What were those discussions?
17        A.   I don't remember.  It's a long time ago.  But
18    my finance managers are all aware of the importance.
19        Q.   Is it your understanding that if AVC informs a
20    customer after the ten days that it is cancelling the
21    contract pursuant to that provision, that AVC has the
22    authority to repossess the vehicle?
23            MR. SHIN:  Objection.  Argumentative.  Assumes
24    facts not in evidence.  Vague, ambiguous and overbroad.
25            THE WITNESS:  Based on the contract, if
```

1  someone lied and took possession of a car, I'm able to

2  do so, Section 3 in the back of the contract, 553.

3  BY MS. GUREVICH:

4      Q.   Do you provide training to your employees

5  regarding repossession of vehicles?

6          MR. SHIN:  Objection.  Asked and answered.

7          THE WITNESS:  I make those decisions, so

8  anything that has repossession, I make those decisions,

9  so those are -- I take the input from my managers on

10  what happened on the deal and we talk about it, if that

11  needs to be done.

12  BY MS. GUREVICH:

13      Q.   Does that mean that you do not train your

14  employees on repossession of vehicles?

15      A.   On-the-job training, we talk about it.

16      Q.   What is it that you talk about?  What do you

17  tell your employees about repossessions?

18      A.   We're not a repo company and we have

19  professionals who does that.

20      Q.   What do you tell your employees on determining

21  whether or not a contract is subject to repossession?

22          MR. SHIN:  Objection.  Vague, ambiguous,

23  overbroad, improper hypothetical.

24          THE WITNESS:  If a customer lies and takes

25  possession of the car not factual -- if they took

```
 1        A.   At the time, no.

 2        Q.   When did you find out that Gabriela Barrios

 3   was arrested?

 4        A.   Once I got the -- you know, the court -- the

 5   documents or whatever, the demand documents from the

 6   plaintiff's attorney.

 7        Q.   When you called the police, did you not think

 8   that Ms. Gabriela Barrios would be arrested?

 9        A.   No.  That did not cross my mind, no.

10        Q.   What did you think the police would do?

11        A.   I only called the police because I felt like

12   there was a crime committed.

13        Q.   But you didn't think someone would be arrested

14   for the crime?

15        A.   I don't think -- I wasn't thinking about that,

16   that someone would be arrested.  I was thinking that a

17   crime was committed.  I don't make the determination if

18   someone gets arrested or not.

19        Q.   Was anyone terminated or disciplined or

20   reprimanded for how the Barrios matter was handled at

21   AVC?

22        A.   No.

23        Q.   Why not?

24             MR. SHIN:  Objection.  Argumentative.

25             THE WITNESS:  Reprimanding for a customer
```

JACK OH
SEPTEMBER 24, 2024                                          JOB NO. 1102694

1    time for you to jump in and I will sit tight.

2          MS. GUPTA:  Thank you.

3

4                      EXAMINATION

5    BY MS. GUPTA:

6          Q.    Thank you so much, Mr. Oh, for your time.  I

7    don't have very many questions.  Just wanted some

8    clarification on testimony that you provided earlier.

9              Do you recall just previously in the last 30

10   or so minutes you testified that you called the police

11   because you felt that a crime was committed?

12         A.    That's what I thought, yes.

13         Q.    Okay.  And can you tell me what crime it was

14   that you thought was committed?

15         A.    That she took possession of the vehicle by not

16   telling us the truth as what the lender could not

17   verify her tax returns.

18         Q.    And was it your understanding that the crime,

19   therefore, was fraud?

20         A.    I didn't really know what part of a crime, but

21   I just thought that there was a crime committed, so I

22   called the -- we called the sheriffs.

23         Q.    Okay.  And previously you mentioned that you

24   had called the sheriff because you wanted help.  Can

25   you tell me what help you were looking for?

1      A.    To see if this would be -- constitute as a

2  crime committed.

3      Q.    You also mentioned previously -- strike that.

4            Is that all the help you wanted?

5      A.    That's -- that's all the help, to see if

6  there's a crime committed or not.

7      Q.    Did you also want help from the Sheriff's

8  Department with respect to return of the vehicle?

9      A.    They're not a repo company, so no.  But I

10  don't even know who got me the car.  It could have been

11  the sheriffs.  I have -- I don't remember, it was two

12  years ago.

13      Q.    I understand that.  That's not specifically

14  what I'm asking.

15            So I'm not asking you if you wanted the

16  Sheriff's Department to deliver the vehicle back to

17  you.  I think what I'm asking is a different --

18  slightly different question, so let me try to rephrase

19  it.

20            The help that you wanted from the Sheriff's

21  Department, did that help extend to action by the

22  Sheriff's Department to ensure that the vehicle was

23  returned to Antelope Valley Chevrolet?

24            MR. SHIN:  Objection.  Asked and answered.

25            THE WITNESS:  Ultimately I just wanted -- I

1   wanted the car back.  I don't care of anything to

2   happen.  I just want the car back.

3   BY MS. GUPTA:

4       Q.   Got it.  And that was the help that you wanted

5   from the Sheriff's Department?

6       A.   First it was to see if there was a crime

7   committed.

8       Q.   And second?

9       A.   Second, if it is, I want the car back.

10      Q.   Got it.  Okay.

11           Also you mentioned that you wanted advice from

12   the Sheriff's Department.  Can you tell me what advice

13   you wanted from the Sheriff's Department?

14      A.   To see if a crime was committed.

15      Q.   And typically is it your understanding that a

16   law enforcement agency provides advice?

17      A.   Advice of if a crime has been committed, that

18   type of advice, yes.

19      Q.   So your understanding is that a law

20   enforcement agency provides legal advice with respect

21   to whether something is a crime or not.

22           MR. SHIN:  Objection.  Misstates testimony.

23           THE WITNESS:  They would know more than I

24   would.  I don't know what a crime -- whether a crime

25   has been committed or not.  I don't know the exact

```
 1   details.

 2   BY MS. GUPTA:

 3       Q.   Okay.  And then you also testified previously

 4   that you wanted direction when you contacted the

 5   Sheriff's Department.

 6           Did you want any direction that was -- with

 7   respect to a topic that's different than the help or

 8   advice that we've already discussed?

 9       A.   No.  Just to see if a crime was committed.

10   That's it.

11       Q.   Got it.

12           Why didn't you call Tom O'Connor for advice?

13           MR. SHIN:  Objection.  Attorney-client

14   privilege.  I'm going to instruct the witness not to

15   answer.

16           MS. GUPTA:  Counsel, I'm not asking about the

17   content of any discussions.  I'm asking as to your

18   client's state of mind and I'm entitled to ask that

19   question.

20           MR. SHIN:  I believe that's another way to get

21   into the substance of the conversation with the

22   attorney.  You're asking what it is that he called to

23   talk to him about.  I feel like --

24           MS. GUPTA:  It's not.

25           MR. SHIN:  -- that's asking what he's talked
```

 1 | outside of this litigation?

 2 |      A.   I don't even know him outside of this.

 3 |           MS. GUPTA:  Okay.  Those are all the questions

 4 | that I have.  Thank you.

 5 |           MS. GUREVICH:  I have one follow-up.

 6 |

 7 |                     FURTHER EXAMINATION

 8 | BY MS. GUREVICH:

 9 |      Q.   How did you think the Los Angeles Sheriff's

10 | Department would get you the car back?

11 |      A.   I really didn't.  I just called just to see if

12 | a crime has been committed.  If they got me the car

13 | back, you know, thank you.  I don't even recall how I

14 | got the car back.  All I know is I have the car.  It

15 | probably should be sold by now, but like, I mean, I

16 | don't touch the car.

17 |           MS. GUREVICH:  Okay.  Ms. Gupta, do you have

18 | any further questions?  I'm going to leave it open for

19 | the moment, but I'm going to conclude today's session.

20 |           MS. GUPTA:  No questions today.  Thank

21 | you, Counsel.

22 |           MS. GUREVICH:  Mr. Shin?

23 |           MR. SHIN:  Can we get the amount of time that

24 | the deposition has gone so far, Madam Court Reporter?

25 |           THE REPORTER:  That's going to take me a

1    STATE OF CALIFORNIA      )

2    COUNTY OF LOS ANGELES   )   ss.

3

4         I, CLAUDIA BADANO, C.S.R. No. 8974, in and for

5    the State of California, do hereby certify:

6         That, prior to being examined, the witness

7    named in the foregoing deposition was by me duly sworn

8    to testify the truth, the whole truth and nothing but

9    the truth;

10        That said deposition was taken down by me in

11   shorthand at the time and place therein named, and

12   thereafter reduced to typewriting under my direction,

13   and the same is a true, correct and complete transcript

14   of said proceedings;

15        I further certify that I am not interested in

16   the event of the action.

17        Witness my hand this 3rd day of October,

18   2024.

19

20

21        _Claudia Badano_

22        Certified Shorthand

23        Reporter for the

24        State of California

25

**EXHIBIT "D"**

# Deposition Transcript

Case Number: 2:23-cv-10476

Date: September 26, 2024

In the matter of:

# BARRIOS v LOS ANGELES SHERIFF'S DEPARTMENT, et al.

# James Gonzales

**CERTIFIED COPY**

Reported by:
Claudia Badano



Steno
Official Reporters

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: Firm #108F

```
 1                UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3

 4   GABRIELA STEPHANIE BARRIOS,      )
                                      )
 5                      Plaintiff,    )
                                      )
 6        vs.                         )   CASE NO.
                                      )   2:23-cv-10476
 7   ANTELOPE CHEVROLET, LOS ANGELES  )
     SHERIFF'S DEPARTMENT, and        )
 8   OFFICERS 1-10, in their official )
     capacities, inclusive,           )
 9                                    )
                        Defendants.   )
10   _____)

11

12

13

14                DEPOSITION OF JAMES GONZALEZ

15            Thursday, September 26, 2024

16

17

18

19

20

21   Reported by:
     Claudia Badano,
22   C.S.R. 8974
     JOB No. 1104003
23

24

25
```

1              UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3

4    GABRIELA STEPHANIE BARRIOS,        )
                                        )
5                      Plaintiff,       )
                                        )
6        vs.                            )   CASE NO.
                                        )   2:23-cv-10476
7    ANTELOPE CHEVROLET, LOS ANGELES    )
     SHERIFF'S DEPARTMENT, and          )
8    OFFICERS 1-10, in their official)
     capacities, inclusive,            )
9                                       )
                       Defendants.      )
10   _____)

11

12

13

14        Deposition of JAMES GONZALEZ, taken on behalf of

15   Plaintiff, at 5250 Lankershim Boulevard, 5th Floor,

16   North Hollywood, California, at 9:10 a.m., on Thursday,

17   September 26, 2024, before Claudia Badano, Certified

18   Shorthand Reporter No. 8974.

19

20

21

22

23

24

25

```
 1   APPEARANCES:

 2

 3   FOR PLAINTIFF:

 4         LAW OFFICE OF ANDRE L. VERDUN
           BY:  YELENA GUREVICH, ESQ.
 5                    -and-
                 ANDRE VERDUN, ESQ. (REMOTELY)
 6         1777 North Ventura Avenue
           Ventura, California  93001
 7         (619) 880-0110
           yelena@verdunlaw.com
 8

 9   FOR DEFENDANT LOS ANGELES SHERIFF'S DEPARTMENT:

10         KJAR McKENNA & NSTOCKALPER
           BY:  MOLSHREE GUPTA, ESQ. (REMOTELY)
11         841 Apollo Street
           Suite 100
12         El Segundo, California  90245
           (424) 217-3026
13         mgupta@kmslegal.com

14
     FOR DEFENDANT ANTELOPE VALLEY CHEVROLET:
15
           CALLAHAN THOMPSON SHERMAN & CAUDILL LLP
16         BY:  JIWON MICHAEL SHIN, ESQ.
           2601 Main Street
17         Suite 800
           Irvine, California  92614
18         (949) 261-2872
           mshin@ctsclaw.com
19

