Andre Verdun (SBN 265436)
**Law Office of Andre L**. **Verdun**
1777 N Ventura Ave
Ventura, CA 93001
Tel.6198800110
Fax.8668040051
andre@verdunlaw.com

Attorney for Plaintiff,
Gabriela Stephanie Barrios

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

**GABRIELA STEPHANIE BARRIOS,**

                Plaintiff,

        vs.

**ANTELOPE CHEVROLET, LOS ANGELES SHERIFF'S DEPARTMENT, and OFFICERS 1-10, in their official capacities, inclusive,**

                Defendants.

Case #: **2:23-cv-10476**

(Unlimited Civil Case)

**PLAINTIFF'S OPPOSITION TO DEFENDANT AVC'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: 7/25/2025
Time: 1:30 PM
Dept.: 7B

-1-
**PLAINTIFF'S OPPOSITION TO DEFENDANT AVC'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.    STATEMENT OF FACTS ................................................................................. 1

II.   ARGUMENT .................................................................................................... 8

  A.    PLAINTIFF'S SECTION 1983 CLAIMS PRESENT EVIDENCE OF JOINT ACTION BETWEEN AVC AND THE LAPD.......................................................... 8

  B.    BARRIOS HAS EVIDENCED HER BANE ACT CLAIM AND AT MINIMUM, SUCH CLAIM PRESENTS MATERIAL FACTS IN DISPUTE MAKING SUMMARY JUDGMENT IMPROPER ............................................... 12

  C.    AVC IS LIABLE FOR COMMON LAW FALSE ARREST AND IMPRISONMENT ............................................................................................... 13

  D.    AVC IS RESPONSIBLE FOR ITS NEGLIGENCE.................................... 15

  E.    THE RFDCPA CLAIM MUST PROCEED TO TRIAL ............................. 16

  F.    THE UCL CLAIM SURVIVES ................................................................. 20

  G.    CONVERSION:AVC HAD NO RIGHT TO THE VEHICLE ..................... 21

  H.    CIVIL EXTORTION: THREATS YIELDING PROPERTY ....................... 22

III.  CONCLUSION................................................................................................ 23

**PLAINTIFF'S OPPOSITION TO DEFENDANT AVC'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Latshaw,* 164 F.3d 141, 146 (3d Cir. 1998) ........................................ 2, 12

*Costa v. Nat'l Action Fin. Servs.*, 634 F.Supp.2d 1069 (E.D. Cal. 2007).

*Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ...................................................... 10

*Flatley v. Mauro*, 39 Cal.4th 299, 326 (2006) ............................................... 21, 22

*Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1517 (9th Cir. 1994) ................. 11, 16

*Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) ........................................ 9, 11

*Gaisser v. Portfolio Recovery Assocs., LLC*, 593 F.Supp.2d 1297 (SD FL 2009)

*Harris v. City of Roseburg*, 664 F.2d 1121 (9th Cir. 1981) ..................................... 8

*Hartford Fin. Corp. v. Burns*, 96 Cal.App. 3d 591, 158 Cal. Rptr. 169 (1979)

*Harvey v. Plains Twp. Police Dep't,* 635 F.3d 606, 609-10 (3d Cir. 2011) ........... 11

*Hollandsworth v. City and Cnty. of Honolulu*, 440 F.Supp.3d 1163, 1176 (D. Hawaii 2020) ......................................................................................................... 8

*Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983) ......................................... 8

*Kesner v. Super. Ct.*, 1 Cal. 5th 1132, 1146 (2016) .............................................. 16

*Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004)

*Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal.App. 4th 324 (2009) ............ 19

*Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996) ................................... 15

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal.App. 4th 544 ................................................................................................................ 19

*Long v. Nationwide Legal File & Serve, Inc.*, No. 12-CV-03578, 2013 U.S. Dist. LEXIS 132971, at *29-30 (N.D. Cal. Sep. 17, 2013) ....................................... 18

*Lowe v. Diversified Consultants, Inc.,* 2012 WL 3776715, at *1 (N.D. Ill. 2012) .. 18

*Maronyan v. Mercedes-Benz Fin. Servs.*, 2018 WL 1737621 (C.D. Cal. 2018)... 19

*McNall v. Credit Bureau*, 689 F.Supp.2d 1265, 1275 (D. Or. 2010) .................... 18

*Mendoza v. Hamzeh*, 215 Cal.App.4th 799, 806 (2013) ................................ 12, 21

*Meyer v. Credit Mgmt.*, 2013 WL 567758 (N.D. Cal. Feb. 13, 2013) .................. 18

**PLAINTIFF'S OPPOSITION TO DEFENDANT AVC'S MOTION FOR SUMMARY JUDGMENT**

*People v. Hesslink*, 167 Cal.App. 3d 781, 789 (1985) ........................................... 22

*Reese v. County of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) ............... 13

*Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008).. 18

*Riley v. Giguiere*, 2008 U.S. Dist. LEXIS 11133, *19-21 (E.D. Cal. Feb. 14, 2008)

*Russell v. Absolute Collection Serv.*, 763 F.3d 385 (4th Cir. 2014) ..................... 18

*Shin v. Kong*, 80 Cal.App. 4th 498, 504 (2000) ..................................................... 16

*Stop Youth Addiction v. Lucky Stores, Inc.*, 17 Cal.4th 553, 563–64 (1998)........ 16

*Swanson v. S. Or. Credit Serv.*, 869 F.2d 1222, 1228 (9th Cir. 1988).

*Todd v. Midwest Motors Sales & Serv.*, 2016 U.S. Dist. LEXIS 146497, at *6 n. 4, 2016 WL 6155690 (W.D. Mich. Oct. 24, 2016) ................................................. 1

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (quoting *Franklin*, 312 F.3d at 445) ................................................................................. 9

*Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 960 (9th Cir. 2008)............ 9

*Warner v. Midland Credit Mgmt.*, 540 F.Supp.3d 946, 952 (C.D. Cal. 2021).