20   ALSO PRESENT REMOTELY:

21         GABRIELA STEPHANIE BARRIOS

22         ANGELICA ANGUIANO

23         JACK OH

24

25
```

```
1                          I N D E X

2

3    WITNESS              EXAMINATION BY              PAGE

4
     JAMES GONZALEZ
5
                        MS. GUREVICH                   6
6

7

8                        E X H I B I T S

9

10   NO.        PAGE           DESCRIPTION

11
     Exhibit 1   84            Retail Installment Sales
12                             Contract (Bates AVC 000044-49)

13   Exhibit 7   70            Certified letter to Gabriela
                               Barios dated 9/27/22 (Bates
14                             AVC 000002)

15   Exhibit 8   87            Internal notes (Bates AVC
                               000006-7)
16
     Exhibit 9   94            LA Sheriff's Department Crime
17                             Analysis Form - Suspect
                               Information (Bates 0000015-16)
18
     Exhibit 10  96            LA Sheriff's Department
19                             Incident Report (Bates AVC
                               000018-20)
20
     Exhibit 11  106           Text messages (Bates AVC
21                             000023-25)

22

23

24

25
```

JAMES GONZALES
SEPTEMBER 26, 2024                                    JOB NO. 1104003

1    QUESTIONS INSTRUCTED NOT TO ANSWER

2    PAGE    LINE

3     10      11
      126     4
4

5

6    ANSWERS REQUESTED BE MARKED

7    PAGE    LINE

8    77      19

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      Q.   I mean looked over it, submitted it to GM

2   Financial.

3           MR. SHIN:  Objection.  Compound.  Vague and

4   ambiguous.  Overbroad.

5           THE WITNESS:  It was already submitted to GM

6   Financial.

7   BY MS. GUREVICH:

8      Q.   Before the --

9      A.   Before it even got to me.

10     Q.   Who submitted is to GM Financial?

11     A.   I couldn't tell you.  I know it wasn't me.

12     Q.   Did GM Financial approve Gabriela Barrios's

13  loan application?

14     A.   Based on the information given, yes.

15     Q.   How did they approve it?

16          MR. SHIN:  Objection.  Calls for speculation.

17  Lacks foundation.

18          THE WITNESS:  What do you mean "how"?

19  BY MS. GUREVICH:

20     Q.   Well, you said yes, they approved it, so I'm

21  asking how did you find out they approved it?

22          MR. SHIN:  That's a different --

23          Again, go ahead and answer if you can.  It's a

24  different question from what she asked before.

25          THE WITNESS:  Based off of the call sheet.

1    BY MS. GUREVICH:

2        Q.    Can you take me through the process of sending

3    an application to GM Financial?  What do you have to

4    do?

5        A.    Well, one, we have to go ahead and -- are we

6    talking about just simply submitting information to GM

7    Financial, that's it?  That's all.

8        Q.    Well, I don't know the process, so I'm asking

9    you what's the process when a customer comes in,

10   completes a credit application and you have to submit

11   it to GM Financial.

12       A.    Step by step would be one, a customer comes

13   in.  They would go through the whole sales process,

14   finding, selecting a vehicle.

15              After that, they would go ahead -- if they

16   find the right vehicle, they would go ahead and apply

17   for credit if they don't have the funds to pay for

18   everything.  In doing so, we get the most accurate and

19   most up-to-date information based off of what the

20   customer gives us.

21              If the customer gives us any information that

22   may not fit in any of the banking criteria of banking

23   institutions that we normally do business with, we let

24   them know that at this point in time, we'll submit it

25   in, but it might not look beneficial for them.

JAMES GONZALES
SEPTEMBER 26, 2024

JOB NO. 1104003

 1          But if they fit certain criterias with the

 2   banking -- the banking institutions that we normally do

 3   business with, we submit it to them.  But we have to

 4   entrust with the customer that their full name, their

 5   full social, their full address that they give us is

 6   exactly what it is, the job, the income, all these

 7   things are things that we need to go ahead and relay to

 8   the bank to see if we can get the financing or we can

 9   get them approved for loan to purchase the vehicle.

10          And then the bank will look at their

11   information, look at their credit.  If -- if they fit

12   all the criterias, if they fit all the check box, the

13   bank will go ahead and send us their decision if

14   they're going to go ahead and loan the applicant X

15   amount of dollars to buy the car.

16       Q.   In this process, how is the information

17   relayed to the bank?

18       A.   Relate or relay?

19       Q.   Relayed.

20       A.   Relayed to the bank, we type it in and go into

21   a banking portal, we call it a Route 1.  Other places

22   have different various portals.  And we just -- it's a

23   plug-and-play thing.  Name, put name.  Address, put

24   address.  And then all that information that we put in

25   would -- would be sent via internet to their web portal

JAMES GONZALES                                          JOB NO. 1104003
SEPTEMBER 26, 2024

```
 1              QUESTION:  -- (t), did she?
 2         MR. SHIN:  Hold on.  Objection.  Vague,
 3    ambiguous.  I think it might misstate testimony.
 4         I don't think it's a 4506(t).
 5         THE WITNESS:  No.
 6         MR. SHIN:  Go ahead and answer if you can.
 7         THE WITNESS:  As far as for her to provide it,
 8    we didn't ask her to provide anything except for a
 9    signature.
10    BY MS. GUREVICH:
11      Q.   You -- let's back up.
12           Earlier I asked if you asked her to provide a
13    4506("t") form and you said yes.  Are you stating now
14    that you provided her with a 4506("t") form and she
15    signed it?
16      A.   She signed a 45 -- she signed so many
17    documents.  You keep saying "T."  What's the T?
18      Q.   It's called a 4506("t") form.  Are you
19    familiar with that?
20      A.   It's the form that GM wanted her to fill out
21    to verify her source of income.
22      Q.   And did she fill that out or did you fill that
23    out?
24      A.   She filled it out.
25      Q.   And she provided it to you?
```

1       A.    The information, yes.

2       Q.    Thank you.

3             And she signed that form?

4       A.    Yes.

5       Q.    Thank you.

6             Did you ever ask Ms. Gabriela Barrios whether

7   or not to -- sorry.  Strike that.

8             Did you ever ask Ms. Barrios to provide her

9   physical 2021 tax returns?

10      A.    Did I what?

11            MS. GUREVICH:  Would you read that back?

12            (Record read as follows:

13              QUESTION:  "Did you ever ask

14            Ms. Barrios to provide her physical

15            2021 tax returns?")

16            THE WITNESS:  I don't recall.

17  BY MS. GUREVICH:

18      Q.    Do you recall whether or not you asked her to

19  provide an electronic copy of her 2021 tax returns?

20      A.    I don't recall asking her that either.

21      Q.    Did you ask Ms. Barrios to provide her pay

22  stubs?

23      A.    I may have, to prove her income.

24      Q.    Did Ms. Barrios provide you with the documents

25  you requested her to provide you with?

1           THE WITNESS:  I wouldn't make that

2    determination.

3    BY MS. GUREVICH:

4        Q.   Who would make that determination?

5        A.   At that point, that's for the bank to decide.

6        Q.   If Gabriela Barrios's income on her tax

7    returns was $6,300 gross rather than the 60,000 on her

8    credit application, would it affect Antelope Valley's

9    ability to find her financing?

10          MR. SHIN:  Objection.  Asked and answered.

11   Incomplete hypothetical.  Calls for speculation.  Lacks

12   foundation.

13          THE WITNESS:  Again, it's hard to say because

14   majority of banks, they go off of a PTI.

15   BY MS. GUREVICH:

16       Q.   What's a PTI?

17       A.   Payment to income.

18       Q.   You stated that Ms. Barrios was pre-approved

19   by GM by the time she reached your office.  Was that

20   accurate?

21       A.   That is accurate, yeah.

22       Q.   And she was approved based on a $60,000 amount

23   on her credit application for her income; is that

24   correct?

25       A.   I believe so, yes.

1    mistake on the handling of Ms. Barrios's matter?

2          MR. SHIN:  Objection.  Argumentative.  Calls

3    for speculation.  Lacks foundation.

4    BY MS. GUREVICH:

5        Q.   You can answer.

6        A.   As far as who would know, I don't know.

7        Q.   Thank you.

8          I'm going to pull out a few documents.  I'm

9    going to have the witness handle physical documents.

10   Let's go off the record a second because I want to talk

11   about how we're labelling exhibits.

12          (Discussion held off the record.)

13   BY MS. GUREVICH:

14       Q.   Mr. Gonzalez, I'm going to show you a few

15   documents that we're going to be going through and I'm

16   going to label this one Exhibit 7 and it is AVC 0002.

17   Sorry.  AVC 000002.

18          (Plaintiff's Exhibit 7 was marked for

19          identification and attached to and

20          made a part of this deposition.)

21   BY MS. GUREVICH:

22       Q.   Can you take a look at this document and let

23   me know once you've had a chance to review it.

24       A.   Uh-huh.

25       Q.   And I said this will be Exhibit 7.

1          MS. GUPTA:  Ms. Gurevich, could you identify

2     what document it is just so I can find it on my end?

3          MS. GUREVICH:  Yes.  Give me one second.  I'm

4     going to pull it up on my computer screen so that we

5     can be looking at it at the same time.

6          MS. GUPTA:  Oh, okay.

7          MS. GUREVICH:  It is Exhibit A from the AVC

8     discovery production.  Exhibit A with a Bates stamp AVC

9     00002.  It is a letter that looks like it's from

10     Antelope Valley Chevrolet to Ms. Gabriela Stephanie

11     Barrios, dated 9/27/2022.

12          MS. GUPTA:  Fine.  Thank you, Counsel.

13     BY MS. GUREVICH:

14        Q.   Mr. Gonzalez, did you send this letter to

15     Gabriela Barrios?

16        A.   Yes, I did.

17        Q.   And does this letter state that Antelope

18     Valley Chevrolet was unable to assign this contract to

19     any financial institution?

20        A.   That is what it states.

21        Q.   Did this letter inform Gabriela Barrios that

22     Antelope Valley Chevrolet is cancelling the contract

23     pursuant to the seller's right to cancel under the

24     contract?

25        A.   That's what it states.  This was only sent out

```
 1   because all of a sudden the bank said she had no
 2   income.
 3       Q.   Did you draft this letter?
 4       A.   This letter is just a template.
 5       Q.   Do you know who drafted this letter?
 6       A.   No.
 7       Q.   Where is this template found at Antelope
 8   Valley Chevrolet?
 9            MR. SHIN:  Objection.  Calls for speculation.
10   Lacks foundation.
11            THE WITNESS:  It was a template that was just
12   floating around from previous finance managers
13   personnel did for me.
14   BY MS. GUREVICH:
15       Q.   Did the template already have the
16   letter-heading of Chevrolet, Antelope Valley Chevrolet
17   on top?
18       A.   As far as the original one, I do recall that
19   it did.
20       Q.   Is it in a file folder at Antelope Valley
21   Chevrolet?
22       A.   I don't know.
23       Q.   Is it on your computer at Antelope Valley
24   Chevrolet?
25       A.   As far as the template, yes.
```

JAMES GONZALES
SEPTEMBER 26, 2024

JOB NO. 1104003

1            THE WITNESS:  As far as my interaction with

2     Ms. Barrios, it was just completing her loan docs.  And

3     then after that, trying to finalize the loan.

4     BY MS. GUREVICH:

5         Q.    What did you do to try --

6         A.    In my conversation --

7         Q.    I'm sorry.  Go ahead.

8         A.    -- conversations with the officers, they asked

9     me questions, I gave them answers.

10        Q.    What did you do to try to finalize the loan?

11        A.    Give all the necessary paperwork requested by

12     the bank like the contract, credit application that's

13     needed, DMV paperwork.

14        Q.    Anything else?

15        A.    As far as what?

16        Q.    As far as anything else that you did to

17     finalize the loan.

18        A.    That's usually the only things that they

19     request.

20        Q.    How did you find out GM Financial didn't

21     approve Ms. Barrios' loan application?

22        A.    What do you mean how did I find out?  She was

23     approved initially.

24        Q.    If Ms. Barrios was approved initially, why did

25     the dealer cancel the contract?

1    A.   Because the bank came back and told us that on

2  her tax 4506(c) showed up that she did not claim an

3  income.

4    Q.   And what actions did you take -- I'm sorry.

5  The bank came back and told you this.  How did the bank

6  tell you this?

7    A.   They communicated through our web portal.

8    Q.   Did anybody call you from the bank directly?

9    A.   May have.  I don't remember and I don't

10  recall.

11    Q.   Is it typical for the bank to call you or is

12  it typical for the bank to put notes into the portal?

13          MR. SHIN:  Objection.  Incomplete

14  hypothetical.  Overbroad.  Vague and ambiguous.  Calls

15  for speculation.

16          THE WITNESS:  As far as communication, it can

17  be done by both.

18  BY MS. GUREVICH:

19    Q.   What did you do after the bank told you that

20  Ms. Barrios' loan application wasn't going to go

21  through or they couldn't finance it?

22          MR. SHIN:  Objection.  Vague, ambiguous,

23  overbroad.

24          THE WITNESS:  At that point, try to call her

25  up and say what happened.