*Weakley v. Redline Recovery Servs.*, 723 F.Supp.2d 1341 (S.D. Cal. 2010)...... 16

*Woynar v. Smith*, 2008 WL 4938345, at *5 (M.D. Fla. Nov. 18, 2008)............. 4, 22

*Yates v. Allied Int'l Credit Corp.*, 578 F.Supp.2d 1251, 1255 (S.D. Cal. 2008) .... 19

*Yuki Kobayashi v. McMullin*, 2023 WL 3493991, at *18 (C.D. Cal. Mar. 2, 2023).. 9

**Statutes**

15 U.S.C. § 1692k(c) ............................................................................................. 18

15 U.S.C. §§ 1692e ............................................................................................... 17

Cal. Bus. & Prof. Code § 17200 ........................................................................... 19

Cal. Civ. Code § 1714............................................................................................ 15

Cal. Civ. Code §§1788.10(e)................................................................................. 17

Cal. Civ. Code §1788.12(b) .................................................................................. 19

Cal. Civ. Code §1788.17 .................................................................................. 17, 18

Cal. Evid. Code § 669 ........................................................................................... 16

Civil Code § 52.1 ............................................................................................ 12, 16

**PLAINTIFF'S OPPOSITION TO DEFENDANT AVC'S MOTION FOR SUMMARY JUDGMENT**

THE LAW OFFICES OF: ANDRE L. VERDUN

Civil Code §1788.2(d) .................................................................................... 17

Pen.Code § 148.5 ....................................................................... 15, 16, 20, 22

Pen.Code § 236 ............................................................................................. 16

Rosenthal Fair Debt Collection Practices Act ............................................... 16

**PLAINTIFF'S OPPOSITION TO DEFENDANT AVC'S MOTION FOR SUMMARY JUDGMENT**

## I.    STATEMENT OF FACTS

As of 2022, Antelope Valley Chevrolet (AVC) had been in the business of selling cars for decades. Each year, it enters into contracts with hundreds of customers; if later there becomes a problem with attempting to assign the financing, it attempts to unwind the deal. AVC may attempt to unwind more than 60 car contracts a year. (**Barrios.Resp.SSUF#16)**. This "re-doing" of a contract after the customer takes the vehicle is commonly referred to in the car industry as a Yo-Yo deal. *Todd v. Midwest Motors Sales & Serv.*, 2016 U.S. Dist. LEXIS 146497, at *6 n. 4, 2016 WL 6155690 (W.D. Mich. Oct. 24, 2016) ("This practice is sometimes described as a 'spot delivery' or 'yo-yo' transaction. . . . it is a violation of state law for a dealer to deliver a vehicle under an installment contract and then demand full payment or possession of the vehicle when the dealer determines that it cannot assign the contract to a third party.") Further, AVC may only unwind the deal in accordance with the parties' contract. And of course, unwinding the deal leaves the consumer without a car.

On September 8, 2022, Barrios entered a retail installment sales contract with AVC to purchase a 2022 Chevrolet Malibu. Under the express terms, AVC had 10 days to cancel if it could not assign financing.**(AVC.SSUF#1–2,4,9)**. AVC did not cancel the contract in those 10 days.  However, over a month later, when AVC realized it could not assign the contract to a third party, AVC tried to unwind the deal.  However, Barrios wanted AVC to honor the terms of the contract and would not go along with AVC's attempts break the contract and unlawfully "unwind" the deal.  AVC then embarked upon a campaign of fraud and deception, which included orchestrating and directing a peace officer it knew into wrongfully arresting Barrios at gunpoint, in front of her two young daughters, wrongfully repossessing the car, jailing her, and delivering the car to AVC without a civil court order.

/ / /

-1-

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

Appellate Courts hold that peace officers conducting "curbside courtroom[s]," deciding for themselves who is entitled to possession, and using the authority of the state to effectuate repossessions, "is precisely the situation and deprivation of rights to be avoided." *Abbott v. Latshaw,* 164 F.3d 141, 146 (3d Cir. 1998) (in husband and wife dispute, a reasonable jury could conclude that plaintiff was entitled to notice and an opportunity to be heard before having his vehicle seized as it is not the officer's job to decide who is entitled to possession of the vehicle, thus reversing summary judgment).

While not dispositive, at contract formation Barrios made a $1,655 down-payment and cooperated fully, and provided every requested document including insurance and bank statements showing her $5,000 monthly income (her bank records she provided showed regular deposits of that amount) and signed a Request for Transcript of Tax Return (**IRS form 4506-C**), (**AVC**.**SSUF#4,5**;**AVC**.**SSUF#3,33**). AVC's Nina Garcia testified: "She was very cooperative. She came in, signed the forms that we needed, and she provided me the insurance documentation"(**AVC**.**SSUF#8,11-13,21**). Garcia couldn't identify any document Barrios refused to provide and admitted never asking her for tax returns. AVC's James Gonzalez confirmed: "We didn't ask her to provide anything except for a signature."(**AVC**.**SSUF#21**).

However, after AVC was bound to the contract, AVC tried to assign the financing of the loan to GM Financial.(**Barrios**.**Resp**.**SSUF#4**).  AVC has produced GM Financial account notes, for September 27, 2023, indicating it contacted the IRS, who responded that Barrios had no Schedule C income. AVC 38.(**AVC**.**SSUF#6-7**) AVC "never reviewed any IRS transcript" and relied on hearsay that Barrios had zero income.(**Barrios**.**Resp**.**SSUF**.**10**) AVC's Nina Garcia, Sales Manager, confirmed AVC "never saw any IRS tax return or other proof of 'zero income.'"(**Barrios**.**Resp**.**SSUF,10)** In reality, Barrios had substantial income--her amended 2021 tax return showed $52,834 in adjusted gross income;

-2-

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

figures that matched the 2021 Form 1099-K."(**Barrios**.**Resp**.**SSUF**.**6)**. Also, the IRS processed Barrios's amended tax returns on September 12, 2022, giving Detective Gelardo ample opportunity to verify Barrios's income for 2021 was $52,834.(**Barrios Dec., Ex**. **24**) Moreover, Barrios's Schedule C of her 2022-tax returns show business income of $60,323; which is consistent with what Barrios stated in her credit application for the car.(**Barrios**.**Dec., Ex**. **23; LASD Ex**. **1**.) Further, AVC testified Barrios was very cooperative and returned to AVC and checked the box on IRS Form 4506, when Garcia requested her to. **Garcia Depo**. **102:1-3; 50:7-55:5** (apparently, the form had been signed earlier, but the IRS claimed a box still need to be checked. **Ex**. **P, AVC Bates 41**). Additionally, Barrios had already provided AVC bank statements supporting her income as stated.  Indeed, AVC's Garcia acknowledged the bank statements showed Barrios did in fact "make money".(**BariosResp**.**SSUF#26-28**).

AVC chose not to cancel within the ten-day period as required by the parties' contract.(**AVC**.**SSUF#6,33**). AVC's argument that it could ignore the 10-day provision, and that there was only "preliminary approval subject to verification," is incorrect according to the express terms of the contract; there was in fact a binding loan agreement with AVC as the lender.(**AVC**.**SSUF#1–2,4,9**).