```
 1   STATE OF CALIFORNIA       )

 2   COUNTY OF LOS ANGELES    )  ss.

 3

 4           I, CLAUDIA BADANO, C.S.R. No. 8974, in and for

 5   the State of California, do hereby certify:

 6           That, prior to being examined, the witness

 7   named in the foregoing deposition was by me duly sworn

 8   to testify the truth, the whole truth and nothing but

 9   the truth;

10           That said deposition was taken down by me in

11   shorthand at the time and place therein named, and

12   thereafter reduced to typewriting under my direction,

13   and the same is a true, correct and complete transcript

14   of said proceedings;

15           I further certify that I am not interested in

16   the event of the action.

17           Witness my hand this 9th day of October,

18   2024.

19

20

21                      _____

22                      Certified Shorthand

23                      Reporter for the

24                      State of California

25
```

# EXHIBIT "E"

# Deposition Transcript

Case Number: 2:23-cv-10476
Date: December 19, 2024

In the matter of:

## GABRIELA STEPHANIE BARRIOS v ANTELOPE CHEVROLET, et al.

# Michael Gelardo

**CERTIFIED COPY**

Reported by:
Grace Chung

Steno
Official Reporters

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: Firm #108F

```
 1                    UNITED STATES DISTRICT COURT
 2          CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
 3
      GABRIELA STEPHANIE BARRIOS,            )
 4                                           )
                  Plaintiff,                 )
 5                                           )
      VS.                                    )
 6                                           )   Case No. 2:23-cv-10476
      ANTELOPE CHEVROLET, LOS ANGELES        )
 7    SHERIFF'S DEPARTMENT, and OFFICERS     )
      1-10, in their official capacities,    )
 8    inclusive,                             )
                                             )
 9                  Defendants.              )
      _____
10
11
12          VIDEOTAPED DEPOSITION OF MICHAEL GELARDO
13                      APPEARING REMOTELY
14                 Thursday, December 19, 2024
15
16
17    REPORTED BY:
18    GRACE CHUNG, CSR No. 6246, RMR, CRR
19    APPEARING REMOTELY FROM IRVINE, CALIFORNIA
20    FILE NO.: 1343342
21
22
23
24
25
```

MICHAEL GELARDO
DECEMBER 19, 2024

JOB NO. 1343342

1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3

GABRIELA STEPHANIE BARRIOS,        )
4                                   )
              Plaintiff,            )
5                                   )
VS.                                 )
6                                   ) Case No.
ANTELOPE CHEVROLET, LOS ANGELES     ) 2:23-cv-10476
7  SHERIFF'S DEPARTMENT, and        )
OFFICERS 1-10, in their            )
8  official capacities, inclusive,  )
                                    )
9              Defendants.          )
_____

10

11

12

13

14          Videotaped Deposition of MICHAEL

15  GELARDO, taken on behalf of Plaintiff, beginning at

16  10:14 a.m. and ending at 3:56 p.m., on Tuesday,

17  December 17, 2024, before GRACE CHUNG, CSR No.

18  6246, RMR, CRR.

19

20

21

22

23

24

25

```
 1                    A P P E A R A N C E S
 2     (All appearances via videoconference.)
 4     For the Plaintiff:
 5     LAW OFFICE OF ANDRE L. VERDUN
       BY:  ANDRE VERDUN, ESQ.
 6     1777 North Ventura Avenue
       Ventura, California 93001
 7     (619) 880-0110
       andre@verdunlaw.com
 8
 9     For Defendant Antelope Chevrolet:
10     CTSC LAW
       BY:  JIWON MICHAEL SHIN, ESQ.
11     2601 Main Street
       Suite 800
12     Irvine, California 92614
       (949) 261-2872
13     mshin@ctsclaw.com
14
       For Defendant Los Angeles Sheriff's Department:
15
       KJAR, McKENNA & STOCKLAPER
16     BY:  MOLSHREE GUPTA, ESQ.
       841 Apollo Street
17     Suite 100
       El Segundo, California 90245
18     (424) 217-3026
       mgupta@kmslegal.com
19
20
21     Also Present:     STEPHANIE VASQUEZ, Videographer
22                       LAURA CHAROLET
23                       GABRIELA BARROS
24                       RONALD WILCOX
25                       YELENA GUREVICH
```

```
 1                    I N D E X

 2   WITNESS    EXAMINATION                              PAGE

 3   MICHAEL ANTHONY GELARDO

 4              BY MR. VERDUN                            8

 5              BY MR. SHIN                              190

 6

 7                       EXHIBITS

 8   NO.          DESCRIPTION                            PAGE

 9     Exhibit 13   Release of Solen or Embezzeled Property  87

10     Exhibit 5    Probable Cause Determination          107

11     Exhibit 38   14-11 - Vehicle Repossessions         108

12     Exhibit 11   Text messages                         132

13     Exhibit 10   County of Los Angeles Sheriff's       140
                    Department Incident Report
14
       Exhibit 24   Email from Jack Oh, with attachment   162
15