On June 11, 2024, at a Motion to Dismiss hearing, AVC's counsel represented to this Court that AVC did not send a letter canceling the contract.(**Pltf Resp**. **SSUF#29**).  Despite that, AVC now alleges it sent Barrios a letter on September 27, 2022, which was 19 days after purchase (and 9 days after the time to cancel the contract had passed), purporting to cancel (but did not return Barrios's down-payment, which was required if AVC was attempting to cancel).(**SSUF#9-10,49**). While not dispositive, Barrios never received such letter and AVC has no certified return receipt otherwise. Regardless, AVC's General Manager, Jack Oh, later admitted this "was a form letter that should have never went out because it was clearly past the ten-day window." (**AVC**.**SSUF#9,49**).

-3-

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

Regardless, whether or not the contract was breached is not dispositive. "If the strong arm of the law is needed, then the creditor must secure judicial intervention when a police officer is carrying out or sanctioning the repossession." *Woynar v. Smith*, 2008 WL 4938345, at *5 (M.D. Fla. Nov. 18, 2008); *Hartford Fin. Corp. v. Burns*, 96 Cal.App.3d 591, 158 Cal. Rptr. 169 (1979) (same).

On October 18, 2022, AVC's Nina Garcia texts Barrios stating, "We have issues with the finances. Can you please contact us." **Ex. S, AVC 10**. The text says nothing about needing to return the car, or that the contract had been cancelled. AVC's notes allege that on October 22, it spoke with Barrios who didn't want to return the car. **Ex. Q**, Bates **AVC 6-7**. AVC's notes of October 26 allege it spoke to Barrios again.  However, Barrios testified she never stated she did not want to bring the car back **(AVC.SSUF#15-17)**. Regardless, this was well past AVC's 10-day right to cancel.

AVC then chose to use the color of the law to repossess, turning to its pre-existing relationship with Gelardo.**(AVC.SSUF#26, 42, 45**). AVC employee Nicole McCracken had Gelardo's private cell number from when AVC hosted events for the Sherriff.**(AVC.SSUF#45-46**).

On October 26, 2022, Gelardo met privately with AVC's Oh and McCracken at AVC's offices—meetings that were never memorialized in any police report in violation of LASD policy requiring that any meeting used to develop grounds for arrest be documented. (**BarriosSSUF#1**).

Both Defendants knew that Barrios did not steal the vehicle. For instance, Oh testified he never said the vehicle was stolen, never thought it was stolen, didn't know if any law was broken, and was "just looking for advice" to get the car back. Oh also admitted AVC didn't mark the deal as fraud.**(AVC.SSUF#25-26,42**). Yet AVC would later direct Gelardo to arrest Barrios and take the car back to AVC.**(AVC.SSUF#26-27,42**).

/ / /

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

Further, on October 27, 2022, AVC directed Gelardo to wait while the company consulted legal counsel, as confirmed by AVC's text to Gelardo's private cell phone: "Talked to Jack. He said he is still waiting to hear from attorney" (**AVC SSUF#23, 39;Docket #160-1,Oh Decl., Ex**. **T, AVC 001**). That same day, Oh emailed Barrios giving her until November 4, 2022 to return the vehicle.**(AVC**.**SSUF#50**), and also sought to refinance the contract, having Barrios's mother cosign the contract with Barrios, who AVC now alleges is a fraudster.**(AVC SSUF#28)**.  None of AVC's texts to Gelardo's private cell phone appear in any LASD report, despite LASD communication policy requiring such. (**BarriosSSUF#2)**

AVC then further directed the actions and inaction of Gelardo as AVC was still trying to arrange financing nearly two months after Barrios bought the car (hardly what a dealer does when it believes it's dealing with a fraudster). On October 27, AVC's McCracken texted Gelardo, "Jack sent an email and now [Barrios's] Mom wants to co-sign so he wants to see how that goes. I will keep you posted." **(AVC**.**SSUF#28-29,47**).  No legitimate business attempts to have a thief and her mother co-finance a car.

Before Barrios's arrest, she was told by her mother that the police came to their house looking for her.**(BarriosSSUF#35)**  As a result, Barrios called the Sheriff's station on October 27, 2022 **(Barrios**.**Resp**.**SSUF#20**). After she told the Sheriff what was going on, it responded that the situation was a civil dispute and as such it would not get involved, and that she would not be stopped and detained. (**Barrios**.**Resp**.**SSUF#20**).

The Sheriff's office did not reach out further to Barrios. In fact, Barrios even called LASD on November 2 to again verify there was no pending investigation. (**Barrios**.**Resp**.**SSUF#35**). Barrios was told this was a civil matter, and that she had nothing to worry about. Based on this, it was Barrios' belief that there was no active warrant or investigation.

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

THE LAW OFFICES OF: ANDRE L. VERDUN

Had there been some official criminal investigation of Barrios the police would have asked her questions. (**Barrios.Resp.SSUF#19**).  Nor did Gelardo conduct a true investigation, as it was limited to reviewing AVC-provided documents, and even those included bank statements corroborating Barrios' $5,000 monthly income, but Gelardo disregarded that evidence.(**AVC**.**SSUF#33**). *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (when ignoring key facts officer may be liable under §1983 for false arrest).

By November 1, 2022, AVC admitted instructing McCracken to direct Gelardo to "move forward with that car," *i.e.* use the color of the law to repossess it.(**AVC**.**SSUF#43**). McCracken texted Gelardo's private cell phone and Gelardo responded "Of course, let's do it." (**AVC**.**SSUF#39-40,43**). AVC controlled law enforcement timing (**AVC**.**SSUF#14, 39-40,48**).

This would lead to the "curbside courtroom" that Appellate Courts hold amounts to a Constitutional violation

On November 2, nearly a week after first meeting with the Sherrif, AVC's Oh signed a CHP-180 report, falsely stating the car had been stolen from the dealership's "parking lot," to ensure the police would repossess the car from Barrios.(**AVC**.**SSUF#30-31**). Expert Roger Clark testified that Gelardo manipulated the stolen vehicle database, providing a false justification to seize Barrios's vehicle.(**AVC**.**SSUF#36,44**). Clark stated, "The CHP-180 is just a document that is signed for people to [say]... 'this is my car, I am reporting it stolen.' [It was a] false report and Gelardo knows it."(**AVC**.**SSUF#31**).

Indeed, AVC directed Gelardo to arrest Barrios, knowing the car had not been stolen from the "parking lot", and even though she had AVC's permission (and a contractual right) to possess the vehicle. Expert Roger Clark confirmed: "[Barrios' right to possession was based] on the ten-day understanding and based on the demand that she could have the car until the 4th as far as they were concerned." (**AVC**.**SSUF#35; Clark Depo**.**33:4–6**).