16

17              QUESTIONS INSTRUCTED NOT TO ANSWER

18                       PAGE   LINE

19                       99     17

20                       100    22

21                       123    10

22

23

24

25
```

01:43  1   that investigation?

01:43  2        A.    I don't remember if I contacted Nicole

01:43  3   McCracken via the phone or if I just simply went

01:43  4   over to AV Chevy.  But I had contacted Detective

01:44  5   Campbell for sure and informed him of what I had

01:44  6   and asked for his guidance.

01:44  7           Together, he and I ultimately responded to

01:44  8   the dealership, and we met with Nicole and another

01:44  9   gentleman.  I think it was the finance guy, the

01:44 10   finance manager there.

01:44 11        Q.    So how did you become aware of Nicole

01:44 12   McCracken?

01:44 13        A.    When I was doing the catalytic converter

01:44 14   stuff, prior to this incident, we would do

01:44 15   community events, and AV Chevy would allow us to

01:44 16   use the mechanic bay for our community relations

01:44 17   events for catalytic converter etching events, and

01:44 18   Nicole, I believe, is the general manager over

01:44 19   there at AV Chevy.

01:44 20        Q.    So you had that prior relationship through

01:44 21   those events?

01:44 22        A.    Just those events, yes.

01:44 23           MS. GUPTA:  Misstates testimony as to

01:44 24   "relationship."

01:44 25   BY MR. VERDUN:

MICHAEL GELARDO
DECEMBER 19, 2024

JOB NO. 1343342

02:05  1        Q.   To you, these weren't important; correct?

02:05  2        A.   That's correct.

02:05  3             MR. VERDUN:   So if we could just go to

02:05  4   page 3 of the document.

02:05  5        Q.   Are you able to see the full -- the full

02:06  6   first message that starts with "talked to Jack"?

02:06  7   Do you see that full message?

02:06  8        A.   Yes.

02:06  9        Q.   It's dated October 26, 2022?

02:06 10        A.   Yes.

02:06 11        Q.   It says "Talked to Jack.  He said he is

02:06 12   still waiting to hear from attorney.  He should

02:06 13   know this afternoon or tomorrow.  I'll keep you

02:06 14   posted."  Do you see that?

02:06 15        A.   Yes.

02:06 16        Q.   What's that conversation in reference to?

02:06 17        A.   So I had gone to AV Chevy initially when

02:06 18   the captain had informed me of this incident.   I

02:06 19   had spoken to Nicole and Jack at the time.   I

02:06 20   informed them that, based on what I was being told,

02:06 21   that I believed that the vehicle had been obtained

02:06 22   by way of fraudulent application and the way of

02:06 23   earnings, based on them telling me that the IRS

02:06 24   returned a sum of zero dollar earnings from

02:06 25   Ms. Barrios prior to the purchase.

02:07  1           So I said, "That's fine.  Based on what I
02:07  2  believe here, we can make this car a stolen vehicle
02:07  3  because that's what it is.  It was defrauded by way
02:07  4  of fraudulent application."
02:07  5           At that time, they told me that they were
02:07  6  unsure as to whether or not they wanted to proceed
02:07  7  with that.  And so they said they would let me know.
02:07  8  They were going to contact their attorneys at AV
02:07  9  Chevy.  I said, "Not a problem.  Let me know what you
02:07 10  guys decide that you want to do," and then I left.
02:07 11           And then she informed me that she spoke to
02:07 12  Jack.  She was waiting to hear back from the
02:07 13  attorney, and ultimately they did hear back from the
02:07 14  attorneys, which told them to go ahead and proceed
02:07 15  with that vehicle as a stolen vehicle.
02:07 16      Q.   And the timestamp on this text message is
02:07 17  October 26, 2022; correct?
02:07 18      A.   Yes.
02:07 19      Q.   Do you have any reason to not believe that
02:07 20  this text message was sent on October 26 of 2022?
02:07 21      A.   No.
02:07 22      Q.   So the visit and the conversation you just
02:07 23  referred to, that happened before October 26 of
02:08 24  2022; correct?
02:08 25      A.   That's correct.

02:09  1    information about what it is they were calling you

02:09  2    there to investigate; correct?

02:09  3         A.   Yes.

02:09  4         Q.   And the fact that you received information

02:09  5    on that date is not in your report; correct?

02:09  6         A.   Not correct.  That information is in the

02:10  7    report.

02:10  8         Q.   That you had those conversations prior to

02:10  9    October 26?

02:10 10         A.   I'm very confused.  The conversation that

02:10 11    I had prior to October 26 was them explaining to me

02:10 12    what the crime was.  Those facts are in this

02:10 13    report.  Whether they are dated on this date they

02:10 14    told me this, I went back on this date, no.  That's

02:10 15    not outlined that way.  The facts of the case are

02:10 16    what they told me and documented in that report.

02:10 17         Q.   Did you review any documents during the

02:10 18    first visit to the dealership?

02:10 19         A.   I believe I looked through the credit

02:10 20    application they provided me with, yes.

02:10 21         Q.   What else did you look at?

02:10 22         A.   I don't remember.  I don't recall.

02:10 23         Q.   You didn't look at the sales contract?

02:10 24         A.   I believe I did.  I think there was a

02:10 25    sales contract and a credit application, yes.

MICHAEL GELARDO
DECEMBER 19, 2024

JOB NO. 1343342

| | | |
|---|---|---|
| 02:10 | 1 | Q. Did you look at the bank statements? |
| 02:10 | 2 | A. Yes. |
| 02:10 | 3 | Q. You saw the bank statements that showed |
| 02:11 | 4 | income? |
| 02:11 | 5 | A. Yes. |
| 02:11 | 6 | Q. You saw that the bank statements had |
| 02:11 | 7 | Ms. Barrios's name on it? |
| 02:11 | 8 | A. Yes. |
| 02:11 | 9 | Q. Did you look at the emails that were sent |
| 02:11 | 10 | to Ms. Barrios? |
| 02:11 | 11 | A. I may have. I don't recall. |
| 02:11 | 12 | Q. Did you look at the letters that were sent |
| 02:11 | 13 | to Ms. Barrios? |
| 02:11 | 14 | A. I believe I did, yes. |
| 02:11 | 15 | Q. And you looked at the text messages that |
| 02:11 | 16 | were sent to Ms. Barrios? |
| 02:11 | 17 | A. I don't know if I looked at text messages. |
| 02:11 | 18 | I know they provided me with a call log for -- I |
| 02:11 | 19 | think they made 21 attempts to contact her, |
| 02:11 | 20 | something to that effect. |
| 02:11 | 21 | Q. And they also sent her letters? |
| 02:11 | 22 | A. I do believe they sent letters as well, |
| 02:11 | 23 | yes. |
| 02:11 | 24 | Q. And you read those letters? |
| 02:11 | 25 | A. I don't know if I read them or if they |

02:49  1              MR. SHIN:  Objection.  Misstates evidence

02:49  2    with respect to "bank records showing income."

02:49  3    BY MR. VERDUN:

02:49  4        Q.   You can answer.

02:49  5        A.   I don't -- I don't even -- I don't know.

02:49  6    Could you repeat the question, please?  I'm sorry.

02:49  7        Q.   Yeah.  Did it raise any questions in your

02:49  8    mind that the dealership -- what the -- about what

02:49  9    the dealership was saying -- I'm going to repeat it

02:49  10   myself.

02:49  11             Did it raise any questions in your mind

02:49  12   that the dealership stated that her income came

02:50  13   back as zero when you had bank records in her name

02:50  14   with deposits on it?

02:50  15       A.   No.  I guess, not really, no.

02:50  16       Q.   Okay.  And so that wasn't something that

02:50  17   you felt was important to investigate before you

02:50  18   effectuated an arrest?

02:50  19       A.   I did, and, hence, I tried to call

02:50  20   Ms. Barrios to figure out what was going on, as did

02:50  21   Antelope Valley Chevy.

02:50  22       Q.   Were you there when Antelope Valley Chevy

02:50  23   tried to contact Ms. Barrios?

02:50  24       A.   No.

02:50  25       Q.   And you said that you tried to.  How many

MICHAEL GELARDO
DECEMBER 19, 2024

JOB NO. 1343342

| | | |
|---|---|---|
| 02:50 | 1 | times did you try to contact Ms. Barrios? |
| 02:50 | 2 | A.   I don't recall. |
| 02:50 | 3 | Q.   How did you try to contact her? |
| 02:50 | 4 | A.   I tried to contact her by way of phone, |
| 02:50 | 5 | and I tried to contact her at the residence that |
| 02:50 | 6 | was provided to me. |
| 02:50 | 7 | Q.   What happened when you went to the |
| 02:50 | 8 | residence? |
| 02:50 | 9 | A.   A patrol deputy actually went to the |
| 02:50 | 10 | residence, and there was nobody there. |
| 02:50 | 11 | Q.   Was a business card left? |
| 02:51 | 12 | A.   No, I don't believe so. |
| 02:51 | 13 | Q.   Was anything done at the residence to |
| 02:51 | 14 | alert anyone that you guys were desiring to speak |
| 02:51 | 15 | with Ms. Barrios? |
| 02:51 | 16 | A.   No. |
| 02:51 | 17 | MS. GUPTA:  Calls for speculation.  Lacks |
| 02:51 | 18 | foundation. |
| 02:51 | 19 | You can answer if you know. |
| 02:51 | 20 | A.   I am not certain. |
| 02:51 | 21 | BY MR. VERDUN: |
| 02:51 | 22 | Q.   And then you said that you -- was that |
| 02:51 | 23 | visit to her residence, was that a single event? |
| 02:51 | 24 | A.   I believe it was one time, yes -- |
| 02:51 | 25 | MS. GUPTA:  Calls for speculation.  Lacks |

MICHAEL GELARDO
DECEMBER 19, 2024

JOB NO. 1343342

02:51  1    foundation.

02:51  2              You can answer if you know.

02:51  3         A.   I believe it was one time.

02:51  4    BY MR. VERDUN:

02:51  5         Q.   Thank you.

02:51  6              And how many times did you try to call

02:51  7    her?

02:51  8              MS. GUPTA:  Asked and answered.

02:51  9         A.   I believe I tried to call her twice.  I

02:51  10   don't recall.

02:51  11   BY MR. VERDUN:

02:51  12        Q.   Which phone did you use?

02:51  13        A.   I might have used my desk phone at the

02:51  14   time.

02:51  15        Q.   Did you leave a voice message?

02:51  16        A.   I don't remember the voicemail allowing me

02:51  17   to leave a voice message.  If it did, I certainly

02:51  18   would have.

02:51  19        Q.   Did you send a text message?

02:52  20        A.   No.

02:52  21        Q.   Did you send an email?

02:52  22        A.   I didn't have an email address for her, I

02:52  23   don't believe.

02:52  24        Q.   Well, could you have gotten that from the

02:52  25   dealership?

03:00  1    the elements of the crime in their paragraph.

03:00  2         Q.   And that being that she falsified income

03:00  3    documents?

03:00  4         A.   Correct.  To deprive them of a vehicle.

03:00  5         Q.   But even by your own testimony, you

03:01  6    reviewed bank records showing deposits?

03:01  7         A.   Yes.

03:01  8         Q.   And you didn't contact the bank to

03:01  9    determine if those deposits were actually made;

03:01 10    right?

03:01 11         A.   No.

03:01 12         Q.   Yes?

03:01 13         A.   I did not contact the bank; that's

03:01 14    correct.

03:01 15         Q.   You didn't contact the bank to see if

03:01 16    those bank records were authentic?

03:01 17         A.   Correct.

03:01 18         Q.   You didn't contact GM to find out whether

03:01 19    or not they had any issue with financing the loan

03:01 20    that they made to the vehicle?

03:01 21         A.   That's correct.

03:01 22         Q.   You didn't contact the IRS to see if they,

03:01 23    in fact, had reported her income as zero?

03:01 24         A.   Correct.

03:01 25         Q.   But you still believe that, prior to them

MICHAEL GELARDO
DECEMBER 19, 2024

JOB NO. 1343342

03:01  1    telling her to return the vehicle on November 4th

03:01  2    of 2022, she had already committed the crime of

03:01  3    embezzlement?

03:01  4         A.    That's correct.

03:02  5         Q.    And you believe that your investigations

03:02  6    in this matter was complete?

03:02  7         A.    I believe it sufficed to the elements of

03:02  8    the crime that I ultimately attempted to charge her

03:02  9    with, yes.

03:02 10         Q.    Based on the evidence that you decided was

03:02 11    important?

03:02 12              MS. GUPTA:    Argumentative.    Calls for

03:02 13    expert opinion.    Calls for a legal conclusion.

03:02 14    Vague.    Overbroad.

03:02 15              MR. SHIN:    Join.

03:02 16         A.    Based on the evidence that was presented

03:02 17    to me.

03:02 18    BY MR. VERDUN:

03:02 19         Q.    And you didn't think it was important to

03:02 20    contact any third party to verify any of that

03:02 21    information before you decided to arrest somebody?

03:02 22         A.    I believe that I had the evidence required

03:02 23    to effect an arrest and probable cause to effect an

03:03 24    arrest.

03:03 25         Q.    Okay.    And the fact that they gave her to

MICHAEL GELARDO
DECEMBER 19, 2024

JOB NO. 1343342

03:03  1   November 4th to return the vehicle, that doesn't,

03:03  2   in any way, change your opinion as to that fact?

03:03  3        A.   It doesn't --

03:03  4             MS. GUPTA:  Objection -- sorry.

03:03  5             Objection.  Lacks foundation.  Misstates

03:03  6   facts in evidence.  Misstates prior testimony.  The

03:03  7   witness testified that he did not believe that he

03:03  8   had seen that document as of November 3rd, 2022.

03:03  9             You can answer.

03:03 10             MR. VERDUN:  I'm going to, once again,

03:03 11   caution against speaking objections.

03:03 12        Q.   You can answer.

03:03 13             MS. GUPTA:  Well, I would caution against

03:03 14   misrepresenting evidence, then.

03:03 15             Go ahead, Detective Gelardo.

03:03 16        A.   It does not change my opinion that a crime

03:03 17   had been committed prior to that date, no.

03:03 18   BY MR. VERDUN:

03:03 19        Q.   And it doesn't change your mind that

03:03 20   you've done a complete and accurate investigation?

03:03 21        A.   Sorry.  Did you say "and accurate" or

03:03 22   "inaccurate"?

03:03 23        Q.   I'm sorry.  I didn't mean to use the word

03:03 24   "accurate" at all in any sense of the term.  I

03:03 25   meant a full and complete investigation.

MICHAEL GELARDO
DECEMBER 19, 2024

JOB NO. 1343342