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

On November 3, one day before the alleged deadline AVC gave Barrios to return the car, Barrios was arrested at gunpoint in front of her two young daughters.**(Barrios.Resp.SSUF#)**. And instead of impounding the car as evidence, Gelardo personally drove the vehicle directly to AVC's dealership, thereby completing the private repossession under color of law.**(AVC.SSUF#38)**. AVC directed the timing and actions of Gelardo through personal meetings, and remotely through texts to his private cell phone **(AVC.SSUF#41)**. Thus, whether AVC was personally in attendance at the repossession is a red-herring.**(AVC.SSUF#41)**. After the arrest and seizure of the vehicle, a probable cause declaration was prepared. (**BarriosSSUF#38**)

At jail, Gelardo told Barrios she faced two felonies unless she pled out. (**BarriosSSUF#3**). Then at 11:54 p.m. that day, Det. Gelardo signed a Certificate of Release letter under Penal Code § 849(b)(1) for "insufficient grounds to file a complaint"**(AVC.SSUF#34)**, proving the arrest was really about helping AVC repossess the car, and had nothing to do with a stolen vehicle. The false arrest was only intended to help AVC repossess the vehicle under color of law.

AVC's attempt to paint Barrios in default of the contract terms does not justify its use of law enforcement to conduct an unlawful repossession and arrest Barrios. AVC's remedy for breach of contract is to follow California law for civil repossession or file a civil suit for breach of contract and prove its case. Further, Barrios complied with every verification request. AVC's failure to cancel within the 10-days bars its post-hoc default theories.**(AVC.SSUF#22-24)**. AVC could not use the color of law to conduct a "curbside courtroom," without due process.

In sum, having failed to timely cancel the contract, and knowing it couldn't legally repossess, AVC enlisted Gelardo to use the color of the law to repossess under the guise of a criminal process. In the course of that wrongful repossession, AVC controlled when, whether, and how Gelardo would act.

-7-

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

AVC's pre-existing relationship with Gelardo, its undocumented private meetings with him, its orchestration and coordination of a wrongful repossession, its initial hesitation to allege a stolen vehicle followed by its first consulting with a lawyer, its later false CHP-180 police report alleging a stolen vehicle, its direction for Gelardo to arrest Barrios and take the car back, Gelardo's personal delivery of the car to AVC, felony threats, and same-day release for insufficient grounds present, and the appropriateness of such, are all questions for the jury.

## II.    ARGUMENT

### A. PLAINTIFF'S SECTION 1983 CLAIMS PRESENT EVIDENCE OF JOINT ACTION BETWEEN AVC AND THE LAPD

As noted by a court within the Ninth Circuit, "[a]t some point, as police involvement becomes increasingly important, repossession by private individuals assumes the character of state action." *Hollandsworth v. City and Cnty. of Honolulu*, 440 F.Supp.3d 1163, 1176 (D. Hawaii 2020), citing *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983). The court in *Howerton* found that landlords seeking to evict tenants acted under color of law by virtue of extensive cooperation with a police officer. While "[a] single request for the police to perform their peace-keeping functions may not be sufficient to make a landlord a 'joint actor' with the state for section 1983 purposes," the landlords in that case requested and obtained police intervention at every step of the eviction. Id. at 384-85. The court noted that the police officer became so involved as to make an unsolicited visit to the tenants recommending that they leave, and to separately inquire whether the tenants had found a new residence. *Id.* at 384." Similarly, Gelardo visited the Barrios home.

*Hollandsworth* noted that in *Harris v. City of Roseburg*, 664 F.2d 1121 (9th Cir. 1981), "a police officer assisted a private party in the repossession of a vehicle and the court found sufficient factual questions on the issue of joint action to preclude summary judgment." There, the police officer threatened jail time if the

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

consumer interfered with the repossession.  Here, at AVC's direction, Gelardo went far past threatening jail, he actually arrested Barrios in front of her two young daughters and jailed here.

After the arrest, Gelardo continued the intimidation by threatening two felony counts. BarriosSSUF#3. As *Hollandsworth* said, "the effect of the officer's presence was to intimidate the plaintiff "to cause him to refrain from exercising his legal right to resist a repossession."

The Central District of California reached the same conclusion. *Yuki Kobayashi v. McMullin*, 2023 WL 3493991, at *18 (C.D. Cal. Mar. 2, 2023). There, the court denied summary judgment where police intervened in a private property dispute, finding, when "police intervention and aid" goes beyond mere acquiescence to "assistance in effectuating an enforcement action," state action exists. The court emphasized, even "intimidation of a person so as to cause him to refrain from exercising his legal right to resist" supports finding state action. Here, AVC's conduct far exceeds that in *Kobayashi*—AVC didn't just receive police assistance, it directed it, intimidating Barrios from exercising her legal right to resist.

As the Central District stated, "a joint action can be pleaded not just by a conspiracy, but also by facts showing that a private party is a "a willful participant in joint action with the State or its agents," citing *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (quoting *Franklin*, 312 F.3d at 445)—that is, " 'when the actions of the state and the private party are intertwined or when the parties have a symbiotic relationship[.]' " *Kobayashi*, 2023 WL 3493991, at *18 (quoting *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 960 (9th Cir. 2008)(officer's assistance  or intimidation is sufficient to constitute state action).

The actions herein are intertwined, and the Defendants have a symbiotic relationship. Further, the evidence reveals AVC did not "merely report the incident", it orchestrated and carried out a plan to rely on its personal relationship

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

with Gelardo and turn him into its private repo man, with the full force and power of police cars, firearms, badges, jails, under the color of law. Specifically, relying on their pre-existing relationship, AVC extensively cooperated with LASD, contacting Gelardo on his private cell phone, holding meetings with him at its dealership where Gelardo offered to arrest Barrios to seize the vehicle and give it to AVC. AVC's text messages to Gelardo's private cell show AVC controlled every aspect of the plan, its timing and execution: making Gelardo wait for AVC's attorney's approval, and AVC's exploring financing with Barrios's mother, while simultaneously planning and orchestrating Barrios's arrest. This wasn't independent law enforcement, it was a joint action, with AVC wielding police power for private repossession. Moreover, AVC went well beyond threatening arrest (which is enough to show joint action) as AVC had LASD arrest and jail Barrios. And at least, it is a jury question.