```
03:04  1        A.   No, it does not change my opinion.
03:04  2        Q.   Okay.  If you believe a crime was
03:04  3   committed, why did you wait until Antelope Valley
03:04  4   Chevrolet gave you the go-ahead to enter the
03:04  5   vehicle into the stolen vehicle database?
03:04  6        A.   A vehicle cannot be entered into the
03:04  7   stolen vehicle system database without the victim
03:04  8   signing that they, in fact, are reporting --
03:04  9             (Reporter interruption for clarification.)
03:04 10             (Miscellaneous comments.)
03:05 11        A.   The vehicle cannot be entered into the
03:05 12   stolen vehicle system without the victim signing
03:05 13   the CHP 180 listing it as stolen.
03:05 14   BY MR. VERDUN:
03:05 15        Q.   Without that, could you get a warrant for
03:05 16   Ms. Barrios's arrest?
03:05 17        A.    Not for a stolen vehicle, not if the
03:05 18   victim was unwilling to make it stolen, no -- or
03:05 19   I'm sorry, reported as stolen.
03:05 20        Q.   So if you believe that the elements of a
03:05 21   crime were committed, you cannot swear out an
03:05 22   arrest warrant and submit it to a judge for signing
03:05 23   without the person that is -- the victim of the
03:05 24   crime that you think was committed agreeing to it?
03:05 25             THE WITNESS:  Counsel, I apologize.  One
```

MICHAEL GELARDO
DECEMBER 19, 2024                                JOB NO. 1343342

| | | |
|---|---|---|
| 03:21 | 1 | Q.    Okay.  And was Ms. Barrios there? |
| 03:21 | 2 | A.    She was. |
| 03:21 | 3 | Q.    Where was she when you first arrived? |
| 03:21 | 4 | A.    She was in the rear of a radio car. |
| 03:21 | 5 | Q.    Already in handcuffs? |
| 03:21 | 6 | A.    She was. |
| 03:21 | 7 | Q.    Do you know who the arresting officer was? |
| 03:21 | 8 | A.    I believe it was John Torsney. |
| 03:21 | 9 | Q.    Do you know if John Torsney did any |
| 03:21 | 10 | investigation independent of the investigation that |
| 03:21 | 11 | you carried out? |
| 03:21 | 12 |          MS. GUPTA:  Calls for speculation. |
| 03:21 | 13 | A.    I do not know. |
| 03:21 | 14 | BY MR. VERDUN: |
| 03:22 | 15 | Q.    When you got to the location of the |
| 03:22 | 16 | vehicle, was anyone from Antelope Valley Chevrolet |
| 03:22 | 17 | there? |
| 03:22 | 18 | A.    No. |
| 03:22 | 19 | Q.    At any point while you were at the scene |
| 03:22 | 20 | at Sierra Highway and Avenue K, did anyone from |
| 03:22 | 21 | Antelope Valley Chevrolet arrive? |
| 03:22 | 22 | A.    No. |
| 03:22 | 23 | Q.    What -- go ahead. |
| 03:22 | 24 | A.    Not to my knowledge. |
| 03:22 | 25 | Q.    What happened with the vehicle after it |

03:22  1   was recovered?

03:22  2       A.   It was taken out of the stolen vehicle

03:22  3   system, and then I returned it to Antelope Valley

03:22  4   Chevy.

03:22  5       Q.   Who took it out of the stolen vehicle

03:22  6   system?

03:22  7       A.   I don't remember.

03:22  8       Q.   Would that have been processing paperwork?

03:23  9       A.   No.

03:23 10       Q.   How would you remove that from the stolen

03:23 11   vehicle database?  How does it happen?

03:23 12       A.   You would call the secretary at the

03:23 13   station and say, "Hey, I want to enter a recovery."

03:23 14   They type in the recovery, and then it's done.

03:23 15       Q.   Got it.  And then you said the vehicle was

03:23 16   returned to the dealership by yourself?

03:23 17       A.   Yes.

03:23 18       Q.   When did that happen?

03:23 19       A.   Immediately after the incident.

03:23 20       Q.   Did you call them before you arrived?

03:23 21       A.   I don't remember.  I don't think I did.  I

03:23 22   think I just drove it over there and parked it over

03:23 23   by the shop or the garage, the maintenance garage.

03:23 24       Q.   Who did you talk to when you got there?

03:23 25       A.   I don't remember if I talked to Nicole or

1    STATE OF CALIFORNIA        )
                                ) ss.
2    COUNTY OF LOS ANGELES      )

3

4            I, GRACE CHUNG, RMR, CRR, CSR No. 6246, a

5    Certified Shorthand Reporter in and for the County

6    of Los Angeles, the State of California, do hereby

7    certify:

8            That, prior to being examined, the witness

9    named in the foregoing deposition was by me duly

10   sworn to testify the truth, the whole truth, and

11   nothing but the truth;

12           That said deposition was taken down by me

13   in shorthand at the time and place therein named,

14   and thereafter reduced to typewriting by

15   computer-aided transcription under my direction;

16           That the dismantling, unsealing, or

17   unbinding of the original transcript will render

18   the reporter's certificate null and void.

19           I further certify that I am not interested

20   in the event of the action.

21   In witness whereof, I have hereunto subscribed my

22   name.

23   Dated December 27, 2024

24                          *Grace Chung*

25                          GRACE CHUNG, CSR NO. 6246
                            RMR, CRR, CLR

# EXHIBIT "F"

# RESERVED

# EXHIBIT "G"

# Deposition Transcript

Case Number: 2:23-cv-10476
Date: October 3, 2024

In the matter of:

# BARRIOS v ANTELOPE CHEVROLET, et al.

# Officer Jonathan Torsney

Reported by:
Pamela C. Herrmann



CERTIFIED COPY

Steno
Official Reporters

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: Firm #108F

OFFICER JONATHAN TORSNEY
OCTOBER 03, 2024

JOB NO. 1208907

```
1              UNITED STATES DISTRICT COURT

2   CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3

4   GABRIELA STEPHANIE BARRIOS, )  Case 2:23-cv-10476
                                 )
5                  Plaintiff,    )
                                 )
6     vs.                        )
     ANTELOPE CHEVROLET, LOS     )
7    ANGELES SHERIFF'S           )
     DEPARTMENT, and OFFICERS    )
8    1-10, in their official     )
     capacities, inclusive,      )
9                  Defendants.   )

10

11

12

13

14

15              REMOTE VIDEO DEPOSITION OF

16   OFFICER JONATHAN TORSNEY, located in California,

17   commencing at 10:15 AM Pacific time on Thursday,

18   October 3, 2024, before PAMELA C. HERRMANN,

19   Registered Professional Reporter and Notary

20   Public.

21

22

23

24

25
```

```
 1    APPEARANCES VIA STENO CONNECT:

 2

 3    FOR THE PLAINTIFF:

 4             LAW OFFICE OF ANDRE L. VERDUN
               BY:  ANDRE VERDUN, ESQ.
 5                  LAURA CHAROLET
                    JESSIE VERDUN
 6                  YELENA GUREVICH
                    401 West A Street
 7                  San Diego, California  92101
                    619-880-0110
 8                  andre@verdunlaw.com

 9

10    FOR THE DEFENDANT LOS ANGELES SHERIFF'S DEPARTMENT

11                  KJAR, McKENNA & STOCKALPER
                    BY:  MOLSHREE GUPTA, ESQ.
12                  841 Apollo Street
                    100 El Segundo, California  90245
13                  424-217-3026
                    mgupta@kmslegal.com
14

15    FOR THE DEFENDANT ANTELOPE CHEVROLET:

16                  Callahan Thompson Sherman & Caudill
                    BY:  JIWON MICHAEL SHIN, ESQ.
17                  2601 Main Street
                    Irvine, California  92614
18                  949-261-6060
                    mshin@CTSClaw.com
19

20

21

22

23

24

25
```

OFFICER JONATHAN TORSNEY
OCTOBER 03, 2024

JOB NO. 1208907

```
 1                          INDEX

 2                         --oOo--

 3                                               PAGE

 4   DIRECT EXAMINATION:  ATTORNEY VERDUN           6

 5

 6

 7                         --oOo--

 8

 9   EXHIBITS

10   EXHIBIT         DESCRIPTION              PAGE

11   Exhibit 16     CONFIDENTIAL - PURSUANT TO      78
                    STIPULATED PROTECTIVE ORDER,
12                  County of Los Angeles
                    Sheriff's Department Incident
13                  Report dated 11/2/22

14   Exhibit 17     CONFIDENTIAL - PURSUANT TO     127
                    STIPULATED PROTECTIVE ORDER,
15                  State of California Department
                    of California Highway Patrol,
16                  Vehicle Report STOLEN, dated
                    11/2/22
17
     Exhibit 19     Manual of Policy and          166
18                  Procedures: 5-04/180.40

19   Exhibit 20     (Proposed by Attorney Gupta    179
                    to be renumbered as Exhibit 14)
20                  CONFIDENTIAL - PURSUANT TO
                    STIPULATED PROTECTIVE ORDER,
21                  Superior Court of California,
                    County of Los Angeles, Probable
22                  Cause Determination, Bates
                    stamped COLA 00050
23

24   CERTIFICATE OF COURT REPORTER               221

25
```

1    specifically like my notebook?

2    BY MR. VERDUN:

3         Q    Yeah.

4         A    I try to hold onto them for a

5    little bit; I don't necessarily have an

6    approximation of how long they're held onto for.

7    BY MR. VERDUN:

8         Q    And eventually they're destroyed?

9         A    Yeah, eventually shred bin or

10   whatnot.

11        Q    Okay.  Is there any departmental

12   policies as to retaining handwritten notes or

13   other things relied on in order to write a report?

14             MS. GUPTA:  Calls for speculation,

15   lacks foundation, seeks 30(b)(6) testimony from

16   percipient witness.  You can answer.

17             THE WITNESS:  I'm not sure.

18   BY MR. VERDUN:

19        Q    Detective Torsney, are you familiar

20   with the facts of November 3, 2022 for which we're

21   here for today?

22        A    Am I familiar with it?

23        Q    Yeah; do you recall the facts

24   surrounding Ms. Barrios' arrest?

25        A    It was over almost two years ago

OFFICER JONATHAN TORSNEY                              JOB NO. 1208907
OCTOBER 03, 2024

 1    but I'm fairly familiar with it.

 2            Q     Okay.  Are you familiar with it

 3    because you have reviewed documents and other

 4    things in order to refresh your memory?

 5            A     I have reviewed some documents.

 6            Q     What have you reviewed in order to

 7    refresh your memory?

 8            A     The reports that were written.

 9            Q     Which reports did you review?

10            A     My supplemental report.

11            Q     What else?

12            A     I believe the CHP180s.

13            Q     You said CHP180s with an S; was

14    there more than one?

15            A     There's a stolen and a recovered

16    180.

17            Q     You reviewed both?

18            A     I did.

19            Q     What else did you review?

20            A     Parts of the body-worn camera from

21    the traffic stop.

22            Q     Which body-worn camera did you

23    review?

24            A     Mine.

25            Q     Who else's?

OFFICER JONATHAN TORSNEY
OCTOBER 03, 2024

JOB NO. 1208907

```
 1    BY MR. VERDUN:

 2            Q      Anyone else?

 3            A      I don't recall.

 4            Q      Did you speak to any of the

 5    complaining witnesses?

 6                   MS. GUPTA:  Asked and answered.

 7    You can answer again.

 8                   THE WITNESS:  Are you speaking of

 9    like Antelope Valley Chevy people?

10    BY MR. VERDUN:

11            Q      Yeah, or anyone else between the

12    time that you detained Ms. Barrios based on

13    reasonable suspicion and the time that you

14    effectuated your probable cause arrest?

15            A      I mean --

16                   MR. SHIN:  Vague, ambiguous, and

17    overbroad.

18                   MS. GUPTA:  And asked and answered.

19    You can answer.

20                   THE WITNESS:  Yeah, I mean, like I

21    said, it's a very broad question.  I spoke to

22    multiple people, I spoke to Barrios, Deputies at

23    the scene, I spoke to her kid that was in the car,

24    to Detective Gelardo, I mean there's -- but as

25    specifically to who --
```

OFFICER JONATHAN TORSNEY                                    JOB NO. 1208907
OCTOBER 03, 2024

```
 1   BY MR. VERDUN:

 2            Q     Well --

 3            A     I don't understand.

 4            Q     -- was the Detectives and Deputies

 5   you talked to, were those complaining witnesses?

 6                  MS. GUPTA:  Argumentative.

 7                  MR. VERDUN:  Just a question.

 8                  MS. GUPTA:  Same objection.

 9                  THE WITNESS:  Well, when you say

10   complaining witnesses, are you meaning the -- from

11   what I understood the victims of this crime at the

12   time, is that --

13   BY MR. VERDUN:

14            Q     If you prefer to use the word

15   victims, I guess we can use that word; I think

16   it's presumptuous, but if that makes sense to you.

17   Did you speak to any victims between the time that

18   you first detained Ms. Barrios and the time that

19   you drove her over to the police station?

20                  MS. GUPTA:  I'll just state for the

21   record that counsel is actively arguing with the

22   witness.  You can answer, Detective Torsney.