AVC's reliance on cases like *Collins v. Womancare* fails because those cases involve truly independent police action following mere crime reports. Here, **Gelardo surrendered his independence** and waited for AVC's explicit direction and timing to arrest, which occurred after AVC could not assign the contract to a finance company, AVC's consultation with its lawyer and failure to obtain financing for Barrios' mother. This is not *Collins* -- this is *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), where the Supreme Court found that "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of §1983 actions," holding that "[i]t is enough that he is a willful participant in joint action with the State or its agents."

Nor does the *Dwight R.* case help Defendants. Unlike *Dwight*, AVC knew that Barrios **_never_** stole the vehicle from the parking lot.**(AVC.SSUF#¶ 24)** Yet, AVC orchestrated a scheme with Gelardo to fabricate probable cause specifically to evade both Barrios's Fourteenth Amendment due process rights and its failure to timely cancel the contract.**(AVC.SSUF#¶¶ 26–27)** Gelardo would not intervene

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

THE LAW OFFICES OF: ANDRE L. VERDUN

without AVC's direct instruction, and AVC deliberately delayed any action until its attempts to pressure Barrios to return the vehicle failed, resorting to the false arrest scheme, conducting a "curbside courtroom," seizing the car and returning it to AVC.**(AVC.SSUF#¶ 29;AVC.SSUF#¶ 27**). The level of extensive cooperation, planning, control, and concerted effort to enlist LASD in a private repossession satisfies §1983's joint-action requirement and stands in stark contrast to the purely speculative, immunity-protected allegations at issue in *Dwight.*

At minimum, whether Gelardo and AVC cooperated extensively to make a civil dispute appear criminal, and seize, arrest and jail Barrios, taking her car, without a court order, is a question of fact for the jury.

Additionally, the extensive cooperation transforms AVC into a state actor under clearly established law. Police are supposed to remain neutral, not become an enforcement tool for creditors. *Harvey v. Plains Twp. Police Dep't,* 635 F.3d 606, 609-10 (3d Cir. 2011).  An officer that "maintains neutrality" acts permissibly. *Id.* at 609-10.  One who takes "an active role in the repossession" does not. *Id*. The Ninth Circuit requires showing a "substantial degree of cooperation" between the private actor and state officials.  *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). Here, AVC didn't merely cooperate, it orchestrated, directed, and controlled state action, *i.e.* Gelardo, for AVC's private benefit.  Thus, 1983's joint action requirement is clearly met.  That AVC was not present at the repossession does not change the fact that AVC directed Gelardo in the repossession, first in private meetings and then through texts to his private cell phone.

As a result, the Fourth Amendment violation is obvious. Without probable cause and knowing no crime had occurred, AVC caused Barrios to be arrested at gunpoint, in front of her two young daughters, handcuffed, and jailed. Oh's own testimony confirms he never believed the vehicle was stolen and didn't know if any law was broken.**(AVC.SSUF#26-27, 42**.) Gelardo conducted no independent investigation, never reviewed the allegedly problematic tax returns, and ignored

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

evidence confirming Barrios's income.**(AVC**.**SSUF#75, 90-91**.) He simply waited for AVC's go-ahead, then executed their plan.

The Fourteenth Amendment violation is equally clear. Rather than pursuing available civil remedies: filing suit, obtaining a replevin order, or following proper repossession procedures AVC used Gelardo to seize property without any judicial process. This is precisely the "curbside courtroom" that federal courts condemn. Also, Gelardo didn't just arrest Barrios; he personally drove her vehicle directly to AVC's dealership, completing the private repossession under color of law.**(AVC**.**SSUF#**38, 106.)

This Court already found that AVC's state actor status was plausible when denying AVC's motion to dismiss. (ECF 130)  Now, the evidence confirms the joint action.  At the very least, it is a jury question.

## B. BARRIOS HAS EVIDENCED HER BANE ACT CLAIM AND AT MINIMUM, SUCH CLAIM PRESENTS MATERIAL FACTS IN DISPUTE MAKING SUMMARY JUDGMENT IMPROPER

AVC's Motion fails because: (1) this case involves far more than "speech alone," and (2) the evidence establishes joint action with LASD.

AVC didn't merely speak. AVC orchestrated Barrios's arrest. As a direct result of AVC's coordination with Gelardo, armed deputies surrounded Barrios's vehicle with her young children inside, arrested her at gunpoint, and seized her property.**(AVC**.**SSUF#37-38**.) This wasn't speech; it was the weaponization of state violence to accomplish a private repossession.

Civil Code §52.1(k)'s "speech alone" exception doesn't protect those who make good on threats through coordinated state action. Threats to report criminal conduct coupled with demands constitute actionable conduct, not protected speech. *Mendoza v. Hamzeh*, 215 Cal.App.4th 799, 806 (2013). Here, AVC didn't just threaten police involvement—it directed that an arrest would occur and when that arrest would occur; and then what do with the disputed private property,

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

having LASD bring the car back to the dealer**(AVC**.**SSUF#29, 39-40, 43**.)This Court already found Barrios sufficiently alleged "joint action" since AVC "used law enforcement to threaten, intimidate, and coerce her."(**ECF 130**.)  The evidence now confirms it:

- AVC held private meetings with Gelardo where arrest was discussed as a means to "take the car back"**(AVC**.**SSUF#27**);
- AVC controlled timing through texts to Gelardo's private cell: "Jack wants to move forward with that car"/"Of course, let's do it" **(AVC**.**SSUF#29**);
- Gelardo personally delivered the seized vehicle directly to AVC's dealership **(AVC**.**SSUF#38**); and
- AVC gave Barrios until November 4 to return the vehicle, then orchestrated her arrest on November 3**(AVC**.**SSUF#37, 50**).

The Ninth Circuit holds, "reckless disregard for a person's constitutional rights is evidence of specific intent." *Reese v. County of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018). Here, Oh admitted:

- He never believed a crime occurred**(AVC**.**SSUF#26**);
- He didn't know "if [Barrios] broke anything"**(AVC**.**SSUF#26**); and
- AVC never marked the deal as fraud**(AVC**.**SSUF#26**).

Despite knowing this was a civil dispute, AVC proceeded to orchestrate criminal arrest. Barrios's same-day release for "insufficient grounds" **(AVC**.**SSUF#37-38**) confirms this was never about law enforcement; it was about using police power to circumvent due process.

AVC's orchestrated use of law enforcement to seize property without due process is precisely what the Bane Act prohibits.