23                  THE WITNESS:  From what I recall, I

24   don't remember speaking to any victims at Antelope

25   Valley Chevy at the time.
```

OFFICER JONATHAN TORSNEY                          JOB NO. 1208907
OCTOBER 03, 2024

```
 1              MS. GUPTA:  Argumentative, calls
 2    for a legal conclusion, calls for expert opinion,
 3    incomplete hypothetical.  You can answer.
 4              THE WITNESS:  Based on the
 5    information that I had from Detective Gelardo
 6    indicating that that vehicle was obtained
 7    fraudulently, therefore stolen, from Antelope
 8    Valley Chevy, it did not matter if she was the
 9    registered owner because it was obtained
10    fraudulently.
11    BY MR. VERDUN:
12         Q    And you relied on Detective
13    Gelardo's statement that it was stolen as your PC
14    to make the arrest, correct?
15              MS. GUPTA:  Misstates testimony.
16    You can answer.
17              THE WITNESS:  I relied on the fact
18    that there was a CHP108, and the information
19    provided by Detective Gelardo in his
20    investigation, and positively identifying the
21    suspect as the person who fraudulently obtained
22    and took that vehicle for the basis of my arrest.
23    BY MR. VERDUN:
24         Q    Thank you.  No other facts,
25    correct?
```

1    CERTIFICATE OF REPORTER

2

3         I, Pamela C. Herrmann, NCRA Registered

4    Professional Reporter, do hereby declare:

5         That prior to being examined, the witness

6    named in the foregoing deposition was by me duly

7    sworn pursuant to Section 30(f)(1) of the Federal

8    Rules of Civil Procedure and the deposition is a

9    true record of the testimony given by the witness.

10        That said deposition was taken down by me

11   in shorthand at the time and place therein named

12   and thereafter reduced to text under my direction.

13        No request was made that the transcript

14   be reviewed pursuant to Section 30(e) of the

15   Federal Rules of Civil Procedure.

16        I further declare that I have no interest

17   in the event or the action.

18        I declare under penalty of perjury under

19   the laws of the United States of America that the

20   foregoing is true and correct.

21        Witness my hand this 4th day of

22   October, 2024.

23        *Pamela C. Herrmann*
          Pamela C. Herrmann
24        RPR 13819
          Delaware Notary 20200930000010

25

**EXHIBIT "H"**

# Deposition Transcript

Case Number: 2:23-cv-10476
Date: April 10, 2025

In the matter of:

# GABRIELA BARRIOS v ANTELOPE CHEVROLET, et al.

# Detective Rowell Quemuel - PMK

**CERTIFIED COPY**

Reported by:
Lynette L. Chase



Steno
Official Reporters

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: Firm #108F

```
 1              UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3     _____

 4     GABRIELA STEPHANIE BARRIOS,        :

 5              Plaintiff,                :

 6     v.                                 :  Case No.:

 7     ANTELOPE CHEVROLET, LOS ANGELES:  2:23-cv-10476

 8     SHERIFF'S DEPARTMENT, and          :

 9     OFFICER'S 1-10 in their            :

10     official capacities, inclusive,:

11              Defendants.               :
       _____

12

13

14

15

16              REMOTE VIDEO DEPOSITION OF DETECTIVE ROWELL

17     QUEMUEL, commencing at 10:06 A.M. PST, on THURSDAY, APRIL

18     10, 2025, before LYNETTE L. CHASE, Notary Public in and for

19     the State of New York.

20

21

22

23

24

25
                         STENO.COM
```

DETECTIVE ROWELL QUEMUEL - PMK                                    JOB NO. 1571357
APRIL 10, 2025

```
 1   APPEARANCES VIA ZOOM:

 2

 3   FOR THE PLAINTIFF GABRIELA STEPHANIE BARRIOS:

 4              LAW OFFICE OF ANDRE L. VERDUN

 5              BY:  ANDRE L. VERDUN, ESQUIRE

 6              1777 North Ventura Avenue

 7              Ventura, CA 93001

 8              866-880-4732

 9              andre@verdunlaw.com

10

11   -and-

12

13              YG LEGAL FIRM

14              BY:  YELENA GUREVICH, ESQUIRE

15              3940 Laurel Canyon Boulevard

16              Suite 800

17              Studio City, CA 91604

18              (213) 534-7769

19              atty@yglegalfirm.com

20

21

22

23

24

25
                         STENO.COM
```

DETECTIVE ROWELL QUEMUEL - PMK                          JOB NO. 1571357
APRIL 10, 2025

```
1    APPEARANCES VIA ZOOM:   (Continued)

2

3    FOR THE DEFENDANT ANTELOPE CHEVROLET:

4              CALLAHAN THOMPSON SHERMAN & CAUDILL, LLP

5              BY:  JIWON MICHAEL SHIN, ESQUIRE

6              2601 Main Street

7              Suite 800

8              Irvine, CA 92614

9              949-261-2872

10             mshin@ctsclaw.com

11

12   FOR THE DEFENDANTS LOS ANGELES SHERIFF'S DEPARTMENT, AND

13   OFFICER'S 1-10 IN THEIR OFFICIAL CAPACITIES, INCLUSIVE:

14             KJAR, MCKENNA & STOCKALPER, LLP

15             BY:  MOLSHREE GUPTA, ESQUIRE

16             841 Apollo Street

17             Suite 100

18             El Segundo, California 90245

19             (424) 217-3026

20             mgupta@kmslegal.com

21

22   OTHER APPEARANCES:

23   LAURA CHAROLET - PARALEGAL, LAW OFFICE OF ANDRE L. VERDUN

24                        ---oOo---

25
                          STENO.COM
```

```
 1                              INDEX

 2                            ---oOo---
                                                           PAGE
 3    DIRECT EXAMINATION:   ATTORNEY VERDUN                   6
      DIRECT EXAMINATION:   ATTORNEY GUPTA                   72
 4
      CROSS-EXAMINATION :   ATTORNEY VERDUN                  73
 5

 6                            ---oOo---

 7    EXHIBITS

 8    EXHIBIT    DESCRIPTION                                 PAGE

 9    EXHIBIT 19 MANUAL OF POLICY AND PROCEDURES              50
                 5-04/180.40 RELEASE OF STOLEN OR
10               EMBEZZLED PROPERTY
                 3 Pages
11
      EXHIBIT 38 FOSS NEWSLETTERS                             66
12               14-11 VEHICLE REPOSSESSIONS
                 BATES-STAMPED COLA 00109-00111
13               3 Pages

14    EXHIBIT 53 DISPUTES INVOLVING REPOSSESSION              46
                 8 Pages
15                            ---oOo---

16

17

18

19

20

21

22

23

24

25
                            STENO.COM
```

DETECTIVE ROWELL QUEMUEL - PMK                                    JOB NO. 1571357
APRIL 10, 2025

1       Q     Must an officer have probable cause to believe

2    that a crime has been committed before they can complete a

3    CHP 180?

4       A     Yes.

5       Q     So before a CHP 180 can be completed the

6    reporting police officer -- let me be more specific.  The

7    reporting deputy would have to have probable cause based on

8    their investigation that a crime has actually been

9    committed, correct?

10       A     Correct.

11       Q     So if an officer does not have probable cause

12    they should not complete a CHP 180; is that correct?

13       A     Correct.

14       Q     So if an LA sheriff deputy is called to the -- a

15    dispute between a husband and wife who are both jointly the

16    owners of a vehicle and one says the other stole the

17    vehicle, with just those facts would the sheriff's

18    officer -- would it be proper for them to complete a

19    CHP 180?

20            MS. GUPTA:  Incomplete hypothetical.

21            You can answer.

22       A     I don't know if it would be proper, but I know

23    that it has been done in the past.

24       Q     Even with both of the spouses are the registered

25    owner of that vehicle?

                         STENO.COM

```
 1              CERTIFICATE OF REPORTER

 2                   ---oOo---

 3     I, the undersigned, being empowered to administer oaths

 4  and affirmations remotely, do hereby certify:

 5          That the foregoing proceedings were taken remotely

 6  before me at the time and place herein set forth; that any

 7  witness in the foregoing proceedings, prior to testifying,

 8  were placed under oath; that a verbatim record of the

 9  proceedings was made by me using machine shorthand which was

10  thereafter transcribed under my direction; further, that the

11  foregoing is an accurate transcription thereof.

12          I further certify that I am neither financially

13  interested in the action nor a relative or employee of any

14  attorney or any of the parties.

15          Further, that if the foregoing pertains to the

16  original transcript of a deposition in a Federal Case,

17  before completion of the proceedings, review of the

18  transcript [ ] was [ ] was not requested.

19     IN WITNESS WHEREOF, I have this date subscribed my name.

20

21  DATED:  MAY 1, 2025         _____

22                                  Lynette L. Chase

23

24

25
```

# EXHIBIT "I"



1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

10

11   GABRIELA STEPHANIE BARRIOS,        Case No.:   2:23-cv-10476-AB-JC

12                   Plaintiff,

13          v.                          **DECLARATION OF NICOLE
                                        MCCRACKEN**
14   ANTELOPE CHEVROLET, LOS
     ANGELES SHERIFF'S
15   DEPARTMENT, and OFFICERS 1-10,
     in their official capacities, inclusive,
16
                     Defendants.
17
18
19
20
21
22          I, Nicole McCracken, declare as follows:

23          1.      I am an employee of ANTELOPE VALLEY CHEVROLET, INC.

24   ("AVC"), an auto dealership located in Lancaster, California. The facts contained

25   herein are within my own personal knowledge and if called upon to testify, I could

26   and would competently testify thereto.

27   //

28   //

                                        -1-
                        DECLARATION OF NICOLE MCCRACKEN

2.      In and around late-October of 2022, I contacted a deputy with the Los Angeles County Sheriff's Department ("LASD") to report an incident involving Plaintiff, Gabriela Stephanie Barrios. We discussed AVC's belief that Ms. Barrios provided false information in her credit application to purchase a vehicle from AVC; that AVC's belief was based on discrepancies found by GM Financial between the amount of income Ms. Barrios represented in her credit application and the amount she reported to the IRS; that Ms. Barrios took possession of the vehicle and did not respond to AVC's numerous attempts to address those discrepancies; and that AVC wanted to continue those efforts before it decides to file a police report.

3.      On October 26, 2022, AVC was not ready to file a police report because it was still trying to contact Ms. Barrios to assist with the loan process. I sent a text message to the deputy informing him that Jack Oh, AVC's General Manager, should know by tomorrow.

4.      On October 27, 2022, AVC still was not ready to file a police report because Jack wanted to see if Ms. Barrios' mother could co-sign for the vehicle purchase. I sent a text message to the deputy that day, stating I would keep him posted.

5.      On November 1, 2022, Ms. Barrios represented to AVC that she will not return the vehicle. As a result, Jack was ready to proceed with filing a police report. I sent a text message to the deputy that day, stating AVC wants to move forward and agreeing to meet with the deputies the following day.

6.      On November 2, 2022, LASD deputies came to AVC's dealership. AVC signed a CHP 180 Vehicle Report regarding Ms. Barrios. Per the deputies' request, I provided copies of documents related to Ms. Barrios' vehicle purchase and a log of AVC's attempts to contact Ms. Barrios.

7.      I never communicated with LASD deputies about formulating their action plan on how to repossess the vehicle from Ms. Barrios and have it returned to AVC. I never communicated with LASD deputies about any instructions, directions or plans about pulling over and arresting Ms. Barrios, or about taking the vehicle from

1  her. I was not present at the scene when LASD deputies arrested and detained Ms.
2  Barrios.

3      I declare under penalty of perjury under the laws of the State of California that
4  the foregoing is true and correct.

5      Executed this __ day of March, 2025, in _Lancaster_ , California,
6  County of _Los Angeles_ .

7
8                              _____
                               Declarant, Nicole McCracken
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-3-
DECLARATION OF NICOLE MCCRACKEN

# EXHIBIT "J"

# Deposition Transcript

Case Number: 2:23-cv-10476
Date: December 5, 2024

In the matter of:

# GABRIELA STEPHANIE BARRIOS v ANTELOPE CHEVROLET, et al.

# JACK OH - PMK

**CERTIFIED COPY**

Reported by:
CANDY NEWLAND



Steno
Official Reporters

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: Firm #108F

1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3                    --oOo--

4   GABRIELA STEPHANIE BARRIOS,      )
                                     )
5            Plaintiff,              )
                                     )
6    vs.                            ) CASE NO. 2:23-cv-10476
                                     )
7   ANTELOPE CHEVROLET, LOS          )
    ANGELES SHERIFF'S DEPARTMENT,    )
8   and OFFICERS 1-10, in their      )
    official capacities, inclusive, )
9                                    )
           Defendants.               )
10  _____)

11                   --oOo--

12         REMOTE VIDEOTAPED DEPOSITION OF

13                    JACK OH

14           THURSDAY, DECEMBER 5, 2024

15                   --oOo--

16

17

18

19

20

21

22

23

24        REPORTED BY:  CANDY NEWLAND, CSR 14256

25

```
 1                    A P P E A R A N C E S

 2
       FOR THE PLAINTIFF:
 3
               LAW OFFICE OF ANDRE L. VERDUN
 4             BY:  ANDRE VERDUN, Attorney at Law
               1777 N.  Ventura Avenue
 5             Ventura, CA 93001
               619.880.0110
 6             andre@verdunlaw.com