## C. AVC IS LIABLE FOR COMMON LAW FALSE ARREST AND IMPRISONMENT

The evidence sufficient for the jury to determine that AVC's illegal conduct was not an "honest mistake". AVC knew that Barrios never stole the

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

vehicle**(AVC**.**SSUF#¶ 24**). And while AVC claims it was correctly or mistakenly told by the lender that Plaintiff misrepresented her income, AVC's own witnesses confirm that GM Financial never accused Barrios of fraud. When asked, "Did GM Financial ever tell you that Barrios lied on her application?", Oh answered, "No."**(AVC**.**SSUF#25**.) Oh further admitted that AVC "did not mark the deal as fraud"**(AVC**.**SSUF#26**) and that he didn't know "if she broke anything." (**AVC**.**SSUF#26**.)

These admissions defeat any claim of good faith reliance on lender information.

AVC argues it "did not immediately involve the police" but "repeatedly tried to discuss the issue." However, the evidence reveals a different pattern. While AVC made contact attempts, Barrios never refused to communicate or provide verification of her credit information.  AVC's own finance manager, Garcia, testified that Barrios was "very cooperative," provided all requested documentation, including insurance, signed the IRS 4506-T form, and submitted her bank statements. Garcia admitted she could not identify a single document that Barrios was asked to provide but refused. *(Barrios.Resp.SSUF#24;* **AVC**.**SSUF#8, 20**). Phone records also show that Barrios spoke to AVC on October 22, 2022, for at least 3 minutes. (Barrios.Resp.SSUF#30*.*) The alleged "refusal to communicate" occurred only after AVC decided to use law enforcement to repossess and sign the CHP-180 form.**(AVC**.**SSUF#8, 13**.)

Also, AVC's assertion that it merely "sought input from the LAPD to determine whether a crime had been committed" mischaracterizes the evidence. The record shows private meetings where Gelardo offered to arrest Barrios to "take the car back."**(AVC**.**SSUF#27**.) AVC didn't seek neutral law enforcement guidance; it orchestrated a repossession scheme. Oh instructed McCracken to tell Gelardo to "hold on until we finish another attempt to finance the deal," proving AVC controlled the timing of police involvement based, and whether the arrest would occur, based on business decisions, not criminal evidence.**(AVC**.**SSUF#29,**

-14-

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

**48**.) Also damaging to AVC's defense is its claim that it "only reported the vehicle stolen when told plaintiff would not return it." At the same time AVC was coordinating with Gelardo, it was also trying to get Barrios' mother to co-sign.**(AVC**.**SSUF#28**.)

No legitimate business simultaneously pursues financing with an alleged thief's family while reporting the vehicle stolen from its parking lot.

The evidence shows AVC gave Barrios until November 4 to return the vehicle, then orchestrated her arrest on November 3—before its own deadline expired.**(AVC**.**SSUF#37, 50**.) This arrest and same day release proves the stolen vehicle report was pretextual

Finally, AVC cannot claim reasonable conduct given Barrios was released from jail the same day she was arrested because there was "insufficient grounds to file a complaint."**(AVC**.**SSUF#37-38**.) This immediate release by Det. Gelardo based on insufficient probable cause proves the arrest was illegitimate. Thus, the evidence does not establish an honest mistake, it shows a coordinated effort to misuse police power to circumvent due process and unlawfully repossess.

**D. AVC IS RESPONSIBLE FOR ITS NEGLIGENCE**

Negligence requires duty, breach, causation, and damages. *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996).

AVC owed Barrios a general duty of care under Cal. Civ. §1714(a), a statutory duty not to manufacture criminal proceedings (Pen.Code §148.5), and a contractual duty to refrain from coercive tactics. *Shin v. Kong*, 80 Cal.App.4th 498, 504(2000);*Stop Youth Addiction v. Lucky Stores, Inc.*,17 Cal.4th 553, 563–64(1998).

AVC breached these duties fabricating a false CHP-180 stolen-vehicle report. Indeed, Oh admitted he "never thought" the car was stolen and orchestrated that report after the 10-day rescission period expired.**(AVC**.**SSUF#¶¶ 26–27, 30, 42**.)

-15-

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

But for AVC's false statements, Barrios would not have been arrested(**AVC.SSUF#¶ 60**), jailed for hours(**AVC.SSUF#¶ 34**), and denied medical care(**AVC.SSUF#¶ 79**), which are all entirely foreseeable outcomes of AVC's false criminal report. *Kesner v. Super. Ct.*, 1 Cal.5th 1132, 1146(2016). Courts routinely sustain negligence claims based on unlawful collection tactics. *Fox v. Citicorp Credit Servs.*,15 F.3d 1507, 1517 (9th Cir. 1994);*Weakley v. Redline Recovery Servs.*,723 F.Supp.2d 1341 (S.D. Cal. 2010).

AVC's statutory violations of false-reporting (Pen.Code §148.5), false imprisonment (Pen.Code § 236), and coercive threats (Civ.Code § 52.1) also establish negligence per se. Cal. Evid. Code § 669(a). Each infraction is pleaded in the complaint and supported by (**AVC.SSUF#¶¶ 11–13,18,26–27,30,42**).

In any event, because there are genuine disputes over each element, summary judgment on negligence and negligence per se must be denied. Indeed, this Court already found these allegations sufficient. (ECF 52.) Evidence strengthens the claim: AVC gave Barrios until November 4 to return the vehicle, then had her arrested November 3, making compliance impossible.(**AVC.SSUF#60,79,81,98**.) That Gelardo released her the same night for "insufficient grounds" confirms the arrest was baseless.(**AVC.SSUF#34**.)

### E. THE RFDCPA CLAIM MUST PROCEED TO TRIAL

RFDCPA, incorporates most of the federal FDCPA (Civil Code §1788.17, incorporates 15 U.S.C. 1692b-k) and broadly prohibits making any false deceptive or misleading representation in connection with the collection of any debt. 15 U.S.C. §1692e.  RFDCPA's definition or debt includes "property," i.e. the vehicle in dispute. 1788.2(d).  Whether a defendant has violated the FDCPA is a question of fact to be resolved by the jury. *Warner v. Midland Credit Mgmt.*, 540 F.Supp.3d 946, 952(C.D. Cal. 2021).