 7             WILCOX LAW FIRM, P.C.
               BY:  RONALD WILCOX, Attorney at Law
 8             2021 The Alameda, Suite 200
               San Jose, CA 95126-1138
 9             408.296.0400
               Ronaldwilcox@gmail.com
10
               YG LEGAL FIRM
11             BY:  YELENA GUREVICH, Attorney at Law
               12605 Ventura Blvd., Suite 1218
12             Studio City, CA 91604-2415
               213.534.7769
13             Attylenagurevich@gmail.com

14
       FOR THE DEFENDANT ANTELOPE VALLEY CHEVROLET:
15
               CALLAHAN THOMPSON SHERMAN & CAUDILL LLP
16             BY:  JIWON MICHAEL SHIN, Attorney at Law
               2601 Main Street, Suite 800
17             Irvine, CA 92614-4230
               949-261-2872
18             mshin@ctsclaw.com

19     FOR THE DEFENDANT LOS ANGELES SHERIFF'S DEPARTMENT:

20             KJAR, MCKENNA & STOCKALPER, LLP
               BY:  MOLSHREE GUPTA, Attorney at Law
21             841 Apollo Street, Suite 100
               El Segundo, CA 90245
22             424.217.3026
               mgupta@kmslegal.com
23

24

25
```

1                    A P P E A R A N C E S

2                         (continued)

3    ALSO PRESENT:

4            LAURA CHAROLET, Law Office of Andre L. Verdun
             LENDRYX BARNES, Legal Videographer
5            GABRIELA STEPHANIE BARRIOS, Plaintiff

6
                           --oOo--
7

8
                         I N D E X
9
     EXAMINATION BY:                                  PAGE
10
     Mr. Verdun                                        6
11
     Ms. Gupta                                        216
12
     Mr. Verdun                                       224
13
                           --oOo--
14

15                     E X H I B I T S

16                    (Previously marked)

17   EXHIBIT        DESCRIPTION                       PAGE
     NO.
18
     Exhibit 3    Deposit                             175
19
     Exhibit 6    Police Report                        46
20
     Exhibit 7    Letter                              135
21
     Exhibit 8    Log                                 191
22
     Exhibit 11   Text Message                        151
23
     Exhibit 17   (Confidential) Police Report         36
24

25                         --oOo--

JACK OH - PMK
DECEMBER 05, 2024

JOB NO. 1328579

```
 1              E X H I B I T S

 2
         EXHIBIT        DESCRIPTION                        PAGE
 3       NO.

 4       Exhibit 30   Notice of Deposition                 12

 5       Exhibit 31   Website printout                    106

 6       Exhibit 32   Check Recovery Agreement            111

 7       Exhibit 33   (revised to be Exhibit 7)            -

 8       Exhibit 34   Form Letter                         204

 9       Exhibit 35   Document, Bates AVC 154-843         205

10       Exhibit 36   Exhibit J, Bates AVC 844-854        205

11       Exhibit 37   Document, Bates AVC 154-196         209

12

13                       --oOo--

14

15

16

17

18

19

20

21

22

23

24

25
```

1    correct?

2        A    Yes.

3        Q    And you modify that as needed as issues arise;

4    correct?

10:45  5        A    Yes.

6        Q    And you don't need anyone's authority or

7    permission to do that; correct?

8        A    Most of the time, yes.

9        Q    So as far as how the day-to-day operations run,

10:46 10    you have the authority to create, modify, and terminate

11    policies based on how you expect your staff to do their

12    job; correct?

13        A    Yes.

14        Q    Okay.  Turning to the facts of why we're here,

10:46 15    you were the general manager during the time that

16    Ms. Barrios purchased the vehicle that we're here to talk

17    about today; correct?

18        A    Yes.

19        Q    At the time that the decision was made to get

10:47 20    the police involved, who made that decision?

21        A    I did.

22        Q    Okay.  And who contacted the police?

23        A    I'm not 100 percent sure on that.

24        Q    Did you do an investigation prior to today's

10:47 25    deposition to determine who contacted the police?

JACK OH - PMK
DECEMBER 05, 2024

JOB NO. 1328579

```
 1   it was that initially reached out to law enforcement?

 2       A    I mean, I did review a portion of the file.

 3   So...

 4       Q    Through that review were you able to determine

 5   who initially reached out to law enforcement?

 6       A    If I had to guess, it would be Nicole McCracken.

 7       Q    Did you review text messages between someone at

 8   the dealership and a detective?

 9       A    Yes.

10       Q    Do you know which phone was used to send those

11   text messages?

12       A    Nicole McCracken.

13       Q    That was her phone number, you said?

14       A    Nicole McCracken.  Yes.

15       Q    Okay.  And that's why you believe that she's the

16   one that sent the messages?

17       A    Yes.

18       Q    And do you know Nicole McCracken has any

19   personal relationship with anyone at the Los Angeles

20   Sheriff's Department?

21           MR. SHIN:  Objection.  Calls for speculation.

22   Lacks foundation.

23           THE WITNESS:  I have no --

24   BY MR. VERDUN:

25       Q    You can answer.
```

10:50
10:50
10:50

10:51

10:51

1          But other than Ms. Barrios, I don't remember

2     prior to 2022 -- other than a vehicle that was stolen

3     from us, I don't remember ever having to repo a car other

4     than Ms. Barrios.  I just don't recollect.

12:25  5     BY MR. VERDUN:

6          Q    When you said when a vehicle was stolen from

7     you, what are you referring to?

8          A    We've had people purchase a car under fake

9     information.

12:25 10        Q    And if someone purchased a vehicle with fake

11    information, that's stealing; correct?

12              MR. SHIN:  Objection.  Calls for speculation.

13    Lacks foundation.  Calls for a legal conclusion and

14    expert testimony.

12:26 15             THE WITNESS:  I don't know.  If you say so.  I

16    just want the car back.

17    BY MR. VERDUN:

18         Q    Well, I'm talking about in the situations where

19    somebody, you said, steals vehicles off your lot.  I'm

12:26 20   asking what you mean by that?

21         A    They did not steal the vehicle off the lot, they

22    used fake information.  So I guess if you call that

23    stolen, then I guess it's stolen.

24         Q    Do you believe Ms. Barrios stole the vehicle

12:26 25   from the dealership?

1           MR. SHIN:  Objection.  Calls for a legal opinion

2   and an expert opinion.

3           You can answer if you can.

4           THE WITNESS:  She used false information to

12:26   5   obtain my vehicle, yes.

6   BY MR. VERDUN:

7       Q    So you do think she stole the vehicle?

8           MR. SHIN:  Objection.  Calls for expert opinion.

9           THE WITNESS:  I don't know really the word

12:26   10  "stolen" is -- "stolen" to me is yes, using a gun and

11  then taking a car.  But she used false information to

12  take possession of our car.

13  BY MR. VERDUN:

14      Q    And what false information did she use?

12:27   15      A    She was not able to provide documents.  She

16  stopped all communication when we asked her for her

17  information.

18      Q    You thought it's the same as providing false

19  information?

12:27   20      A    She provided that she makes $60,000 of annual

21  income on the credit application.  She signed it.

22      Q    And she provided bank records to the dealership;

23  yes?

24      A    It assumed to be a bank record, but the bank

12:27   25  wanted a tax return to -- of $60,000 per annual, and that

1    was not able to -- that $60,000 was not verifiable.  In

2    fact, I believe, that's my recollection, was $0 verified.

3         Q    Well, she provided bank records; yes?

4         A    That's not what the bank wanted, but yes, she

12:27  5    did provide, I believe so, to be Wells Fargo.

6         Q    Okay.  And those bank records were consistent

7    with what she claimed; correct?

8              MR. SHIN:  Objection.  Assumes facts not in

9    evidence.  Calls for speculation.  Lacks foundation.

12:28 10   BY MR. VERDUN:

11        Q    You can answer.

12        A    What does the bank -- can you please specify the

13   question again, please?

14        Q    Sure.  You said that she stated on the

12:28 15   application that she made $60,000 a year.  I'm asking you

16   if that was consistent with what was shown on the bank

17   records that you received.

18             MR. SHIN:  Objection.  Calls for speculation.

19   Lacks foundation as to those bank records.

12:28 20   BY MR. VERDUN:

21        Q    You can answer.

22        A    I don't know.

23        Q    Did Antelope Valley Chevrolet ever actually ask

24   for the tax returns from Ms. Barrios directly?

12:28 25        A    She stopped answering all of our calls.  We

1    tried our best.  We made numerous amount of attempts to

2    call her.  In fact, salespeople, finance managers, sales

3    managers, we made numerous accounts.  She --

4        Q    Sure --

12:29  5        A    -- answering our calls.

6        Q    And during any of those calls or attempts to

7    contact her, did you ever ask for tax returns?

8            MR. SHIN:  -- could ask her something if she

9    didn't answer the calls?

12:29 10  BY MR. VERDUN:

11       Q    Okay.  Well, did you leave voice messages?

12           MR. SHIN:  Assumes facts not in evidence.

13    Argumentative.

14           THE WITNESS:  I don't -- I couldn't even hear

12:29 15  what he said.

16    BY MR. VERDUN:

17       Q    Did you send text messages?

18       A    I don't remember.

19       Q    Well, I'm -- let me rephrase that.

12:29 20           Did anyone from Antelope Valley Chevrolet send

21    text messages to Ms. Barrios?

22       A    I would think so, but I don't know.  I don't

23    know the answer.

24       Q    You didn't review any text messages that were

12:29 25  sent to Ms. Barrios in this case to prepare for your

```
 1   vehicle financed; correct?

 2       A    With the mom's help, yes.

 3       Q    And you told McCracken to "Tell the officer to

 4   hold on, we're trying to get the mother to help with

 5   financing"; correct?

 6       A    Yes.

 7       Q    And then when that didn't work, you then decided

 8   the tell McCracken to have the sheriff's department get

 9   involved; correct?

10            MR. SHIN:   Objection.   Misstates testimony.

11   There's more there.

12   BY MR. VERDUN:

13       Q    Is that correct?

14       A    So when mom said she has no intention of

15   bringing the car back, that's when everything else

16   failed.   Like, we did all the attempts.   We gave her so

17   many attempts through the past 30 days to bring the car

18   back.

19       Q    So my question is simply:   When the financing

20   did not work out with Barrios's mother, that's when you

21   decided to get the sheriffs involved; correct?

22            MR. SHIN:   Objection.   Misstates testimony.

23            THE WITNESS:   No.   When Ms. Barrios's mom said

24   that the daughter has no intention to bring the car back,

25   that's when we seeked [sic] out for the police assistance
```

JACK OH - PMK
DECEMBER 05, 2024

JOB NO. 1328579

```
 1   to see what legal stuff -- what law did she break and so

 2   forth.  I don't know the law.  I'm not a law expert.

 3   So...

 4   BY MR. VERDUN:

 5      Q    Well, I'm not asking you to be a law expert.

 6   I'm asking you if it's true that two days prior you told

 7   McCracken to tell law enforcement to hold off to see if

 8   you can get the vehicle financed, and then when you

 9   couldn't get the vehicle financed, that that's when you

10   reached out to law enforcement?

11      A    So --

12           MR. SHIN:  Objection.  Asked and answered.

13   Misstates testimony.

14           THE WITNESS:  So October 27th I sent out a

15   letter -- e-mail to Ms. Barrios stating that she breached

16   the contract.  Mom, based on that text message, reached

17   out and wanted to help out the daughter and cosign.

18           When the mom is not able to cosign, her -- I

19   don't know the reason exactly why.  We just -- you know,

20   she wasn't able to get approved -- we reached out.  We

21   still gave her time to bring the car back.  We reached

22   out around November 1st.  Mom clearly stated the daughter

23   is not bringing the car back.  That's when we reached out

24   we would need the talk to the sheriffs.