In light of the above, AVC violated numerous provisions of the FDPA, as stated below.  Additionally, AVC filed a police report that falsely stated Barrios

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

THE LAW OFFICES OF: ANDRE L. VERDUN

embezzled a vehicle from the dealership's parking lot, and that AVC owned the vehicle, and impermissibly communicated with a third-party, Gelardo, without a court order permitting such (**Barrios**.**Resp**.**SSUF#31, 39)**. AVC has violated:

1. Cal. Civ. §1788.10(a),(b), and (d) by: (1) using criminal means to cause harm to Barrios, her reputation, and her property and (2) asserting that Barrios committed a crime by retaining possession of the vehicle, which was false;

2. §1788.17 as it incorporates:

§1692e, e(2),e(5),e(8),e(10): by using false, deceptive, and misleading representations in an attempt to collect Barrio's property; making false and misleading statements and misrepresenting the nature and character of the property in dispute; Using false statements to cause a police officer to suggest a count of embezzlement be filed against Barrios; including falsely stating the Barrios stole the car from the dealership "parking lot."

§1692b,c: by impermissibly communicating with third parties and discussing Barrios's debt/property with others;

1692d: by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, and by threatening to and using criminal means, i.e. filing a false police report, in regard to such; having Barrios arrested, jailed, her property seized, etc.

§1692f,1692f(6): by using unfair and unconscionable means to collect a debt, including taking non-judicial action to affect dispossession of property to which it had no present right of possession; i.e. filing a false police report, in regard to such; having Barrios arrested, jailed, her property seized, etc.

§1692d,1692f(6),e, e(2),e(4),e(7),e(10)): by using false statements to suggest a count of embezzlement be filed against Barrios.

/ / /

/ / /

-17-

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

### 8. **AVC'S Did Not Plead or Prove a Bona Fide Error Defense**

- AVC's affirmative defense of bona fide error is waived and unsupported. Because it was not pled (Dkt. 146) it is forfeited. *Russell v. Absolute Collection Serv.,*763 F.3d 385 (4th Cir. 2014);*McNall v. Credit Bureau,*689 F.Supp.2d 1265,1275(D. Or. 2010).

- The BFE defense is a narrow exception to the rule that the FDCPA is a strict liability statute and does not require proof of intent. *McCollough v. Johnson, Rodenberg & Lauinger*, 637 F.3d 939 (9th Cir. 2011); *Reichert*, 531 F.3d at 1005.

- BFE only applies to clerical errors. *Irwin v. Mascott*, 112 F.Supp.2d 937,959 (N.D. Cal. 2000).

- AVC must also demonstrate that: (1) it committed a "violation, (2) the error "was not intentional," (3) the debt collector maintained "procedures reasonably adapted to avoid any such error," ***and*** (4) the error occurred notwithstanding the maintenance of such procedures. Civil Code §1788.30, and §1788.17 (incorporating 1692k(c). *Long v. Nationwide Legal File & Serve, Inc.,*2013 U.S. Dist. LEXIS 132971,at*29-30(N.D. Cal. Sep. 17, 2013).

- In the Ninth Circuit, for a debt collector to prove a BFE defense, the procedures themselves must be explained, along with the manner in which they were adapted to avoid the error. *Reichert*, 531 F.3d at 1006.

- The third element of the BFE defense "involves a two-step inquiry: first whether the debt collector 'maintained' --*i.e.,*actually employed or implemented procedures to avoid errors; and, second, whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Johnson v. Riddle*,443 F.3d 723, 729(10th Cir. 2006)(*quoting* 15 U.S.C. §1692k(c).

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

Applying the above standard, AVC: (1)fails to admit it committed a violation, or identify what violation it committed (2)fails to state what "error" was unintentional and indeed testified it did not commit any error or material mistakes and no one was disciplined or reprimanded(**Barrios**.**Resp**.**SSUF#32**), and employees testified AVC did not provide them training on when it was appropriate to repossess a car.(**Barrios**.**Resp**.**SSUF#33)**(3) fails to explain what specific procedure was maintained to prevent a specific error, as the Ninth Circuit requires.

All three elements must be satisfied or the BFE defense fails. *Ponce v. BCA Fin. Servs.*,467 Fed.Appx. 805(11th Cir. 2012). As another federal court said in a published decision: "**they have not said at any point what their unintentional error might have been**, and thus they have not satisfied all elements of the bona fide error defense. *Kasalo v. Trident Asset Mgmt.,LLC*,53 F.Supp.3d 1072,1091(N.D. Ill. 2014)

Specifically, when pleading a BFE a "defendant must plead the circumstances of the mistake with detail, 'this means the who, what, when, where, and how: the first paragraph of any newspaper story. *Savage v. Citibank N.A.*,2015 U.S. Dist. LEXIS 107501, at*6,2015 WL 4880858(N.D. Cal. Aug.14, 2015) This lawsuit was filed nearly two years ago; AVC has yet to reveal the specific details of any BFE defense.

Courts have rejected the BFE defense when Defendants have neglected to provide affidavits or testimony from the employee that is alleged to have committed the error, as AVC fails to do here. *Curto v. Palisades Collection, LLC,* 2011 WL 5196708(W.D.N.Y. Oct. 31, 2011);*Narwick v. Wexler*, 901 F.Supp.1275, 1281-82 n.6(N.D. Ill. 1995). Moreover, the defense does not apply advice of counsel or mistakes of law, such as using the police to repossess without a court order. *Bazarganfard v. Club 360*, No. 2:21-cv-2272-CBM-BFM, 2025 U.S. Dist. LEXIS 97251,*19 C.D. Cal. May 20, 2025). Even just a threat to contact a third

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

party is unlawful. *Swanson v. S. Or. Credit Serv.*,869 F.2d 1222, 1228(9th Cir. 1988).

Additionally, false statements in police reports violate the RFDCPA, and no privilege applies. *Yates v. Allied Int'l Credit Corp.*,578 F.Supp.2d 1251,1255(S.D. Cal. 2008). Nor can AVC invoke the litigation privilege; RFDCPA claims are exempt. *Komarova v. Nat'l Credit Acceptance, Inc.*,175 Cal.App.4th 324(2009); *Maronyan v. Mercedes-Benz Fin. Servs.*,2018 WL 1737621(C.D. Cal. 2018).

Finally, since the RFDCPA is a strict-liability statute, there is no "reasonable belief" defense. *Costa v. Nat'l Action Fin. Servs.*,634 F.Supp.2d 1069(E.D. Cal. 2007). Regardless, this alleged defense has no merit. Oh conceded he never thought a crime occurred. Gonzales admitted the stolen-vehicle report was filed only after collection "attempts…failed."  In other words, AVC knew it missed the 10-day cancellation window.(**Barrios**.**Resp**.**SSUF#34**)

Even Oh conceded that the post-window cancellation letter "should have never went out" because it was sent well past that deadline (indeed, the letter itself violates §1788.17, being false, deceptive and misleading, purporting to cancel a contract past the 10-day deadline). Realizing this, AVC became desperate and hatched a plan to use its connections to Gelardo, ultimately directing a "curbside courtroom" without due process.(**AVC**.**SSUF#9,49**). At the least, facts remain for the jury. *Gaisser v. Portfolio Recovery Assocs.*,593 F.Supp.2d 1297(SD FL 2009)(defendant's intent and whether it maintained reasonable procedures are jury questions);*Riley v. Giguiere*, 2008 U.S. Dist. LEXIS 11133,*19-21(E.D. Cal. Feb. 14, 2008);*Harris v. Itzahki*,183 F.3d 1043, 1051(9th Cir. 1999)(intent is question for the jury).

## F. THE UCL CLAIM SURVIVES

Cal. Bus. & Prof. §17200 protects consumers from any "unlawful, unfair or fraudulent business act or practice." Written in the disjunctive, it creates three *independent* bases for liability—AVC's false arrest scheme violates all three.

-20-

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

The "unlawful" prong is satisfied by any violation of another law. *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*,214 Cal.App.4th 544,553 (2013). Here, AVC violated multiple laws: making false police reports (Penal Code §148.5), civil rights violations(§ 1983), Bane Act, RFDCPA, false imprisonment, conversion, and extortion. Each violation independently supports UCL liability. The "fraudulent" prong is met by AVC's deception, including characterizing a civil dispute as criminal theft. The "unfair" prong is satisfied by AVC's weaponization of criminal justice for debt collection, conduct that violates public policy.

Because the UCL is strict liability, AVC's intent is irrelevant. What matters is it engaged in unlawful conduct. The remedies are broad: enjoining future false reports, requiring preventive policies, disgorgement, and restitution. As this Court recognized in denying the motion to dismiss, if any predicate claim survives, the UCL claim survives. Here, every predicate claim has merit, giving the UCL claim multiple valid bases. Summary judgment must be denied.

## G. CONVERSION:AVC HAD NO RIGHT TO THE VEHICLE

Under the contract, when a car dealer conditionally sells a vehicle pending financing approval, they have exactly ten days to cancel if it cannot assign the contract.**(AVC Exhibit 1, RISC Agreement**). AVC missed this deadline, and Jack Oh knew it: "That was a form letter that should have never went out because it was clearly past the ten-day window." **(AVC**.**SSUF#9,49**.)

The car belonged to Barrios. She had paid a substantial down payment. She had obtained insurance as required. The vehicle was registered in her name. She possessed it lawfully under a retail installment contract that AVC no longer had the right to cancel. Yet more than six weeks later, AVC orchestrated its seizure through false criminal charges, converting her property without any legal authority.

Conversion is the wrongful exercise of dominion over another's property. The elements are simple:(1) plaintiff's ownership or right to possession;

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

(2)defendant's conversion by wrongful act; and (3)damages. *Mendoza v. Continental Sales Co.*, 140 Cal.App.4th 1395,1404-05(2006). It is a strict liability tort—good faith provides no defense. All three elements are established beyond dispute. Creditors seeking to reclaim vehicles must either obtain voluntary surrender or pursue judicial remedies. *Woynar*, at *5; *Hartford Fin. Corp.* at 591. Here, the wrongful act element is satisfied by AVC's orchestrated seizure without legal process.

Barrios's right to possession flows from the fact she purchased the car, was the registered owner of the vehicle as shown on the CHP-180 form.(**Barrios.SSFU 30)**.  Further, when AVC failed to cancel within 10 days, its "seller's right to cancel" evaporated. AVC's September 27 letter sent 19 days after the sale was legally void. As Oh admitted, it "should have never went out." AVC took a vehicle that belonged to Barrios, that's conversion.  If AVC wanted to argue Barrios breached her contract, its remedy was proving its case in a civil lawsuit.

## H. CIVIL EXTORTION: THREATS YIELDING PROPERTY

Garcia's threat: "I do not want the IRS to red flag you", crossed the line from aggressive collection into criminal extortion.(**AVC**.**SSUF#11–13,18**) AVC then launched a series of escalating threats to terrorize Barrios into surrendering a car she owned outright and, when she refused, arranged her arrest at gunpoint.

Civil extortion occurs when one wrongfully uses force or fear to secure property. *Flatley v. Mauro*,39 Cal.4th 299,326 (2006). Threats of criminal prosecution to obtain property meet this standard; the elements are (1) wrongful force or fear, (2) intent to induce property transfer, and (3) actual transfer. *People v. Hesslink*, 167 Cal.App.3d 781,789 (1985).

AVC's argument fails on two fronts. First, its threats are not privileged. Penal Code § 148.5(a) and Civil Code § 47(b)(5) bar knowingly false crime reports. Here, General Manager Oh admitted he "never thought" the car was stolen and manufactured the CHP-180 report after the 10-day rescission period

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**

THE LAW OFFICES OF: ANDRE L. VERDUN

expired.**(AVC**.**SSUF#¶¶26–27,30,42**)  AVC's "reasonable belief" defense collapses in light of its prolonged financing efforts **(AVC**.**SSUF#¶¶4,28–29**), repeated texts and emails.**(AVC**.**SSUF#¶¶11–20**), and recourse to law enforcement only after all other collection and financing options were exhausted.**(AVC**.**SSUF#¶29**) Using police threats to force surrender of private property is extortion per se. *People v. Hesslink,*167 Cal.App.3d 781,789(1985)("Extortion is the obtaining of *property* from another, with his consent...induced by a wrongful use of force or fear, or under color of official right.").

Second, AVC's claim that Barrios never "capitulated" misunderstands extortion law. Consent induced by fear is void. Here, Barrios gave up the spare key and car manual while handcuffed in a patrol car—an act coerced by AVC's false report and joint action with deputies. Our Supreme Court has made clear that threatening criminal prosecution where no crime exists constitutes extortion. *Flatley*, 39 Cal.4th at 326. Unlike Flatley's mere letter threat, AVC executed its threat, seized the car without due process, and returned it to itself. Summary judgment must be denied. It's at least a jury question.

Finally, AVC's argument that extortion cannot lie because Barrios had made a down payment to AVC ignores the RFDCPA's definition of "debt" to include property. Civ. Code §1788.2(d). The car is "property," and AVC's extortionist conduct to collect that property violates the law.

### III.    CONCLUSION

For all the foregoing reasons, this Court must DENY Defendant's Motion for Summary Judgment in its entirety. Barrios is entitled to her day in court.

Dated: July 16, 2025

*Andre Verdun*
Andre Verdun, Attorney for Plaintiff,
Gabriela Stephanie Barrios

-23-

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY AVC**