25           That's -- would be the timeline.
```

03:23  5
03:23  10
03:23  15
03:24  20
03:24  25

1    BY MR. VERDUN:

2        Q    So after the mother was not able to get

3    approved, that's when you decided to call the sheriffs?

4            MR. SHIN:   Objection.   Asked and answered.

03:24  5    Misstates testimony.

6            THE WITNESS:   No.   When the mom said on the --

7    on around November 1st, "My daughter will not bring the

8    car because the boyfriend is telling her not to," that's

9    when I had to -- told Nicole to, you know, "Let's meet

03:24  10   with the sheriffs."

11   BY MR. VERDUN:

12       Q    Okay.   So it was based on the fact that the mom

13   said the boyfriend told her not to bring the car; is that

14   what you're testifying to now?

03:25  15       A    You're summarizing it.   Yeah.   Yes.   That's --

16       Q    Okay.

17       A    -- that's how it...

18       Q    Ms. McCracken didn't put that in the text

19   message, though; right?

03:25  20       A    She didn't write the whole entire story like

21   that.   No.

22       Q    My question was:   Did Ms. McCracken put that

23   important fact into the text message?

24       A    I think she put really important things.

03:25  25   [Reading:]   Jack wants to move forward with that car.

```
 1    officer is referring to "the victim" on the police report

 2    they were referring to Antelope Valley Chevrolet;

 3    correct?

 4        A    Yes.

 5        Q    Okay.  And so when the officer wrote, "the

 6    victim," you understand that the officer's referring to

 7    Antelope Valley Chevrolet; correct?

 8        A    Yes.

 9        Q    And it says, [reading:]  The victim stated

10    between the indicated date and time Gabriela Barrios,

11    suspect, stole the above-listed vehicle by means of fraud

12    from the parking lot of the location.

13            Do you see that?

14        A    I do.

15        Q    Do you agree that Ms. Barrios stole the vehicle

16    from the parking lot?

17            MR. SHIN:  Objection.  Calls for a legal

18    conclusion.  Calls for expert opinion.  Lacks foundation.

19    BY MR. VERDUN:

20        Q    You can answer.

21        A    After talking to the sheriff, if that's what

22    they think producing false information to obtain my

23    vehicle is called "stoled" [sic], then I would have to

24    agree with them.

25            But I don't -- I'm not an expert at the word
```

1    "stoled."  She produced information that we could not

2    verify.  So to me that would be called false information.

3    And then we also tried to make numerous amount of

4    attempts to call her and -- and I'm assuming she didn't

03:35  5    return our call because -- due to guilt, I would assume.

6    I don't know.

7        Q    Do you have the belief that at the time that she

8    removed it from the parking lot she didn't have

9    permission?

03:35 10        A    Based on the information she gave us, yes.  That

11   if they're all true, yes, we got it -- we -- then that's

12   fine.  But she removed -- she took the car with the

13   information she gave us, which is not factual.  And

14   when we tried --

03:35 15        Q    So my question --

16        A    -- calls to her, she would not return calls.

17        Q    So my question is:  At the time that Ms. Barrios

18   took the vehicle off the lot, did she have permission?

19            MR. SHIN:  Objection.  Vague and ambiguous as to

03:35 20   time.  And also calls for an expert opinion.  Lacks

21   foundation.  Calls for a legal conclusion.

22   BY MR. VERDUN:

23        Q    You can answer.

24        A    Is this the statement the police wrote after

03:36 25   they left the dealership?  I don't -- I don't...

1    BY MS. GUPTA:

2        Q    Okay.  And was that also your opinion and

3    understanding in November of 2022?

4            MR. VERDUN:  Same objections.

05:08  5         THE WITNESS:  Yes.

6    BY MS. GUPTA:

7        Q    To the extent that police reports prepared in

8    association with the report of "stolen vehicle" contain

9    information that Ms. Barrios filled out paperwork under

05:09 10  penalty of perjury which contained false information, do

11   you have any understanding as to whether that would be

12   incorrect?

13       A    Say that -- it's a bit long.  Can you --

14           MR. SHIN:  Yeah.

05:09 15         THE WITNESS:  -- shorter?  I'm sorry.

16   BY MS. GUPTA:

17       Q    Okay.  I understand, it's later in the day.

18       A    Yeah.

19       Q    I'll try to ask simpler questions.  I completely

05:09 20  -- okay.

21           Let me ask you a simple question:  Do you have

22   any reason to believe that any police reports that were

23   prepared in response to Antelope Valley Chevrolet's

24   report associated with this vehicle -- any reason to

05:10 25  believe that they contained false or mistaken

JACK OH - PMK
DECEMBER 05, 2024

JOB NO. 1328579

```
 1    information?
 2        A    I'm not an expert opinion of when -- I'm not an
 3    expert on the terminology.  So that's why I called the
 4    police.  I don't really -- I mean, I just trust their
05:10  5   guidance.  Like, when I need help I call the police.  I
 6    can't -- I don't know how -- what they wrote, if
 7    that's -- like, for example, "stolen vehicle."  I don't
 8    know the exact definition of "stolen vehicle," other than
 9    someone taking it physically with physical harm.  That
05:11 10  would be called "stolen."  Or taking it without my
11    permission.  But --
12        Q    I understand.  And I think you testified earlier
13    that it was your understanding that Ms. Barrios had taken
14    the subject vehicle by providing false information;
05:11 15  right?
16        A    That is correct.  Yes.
17        Q    Okay.  So going back to my original question, do
18    you have any reason to believe that any of the reports
19    prepared by the Los Angeles County Sheriff's Department
05:11 20  contained any false or untrue information?
21        A    I don't think so.  I don't know.
22        Q    As far as you're aware, does Antelope Valley
23    Chevrolet have any financial relationship with the Los
24    Angeles County Sheriff's Department?
05:12 25       A    No.
```

1        REPORTER'S CERTIFICATE

2

3        I, CANDY NEWLAND, a Certified Shorthand

4   Reporter for the State of California, do hereby certify:

5        That I am a disinterested person herein;

6   that the witness, JACK OH, in the foregoing deposition,

7   was by me duly sworn to testify to the truth, the whole

8   truth, and nothing but the truth; that the deposition was

9   reported in shorthand by me, Candy Newland, a Certified

10  Shorthand Reporter of the State of California, and

11  thereafter transcribed into typewriting; that the

12  foregoing is a true and correct record of the testimony

13  given by the witness.

14        IN WITNESS WHEREOF, I hereby certify this

15  transcript dated this 16th day of December 2024, in

16  Solano County, California.

17

18

19

20  _____

21  CANDY NEWLAND, CSR NO. 14256

22

23

24

25

# EXHIBIT "K"

Thomas R. O'Connor (Bar No. 272325)
toconnor@ctsclaw.com
Jiwon Michael Shin (Bar No. 320504)
mshin@ctsclaw.com
**CALLAHAN, THOMPSON, SHERMAN**
 **& CAUDILL, LLP**
2601 Main Street, Suite 800
Irvine, California 92614
Tel: (949) 261-2872
Fax: (949) 261-6060

Attorneys for Defendant,
**ANTELOPE VALLEY CHEVROLET, INC.**
**(ERRONEOUSLY SUED AND SERVED HEREIN AS**
**ANTELOPE CHEVROLET, INC.)**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| GABRIELA STEPHANIE BARRIOS,<br><br>Plaintiff,<br><br>v.<br><br>ANTELOPE CHEVROLET, LOS ANGELES SHERIFF'S DEPARTMENT, and OFFICERS 1-10, in their official capacities, inclusive,<br><br>Defendants. | Case No.: 2:23-cv-10476-AB-JC<br><br>JUDGE: Hon. Andre Birotte, Jr.<br>DEPARTMENT: 7B<br>First Amended Complaint: 1/30/2024<br><br>**DECLARATION OF JACK OH IN SUPPORT OF DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION**<br><br>**Hearing Information:**<br>Date: 7/25/2025<br>Time: 1:30 PM<br>Dept.: 7B |

-1-

**DECLARATION OF JACK OH**

I, Jack Oh, declare as follows:

1.    I am the general manager of ANTELOPE VALLEY CHEVROLET, INC. ("AVC"), an auto dealership located in Lancaster, California. The statements contained herein are based on personal knowledge. I am familiar with each of the records identified herein which were prepared and or stored by personnel of AVC in the ordinary course of business. If called to testify to their contents, I would and could testify competently thereto.

2.    Attached hereto as **Exhibit M,** is a true and correct copy of the Retail Installment Sales Contract between Gabriella Barrios and AVC for the sale of the subject vehicle.

3.    Attached hereto as **Exhibit N,** is a true and correct copy of the credit application Ms. Barrios provided AVC in connection with her purchase of the subject vehicle, wherein she represented monthly income of $5000.

4.    Attached hereto as **Exhibit O,** is a true and correct copy of AVC employee Nicole McCracken's text messages with LASD detective Galardo.

5.    Attached hereto as **Exhibit P,** is a true and correct copy of GM Financial's funding decision and notes regarding Ms. Barrios' vehicle purchase. The record was printed from AVC's dealer account on GM Financial's web portal.

6.    Attached hereto as **Exhibit Q,** is a true and correct copy of AVC finance manager's notes related to Ms. Barrios and her purchase of the subject vehicle. The record was printed from AVC's CDK dealer management system program.

7.    Attached hereto as **Exhibit R**, is a true and correct copy of AVC finance manager's certified letter to Ms. Barrios dated 9/27/2022.

8.    Attached hereto as **Exhibit S**, are true and correct copies of AVC employee Nina Garcia's text messages to Ms. Barrios.

9.    Attached hereto as **Exhibit T**, is a true and correct copy of AVC employee Jack Oh's email to Ms. Barrios dated 10/27/2022.

10.    Attached hereto as **Exhibit U** is a true and correct copy of the IVES Request for Transcript of Tax Return, Form 4506-C, that Ms. Barrios signed and provided to AVC in connection with her purchase of the subject vehicle, thereby authorizing release of her tax information.

11.    On or about September 26, 2022, AVC received a message from GM Financial on their web portal that funding for Ms. Barrios' purchase was rejected because the results of her 4506-C indicated she reported no income on her schedule Cs. (*See Exhibit P.*)

12.    Between September 26, 2022, and October 21, 2022, AVC attempted to contact Ms. Barrios over 20 times by telephone and text messages to address the discrepancies between the income she represented in her credit application and the lender's findings, and to try and assist her in getting the loan funded. AVC never heard from Ms. Barrios until October 22, 2022, when she stated she did not want to bring the car back. (*See Exhibit P.*)

13.    Given the lender's findings and Ms. Barrios not returning any of AVC's calls and messages, I believed she may have provided false information in her credit application to obtain the vehicle. In and around late-October, we contacted LASD to report what happened. I decided not to file a police report yet and continue trying to reach Ms. Barrios.

14.    On November 1, 2022, AVC was able to get in contact with Ms. Barrios. She told us she will not return the car. (*See Exhibit P.*) Ms. Barrios never explained the income discrepancies. As a result, I decided to proceed with filing the police report. The next day, LASD deputies came to AVC. Per their request, we provided information and documents related to Ms. Barrios' purchase. I then signed a CHP 180 Vehicle Report regarding Ms. Barrios.

15.    I never communicated with Los Angeles Sheriff's Department employees or deputies about formulating any action plan for them to take the subject vehicle from Gabriella Barrios and have it returned to AVC. I never communicated

DECLARATION OF JACK OH IN SUPPORT OF DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION

CTSC|law
CALLAHAN THOMPSON SHERMAN & CAUDILL LLP

1  with LASD employees or deputies about any instructions, directions or plans about

2  pulling over and arresting Gabriella Barrios. I was not present at the scene when

3  LASD deputies arrested and detained Gabriella Barrios.

4        I declare under penalty of perjury under the laws of the State of California that

5  the foregoing is true and correct.

6        Executed this 20 day of June, 2025 in Lancaster, California.

7

*Jack Oh*

8  Jack Oh, Declarant

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JACK OH IN SUPPORT OF DEFENDANT ANTELOPE VALLEY CHEVROLET, INC.'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION